UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 05-55927 (SWR) |
| | ) | Chapter 11 |
| COLLINS & AIKMAN CORPORATION, et al., | ) | Honorable Steven W. Rhodes |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**BRIEF IN SUPPORT OF MOTION
FOR RELIEF FROM STAY
TO EFFECT SETOFF**

Robert B. Weiss (P28249)
Judy B. Calton (P38733)
Honigman Miller Schwartz and Cohn LLP
Attorneys for General Motors Corporation
2290 First National Building
660 Woodward Avenue, Suite 2290
Detroit, MI 48226
(313) 465-7344 (office number)
(313) 465-7345 (office fax number)
jcalton@honigman.com (Email address)

# CONCISE STATEMENT OF ISSUES PRESENTED
# AND CITATION TO LEADING AUTHORITY

1. Is GM entitled to recoup its Cover Damages and Rejection Damages against its Prepetition Payable?

   Harris v. Dial Corp., 954 F.2d 990 (4th Cir. 1992);
   General Motors Corporation v. Perry Gas Companies, Inc.,
   279 B.R. 824 (S.D. Tex. 2002)

2. Is GM entitled to set off its Cover Damages against the Prepetition Payable?

   11 U.S.C. §553(a)

3. Is GM entitled to set off its Rejection Damages against the Prepetition Payable?

   11 U.S.C. §§101(5), 101(12), 502(g), 553(a)

4. Is GM entitled to an administrative hold until such time as its recoupment and/or setoff rights become non-contingent and liquidated?

   Newberry Corp. v. Firemen's Fund, Ins. Co., 95 F.3d 1392 (9th Cir. 1996)

## INTRODUCTION

GM is entitled to recoup its damages from Debtors' breach of their purchase orders with GM. Recoupment is not subject to the automatic stay. In the alternative, GM seeks relief from the stay to deduct its damages prepetition under those purchase orders against what it otherwise owes the Debtors for prepetition shipments under the same purchase orders. To the extent such deductions are setoffs, GM seeks relief from the automatic stay.

Until the amount of GM's cover damages and rejection damages become fixed and liquidated, GM is entitled to continue its administrative hold on its prepetition payable to preserve its recoupment and/or setoff rights.

## FACTUAL BACKGROUND

General Motors Corporation ("GM") is one of the world's largest original equipment manufacturers ("OEMs") of new vehicles. Debtor Collins & Aikman Corporation ("C&A") and its North American affiliated entities, which are also jointly administered debtors in this Court (collectively, "Debtors"), are a $3 billion-a-year sales enterprise and leading global suppliers of automotive components, systems and modules to the world's largest OEMs, including GM. On May 17, 2004, Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

Pursuant to various purchase order contracts (the "Purchase Orders" and individually a "Purchase Order"), Debtors, were obligated to sell to GM, and GM was obligated to buy from Debtors, component parts for installation into new vehicles (the "Component Parts") and tooling to be used by Debtors to manufacture the Component Parts (the "Tooling").

Each Purchase Order expressly authorizes GM to treat all of Debtors, both C&A and its subsidiaries and affiliates, as one entity for purposes of setoff and recoupment as follows:

> SETOFF/RECOUPMENT: In addition to any right of setoff or recoupment provided by law, all amounts due to Seller [Debtors] shall be considered net of indebtedness of Seller and its affiliates/subsidiaries to Buyer [GM] and its affiliates/subsidiaries and Buyer shall have the right to set off against or to recoup from any amounts due to Seller and its affiliates/subsidiaries from Buyer and its affiliates/subsidiaries.

A copy of a representative Purchase Order with Purchase Order Terms and Conditions applicable to all of the Purchase Orders is attached to the Motion as Exhibit B.

This provision has been in virtually every purchase order GM has issued since at least 1986. At the time Debtors entered into and began performing under the Purchase Orders, Debtors knew of this term regarding recoupment and setoff. GM's rights of recoupment and setoff accrued upon Debtors entering into the Purchase Orders.

In or about May 2005, Debtors advised GM and other of their OEM customers (collectively, the "Customers") that Debtors were unable to perform under their contracts with their customers due to a liquidity crisis, so that Debtors lacked funding to, among other things, purchase goods and services from vendors necessary for Debtors to supply GM with the Component Parts and Tooling. Certain vendors refused to ship critically needed parts and/or materials to Debtors in the absence of payment or assurances from the Customers.

Debtor's advice of its inability to perform under its contracts was an anticipatory repudiation of its contracts with GM and with its other customers. Upon repudiation, GM and the Customers would be entitled to "resort to any remedy for breach even though he has notified the repudiating party that he would await the latter's performance and has urged retraction. Thus, GM was entitled to obtain performance by other means, including the cover of continuing to purchase from Debtors on alternative terms where GM funded directly certain expenses of the Debtors.

In order to provide cover due to Debtors' anticipatory repudiation of the Debtors' contracts, GM, and other OEM customers (collectively the "Customers"), paid or committed to pay as operational expenses of the Debtors necessary for the Debtor's production and supply to GM of the Component Parts and Tooling in the aggregate estimated amount, subject to reconciliation, of approximately $7.0 million (the "Cover Damages") as follows:

    a.    Prepetition payments to vendors to Debtors to ensure the continued supply to Debtors of goods and services necessary so Debtor, could supply GM;

    b.    Prepetition deposits to vendors of Debtors to ensure the continued supply to Debtors of goods and services necessary so Debtor could supply GM;

    c.    Prepetition commitments either funded postpetition or not yet funded to pay vendors of the Debtors to ensure the continued supply to Debtors of goods and services necessary so Debtors could supply GM; and

    d.    Postpetition payments to vendors to ensure continued supply to Debtors of goods and services necessary so Debtors could continue to supply GM under the prepetition Purchase Orders.

In addition, a motion has been filed by the Creditors' Committee to compel the Debtors to reject contracts with GM. The Debtor has advised GM that it will reject certain of its purchase orders with GM unless price relief can be obtained (which price relief would constitute Cover Damages). GM believes that it will incur tens of millions of dollars, if not more, in additional expense in the event its Purchase Orders with the Debtors are rejected (the "Rejection Damages"). GM's Rejection Damages claim is unliquidated at this time.

GM estimates that it owes Debtors in excess of $10 million, subject to reconciliation, for amounts earned prepetition by Debtors from the sale and supply to GM of Component Parts and

Tooling (the "Prepetition Payable"). GM has placed an administrative freeze on its Prepetition Payable to protect its rights to recoupment and/or setoff of the Cover Damages and Rejection Damages.

GM and the Debtor have been working to reconcile the amount of the Prepetition Payable and Cover Damages. The task of reconciliation has been hindered by the extraordinary demands upon the Debtors' management and professionals to address issues relating to the maintenance of current production, the confusion in Debtors' pre-petition records, including whether payments on prepetition accounts receivable to the Debtors were diverted from General Electric Capital Corporation ("GECC"), whether GECC has improperly received payments on postpetition accounts receivable in satisfaction of GECC's interest in prepetition receivables and the press of other matters needing immediate attention. As the Debtors have acknowledged, the Debtors' operations and cash management systems were in disarray as of their petition date.

Although the Debtors have not acknowledged the amount, if any, that GM may recoup and/or setoff against its pre-petition payable and the parties have deferred addressing this issue until reconciliations can be completed and more immediate issues relating to the Debtors' survival can be addressed, the Debtors have agreed that GM's rights to take recoupment and/or setoff against the Prepetition Payables are expressly preserved as set forth in the Term Sheet entitled Price Adjustment, Non-Resourcing and DIP Financing Arrangement for Collins & Aikman and Its Affiliated Debtors, approved by the Court on an interim basis on July 8, 2005 in the Interim Order Authorizing the Debtors to Enter into an Agreement (I) Providing for Immediate Price Increases Under Existing Customer Contracts, (II) Allowing Customers to Fund Certain Capital Requirements, (III) Providing for Customers' Agreement not to Re-Source, (IV)

Establishing Framework for Additional Customer Price Negotiations and (V) Providing for Postpetition Financing.

The rights of GM to take recoupment and/or setoff against the Prepetition Receivables (except for certain postpetition advances and expenditures under the Customer Agreement which is the subject of Debtors' Motion for Interim and Final Orders Authorizing the Entry into an Agreement (I) Providing for Immediate Price Increases Under Existing Customer Contracts, (II) Allowing Customers to Fund Certain Capital Requirements, (III) Providing for Customers' Agreement not to Re-Source, (IV) Establishing Framework for Additional Customer Price Negotiations and (V) Providing for Postpetition Financing filed on August 4, 2005) was expressly reserved in the Customer Agreement as approved by the Court on an interim basis.

## ARGUMENT

### I. GM IS ENTITLED TO RECOUP ITS COVER DAMAGES AND REJECTION DAMAGES AGAINST THE PREPETITION PAYABLE.

GM is entitled to recoup the Cover Damages and Rejection Damages against the Prepetition Payable. The doctrine of recoupment is similar to the doctrine of setoff in that it allows a creditor to reduce the amount of the debtor's claim against the creditor by the amounts the debtor owes the creditor. The difference is that in recoupment the mutual claims must arise out of the same transaction. In contrast, in setoff, the mutual claims can arise out of differing transactions. The difference between setoff and recoupment was explained by the Untied States Court of Appeals for the Third Circuit in *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir. 1984) (citations omitted) as follows:

> The doctrines of "setoff" and "recoupment" had their origins in the era of common law pleading, under which the scope of a "case" was far less inclusive than it is today, and under which claim joinder was far narrower. Both doctrines permitted countervailing claims which otherwise could not have been asserted together, to be raised in a case based on any one of them.

> Both doctrines were subsequently adopted in bankruptcy, setoff by statute, and recoupment by decision. In bankruptcy, however, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, prepetition claim against the creditor. Setoff is limited, however, by the provisions of 11 U.S.C. §553. Among those limitations is that prepetition claims against the debtor cannot be setoff against postpetition debts to the debtor. Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. §553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.

See also Reiter v. Cooper, 507 U.S. 258, 122 L.Ed.2d 604, 616 n.2 (1993) ("Recoupment contains no element of preference; rather, it is a determination of the actual liability of the creditors to the debtor on the same issue the debtor proceeds upon."); General Motors Corp. v. Perry Gas Companies, Inc., 279 B.R. 824, 825 (S.D. Tex. 2002) (reversing denial of recoupment because "[b]oth Perry's claim on the account for gas supplied and GM's claim for cost of cover arise out of the identical gas contract.").

An example of recoupment in a situation similar to that herein is Harris v. Dial Corp., 954 F.2d 990 (4th Cir. 1992), where the debtor supplied plastic bottles to Dial. Because of the debtor's financial problems, Dial provided the plastic resin to the debtor under an addendum to the purchase order. When debtor's lender sued Dial to collect the account receivable, Dial was allowed to recoup the amounts it paid for the resin from what it owed the debtor for plastic bottles. See also In re Eyke, 246 B.R. 550, 557 (Bankr. W.D. Mich. 2000) (noncompete agreement signed as part of sale transaction and sale transaction were single transaction for recoupment purposes); Maine Farmers Exchange, Inc. v. Farm Credit of Main A,C,A, 2001 Me.

Super. LEXIS 5 (Me. 2001) (Purchaser of potatoes from debtor can deduct costs of plastic bags it supplied to the debtor from amounts owed to debtor for potatoes).

The exercise of the right of recoupment is not subject to the automatic stay. In re Kosadnur, 157 F.3d 1015, 1016 (5th Cir. 1998); University Medical Center v. Sullivan, 973 F.2d 1065, 1079 (3rd Cir. 1992).

## II. GM IS ENTITLED TO A RIGHT OF SETOFF.

In the alternative, GM has a right to exercise setoff against the Debtors. 11 U.S.C. §553(a) specifically preserves a creditor's right to take a setoff against a debtor in bankruptcy:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case …

The overall purpose of §553 is to allow "entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." U.S. v. Gordon Sel-Way, Inc. (In re Gordon Sel-Way, Inc.), 239 B.R. 741, 750 (E.D.Mich. 1999) (permitting setoff in reversal of bankruptcy court decision), aff'd, 270 F.3d 280 (6th Cir. 2001), citing Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995). The application of setoff is permissive and lies within the equitable discretion of the trial court. DuVoisin v. Foster (In re S. Indus. Banking Corp.), 809 F.2d 329, 332 (6th Cir. 1987). The party seeking to establish a right to setoff must show that both (a) the debt owing to the debtor and the debt owing from the debtor arose pre-petition (or both arose post-petition) and (b) the debts are mutual. Section 553(a); U.S. v. Gordon Sel-Way, Inc., 239 B.R. at 751-52; In re New Haven Foundry, Inc., 285 B.R. 646, 647 (Bankr. E.D.Mich. 2002).

### A. BOTH GM'S AND DEBTORS' DEBTS WERE INCURRED PRE-PETITION.

8

The necessity of establishing that both debts arose prepetition comes from §553. New Haven, 285 B.R. at 648. The Prepetition Payable, Cover Damages and Rejection Damages all arose prepetition. Debtor's advice of its inability to perform under its contracts was an anticipatory repudiation of its contracts with GM and with its other customers. See Official Comment 2 to UCC §2-610 (M.C.L.A. §440.2610). Upon repudiation, GM was entitled to "resort to any remedy for breach even though [it] has notified the repudiating party that [it] would await the latter's performance and has urged retraction." UCC §2-610(b) (M.C.L.A. §440.2610(b)). Thus, GM was entitled to obtain performance by other means, including the cover of continuing to purchase from Debtors on alternative terms where GM funded directly certain expenses of the Debtors. UCC §2-712 (M.C.L.A. §440.2712), Kelsey-Hayes Co. v. Galtaco Redland Castings Corp., 749 F. Supp. 794, 499 n. 10 (1990).

Upon rejection of Purchase Orders, GM's Rejection Damages will be a prepetition obligation. 11 U.S.C. §502(g); In re American HomePatient, Inc., slip op. no. 04-5771 at p. 3 (6th Cir., July 11, 2005) (breach caused by rejection and "resulting damages claim are deemed to have arisen on the day before the filing of the bankruptcy case.").

Because setoff is of a debt, and "debt" means "liability on a claim," 11 U.S.C. §101(12), setoff is available even if the right to payment on which claim is based is unliquidated, contingent, unmatured or disputed. See 11 U.S.C. §101(5) (definition of claim). In such a circumstance, setoff of the claim can be delayed until the right to or amount of the claim is fixed, or the claim can be estimated. 11 U.S.C. §502(c)(estimation of claims); Newberry Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398-99 (9th Cir. 1996) (setoff can be of contingent or unliquidated claims).

B.     **THE DEBTS BETWEEN GM AND DEBTORS ARE MUTUAL.**

GM is entitled to setoff because the Prepetition Payable and the Cover Damages and Rejection Damages are mutual. The Prepetition Payable, Cover Damages and Rejection Damages are mutual debts because they are between the same parties – GM and C&A. The purpose of the mutuality requirement is to ensure "that the favorable treatment a creditor receives when a setoff is permitted is equitable." In re Gordon Sel-Way, Inc., 239 B.R. at 752. In general, "one subsidiary may not setoff a debt owed to a bankrupt against a debt owing from the bankruptcy to another subsidiary. . . ." The same rule applies with a parent corporation and a wholly owned subsidiary." Walter E. Heller & Co. v. Food Marketing Assoc., Ltd. (In re Fasano/Harris Pie Co.), 43 B.R. 864, 870 (Bankr. W.D.Mich. 1984), aff'd, 70 B.R. 285 (W.D.Mich. 1987), aff'd, 848 F.2d 190 (6th Cir. 1988). **However, there is an exception to this general rule when there is an express contractual agreement for setoff among several entities as in the Purchase Orders.**

> Courts have carved out an exception to this general rule in the "triangular trade-off" situation. The courts have found mutuality between three parties, as a matter of contract law, where there was an express agreement clearly evidencing the intent of the parties to treat the related corporations as a single entity. In re Balducci Oil Co., Inc., 33 B.R. 847 (Bankr. D.Col. 1983). Such an arrangement has been described as a "unique situation" in which the parties must establish their agreement "at the outset of their relationship."

Fasano/Harris Pie Co., 43 B.R. at 870-71, citing In re Virginia Block Co., 16 B.R. 560, 562 (Bankr. W.D.Va. 1981).

In In re Balducci Oil Co., Inc., cited in the Fasano/Harris Pie case, the court denied summary judgment on the grounds that there existed a genuine issue material fact as to whether the parties had an express agreement creating a triangular mutuality, which would have permitted the creditor to take a setoff. The debtor transacted with both Petco and its wholly owned subsidiary, Pinon. In re Balducci Oil Co., Inc., 33 B.R. at 849. Petco sought to setoff the

amount it owed the debtor against the amounts the debtor owed both Petco and Pinon. Pinon owed the debtor nothing. Id. at 852. The court first stated the general "well established" rule that a company may not take setoffs based on the debts of its affiliates or subsidiaries. Id. at 852-53. The court also rejected Petco's attempt to pierce its own corporate veil so that Petco and Pinon could be treated as the same corporate entity. Id. at 853. The court denied the trustee's motion for summary judgment, however, based on other cases finding mutuality "between three parties, as a matter of contract law, where there was an *express contractual agreement* clearly evidencing the intent of the parties to treat the parent and subsidiary as one entity." Id. (emphasis added).

Similarly, in Inland Steel Co. v. Berger Steel Co., Inc. (Matter of Berger Steel Co., Inc.), 327 F.2d 401, 402 (7th Cir. 1964), the Court of Appeals for the Seventh Circuit found that a setoff arrangement accommodating a parent corporation and its subsidiary would be allowable where the parties to the transaction had, *at the outset of their relationship*, clearly agreed to treat the parent and subsidiary as one entity. Id. at 402. See also Virginia Block Co. v. Bushong (In re Virginia Block Co.), 16 B.R. at 562 (citing, explaining Matter of Berger). See also Mottaz v. Union Planters Bank, N.A. (In re Dame), 268 B.R. 529, 533 (Bankr. S.D. Ill. 2001) (enforcing agreement that "stated unequivocally that the account was subject to [Bank's] right of setoff, and that each account holder consented to such setoff, even when the debt to be satisfied was the individual obligation of only one of the joint account holders."); Fisher v. The State Bank of Annaway, 643 N.E.2d 811, 812 (Ill. 1994) ("inquiry into equitable setoff is irrelevant where a contractual basis for setoff exists."); Selby v. Duquoin State Bank, 584 N.E.2d 1055 (Ill.App.Ct. 1991) (contract agreed to by joint depositors authorizing bank's setoff rights for obligation owed by either depositor satisfied mutuality requirement); Chickerneo v. Soc'y Nat'l Bank of

Cleveland, 58 Ohio St.2d 315 (1979) (explicit bank rule authorizing bank's setoff against joint account for debt owing from only one account owner satisfied mutuality requirement).

Even if the elements of setoff are present, however, some cases suggest that courts can deny the equitable remedy of setoff if it would hamper a debtor's efforts of reorganization. Discretionary denial of setoff does not apply here. A bankruptcy court's power to permit or deny setoff based on the equities is limited. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). See also U.S. v. Maxwell (In re Pyramid Indus., Inc.), 157 F.3d 1099, 1102 (7th Cir. 1998) ("The argument that setoff should be denied to avoid the inequity of preferential treatment is an argument against the very concept of setoff, not an argument against its application to the facts of this case'"), quoting In re Whimsy, Inc., 221 B.R. 69, 75 (S.D.N.Y. 1998). More specifically, as explained in 5 Colliers on Bankruptcy ¶ 553.02[3] (footnotes omitted), setoff should be denied on equitable grounds only if the setoff is not permitted under state law or the exceptions to setoff of 11 U.S.C. § 553(a)(1), (2) or (3).

> The Bankruptcy Code provides no general equitable mechanism for disallowing rights of setoff that are expressly preserved by section 553. Consistent with the text of section 553, the best statement of modern law and practice is that, if the relevant claim and debt constitute mutual obligations within the meaning of section 553, a right of setoff should be recognized in bankruptcy unless the right is invalid in the first instance under applicable nonbankruptcy law, or unless it is otherwise proscribed by some express provision of the Code.

This is consistent with the approach of the United States Court of Appeals for the Sixth Circuit in DuVoisin v. Foster (In re S. Indus. Banking Corp.), 809 F.2d at 332, that the "right of setoff is limited or unavailable if" section 553(a)(3) applies.

GM's right of setoff is permissible under state law and not prohibited by section 553(a)(1), (2) or (3). Thus there are no discretionary grounds to prohibit the setoff.

### C. GECC'S INTERESTS IN THE PREPETITION PAYABLE ARE SUBJECT TO GM'S RECOUPMNT AND/OR SETOFF RIGHTS

To the extent, if any, Debtors assigned interests in the Prepetition Payable to GECC or others, those rights as assignees are subject to all the terms of the Purchase Orders, including GM's rights of recoupment and/or setoff of the Cover Damages and Rejection Damages. U.C.C.§9-404(a) (M.C.L.A. §440.9404(a) provides:

> (a) **Assignee's rights subject to terms , claims, and defenses; exceptions.** Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
> (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that give rise to the contracts; and
>
> (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor received a notification of the assignment authenticated by the assignor or the assignee.

GM never agreed not to assert its defenses or claims with respect to its Prepetition Payable (except to the limited extent provided in the Customer Agreement). Nor did GM receive a notification authenticated by GECC or Debtors of the assignment of the Prepetition Payable to GECC. As such, any security interest GECC has in the Prepetition Payable is subject to GM's recoupment and/or setoff rights. In re New Haven Foundry, Inc., 285 B.R. 646, 649-650 (Bankr. E.D. Mich 2002) (interpreting former UCC §9-318 (1) (M.C.L.A. §449.9318(1).

### III. GM IS ENTITLED TO RELIEF FROM THE STAY BECAUSE IT HAS A RIGHT OF SETOFF.

GM is entitled to relief from the automatic stay for the limited purpose of taking setoff against the Debtors. "A valid right of setoff constitutes 'cause' for relief from stay under 11

13

U.S.C. § 362(d)(1)." In re New Haven Foundry, Inc., 285 B.R. at 650-51, citing In re Parrish, 75 B.R. 14 (N.D.Tex. 1987). Therefore, based on the validity of GM's right to setoff, this Court should grant GM's motion for relief from the automatic stay.

While the filing of a bankruptcy petition stays the right of a creditor to exercise a setoff, it does not destroy that right. Setoff is generally favored in bankruptcy. In re Sedlock, 219 B.R. 207, 211 (Bankr. N.D. Ohio 1998). The creditor is merely required to obtain relief from the automatic stay from the Bankruptcy Court. In re Whitaker, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994). Section 362(d)(1) provides that the court shall provide relief from the automatic stay for cause. By establishing its right to setoff under Section 553(a), a creditor "makes a prima facie showing of cause for relief from stay" under Section 362(d)(1). Whitaker, 173 B.R. at 361; See also In re Learn, 95 B.R. 495, 496 (Bankr. N.D. Ohio 1989). It is then up to the debtor to rebut the right to setoff and argue reasons why granting the creditor relief from stay to exercise a setoff would be inequitable or unjust. Whitaker, 173 B.R. at 362; In re Lazar, 219 B.R. 212, 213 (Bankr. N.D. Ohio 1998). In re Sedlock, 219 B.R. at 211 (citing Whitaker, 173 B.R. at 362). The debtor may not simply assert the need for the money to defeat the creditor's right to setoff. Lazar, 219 B.R. at 213.

## CONCLUSION

Pursuant to the agreement of the parties, GM's recoupment and setoff rights have been preserved. GM has begun discussions with the Debtors to establish a protocol to resolve these issues and will continue to do so. In the interim, GM is entitled to recoup the Cover Damages and Rejection Damages from the Prepetition Payable. In the alternative, GM has established that it has the right to setoff because GM's indebtedness to Debtors, as well as Debtors' indebtedness to GM, arose pre-petition, the claims by and between GM and Debtors are mutual, GM and Debtors are parties to contracts giving GM setoff rights against Debtors, and GM has the right,

14
05-55927-swr    Doc 858    Filed 08/08/05    Entered 08/08/05 14:31:26    Page 15 of 16

under nonbankruptcy law, to setoff. GM, therefore has made a prima facie showing of cause for relief from stay under 11 U.S.C. 362(d)(1) to set off the Cover Damages and Rejection Damages from the Prepetition Payable.

Respectfully Submitted,

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
Attorneys for General Motors Corporation


By: /s/ Judy B. Calton
    Robert B. Weiss (P28249)
    Judy B. Calton (P38733)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7596

Dated: August 8, 2005

DETROIT.1858431.3