# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, *et al.*[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification # 13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO RETAIN AND EMPLOY CHANIN CAPITAL PARTNERS, LLC AS INVESTMENT BANKER EFFECTIVE AS OF JUNE 7, 2005

TO THE HONORABLE STEVEN W. RHODES,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Collins & Aikman Corporation and its affiliated debtors (collectively, "C&A" or the "Debtors") hereby applies (the "Application") to this Court for the

---

[1] The Debtors in the above-captioned jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc.; Becker Group, LLC (d/b/a Collins & Aikman Premier Mold); Brut Plastics, Inc.; Collins & Aikman (Gibraltar) Limited; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation); Collins & Aikman Asset Services, Inc.; Collins & Aikman Automotive (Argentina), Inc., (f/k/a Textron Automotive (Argentina), Inc.); Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.); Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.); Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.); Collins & Aikman Automotive International, Inc.; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.); Collins & Aikman Automotive Mats, LLC; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.); Collins & Aikman Automotive Services, LLC; Collins & Aikman Canada Domestic Holding Company; Collins & Aikman Carpet & Acoustics (MI), Inc.; Collins & Aikman Carpet & Acoustics (TN), Inc.; Collins & Aikman Development Company; Collins & Aikman Europe, Inc.; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.); Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.); Collins & Aikman Interiors, Inc.; Collins & Aikman International Corporation; Collins & Aikman Plastics, Inc.; Collins & Aikman Products Co.; Collins & Aikman Properties, Inc.; Comet Acoustics, Inc.; CW Management Corporation; Dura Convertible Systems, Inc.; Gamble Development Company; JPS Automotive, Inc. (d/b/a PACJ, Inc.); New Baltimore Holdings, LLC; Owosso Thermal Forming, LLC; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.); Wickes Asset Management, Inc.; and Wickes Manufacturing Company.

entry of an order, pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Committee to retain and employ Chanin Capital Partners LLC ("Chanin") as its investment banker *nunc pro tunc* to June 7, 2005 (the "Application"), pursuant to the terms of Chanin's engagement letter dated as of June 7, 2005, which is attached hereto as Exhibit B (the "Engagement Letter"). This Application is supported by the Affidavit of Russell Belinsky, a senior managing director of Chanin, sworn July 25, 2005 (the "Belinsky Affidavit") filed contemporaneously herewith. In further support of this Application, the Committee respectfully represents as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 328 and 1103 of the Bankruptcy Code.

## Background

2. On May 17, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On the Petition Date, the Court entered an order jointly administering these cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

3. On May 24, 2005, the United States Trustee appointed the Committee. No other official committees have been appointed or designated in these cases.

## RELIEF REQUESTED

4. The Committee seeks authority to retain and employ Chanin as its investment banker in these cases. By this Application, the Committee requests that the Court enter an order authorizing the Committee to retain and employ Chanin *nunc pro tunc* to June 7, 2005.

## APPLICABLE AUTHORITY

5. Section 1103(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a).

6. In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that a Committee:

> may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions.

11 U.S.C. § 328(a).

7. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of financial advisors . . .
> or other professionals pursuant to . . . § 1103 . . . of the Code
> shall be made only on application of the trustee or committee.

Fed.R.Bank.P. 2014.

## CHANIN'S QUALIFICATIONS, BASIS FOR EMPLOYMENT

8. Chanin is a national investment banking and financial services firm, which has extensive experience working with financially troubled entities in complex financial

reorganizations, both in chapter 11 cases and in out-of-court restructurings. In particular, Chanin has served, or is currently serving, as financial advisor and/or investment banker to numerous official committees and debtors-in-possession in some of the largest and most complex chapter 11 cases in the country, and has been involved in numerous restructurings in the automotive parts industry, including those of Aetna Industries, Citation, GenTek, Hayes Lemmerz, JL French, Talon Automotive, and Venture Holdings. Moreover, the Committee believes that Chanin has an excellent reputation for the services it has rendered in chapter 11 cases throughout the United States.

9.    As set forth in the Belinsky Affidavit, Chanin has extensive knowledge and experience in the fields of financial restructuring, bankruptcy and mergers & acquisition services. Based upon that experience, the Committee believes that Chanin is well-suited and qualified to serve as its investment banker in these cases.

## SERVICES TO BE PROVIDED BY CHANIN

10.    Chanin's investment banking services are necessary to enable the Committee to effectively and properly discharge its statutory duties in this case. In that regard, the Committee expects Chanin to provide the following services to the Committee in these cases:

(i)     Review and analyze the financial and operating statements of the Debtors;

(ii)    Evaluate the assets and liabilities of the Debtors;

(iii)   Review and analyze the Debtors' business and financial projections;

(iv)    Evaluate the Debtors' debt capacity and liquidity position in light of their projected cash flows, including various financing opportunities available to the Debtors;

(v)     Assist in the determination of an appropriate capital structure for the Debtors;

(vi)    Determine a theoretical range of values for the Debtors on a going concern basis;

(vii)   Assist the Committee in identifying and evaluating candidates for the potential acquisition of certain assets of the Debtors as and if applicable;

(viii) Advise and assist the Committee in negotiations with any potential acquirer of certain assets of the Debtors as a going concern as and if applicable;

(ix) Evaluate the sales process for certain assets of the Debtors as a going concern as and if applicable;

(x) Advise the Committee on tactics and strategies for negotiating with the Debtors and other purported stakeholders;

(xi) Render financial advice to the Committee and participate in meetings or negotiations with the Debtors and other purported stakeholders in connection with the Restructuring Transaction.[2]

(xii) Assist the Committee in preparing documentation required in connection with the Restructuring Transaction.

(xiii) Prepare, analyze and explain a plan of reorganization to the various constituencies;

(xiv) Review and analyze potential avoidance actions;

(xv) Provide the Committee with other appropriate general restructuring advice; and

(xvi) Provide expert testimony in the Bankruptcy Court with respect to the Restructuring Transaction and related transactions.

11. The Committee may, from time to time, request that Chanin undertake other specific matters beyond the scope of the responsibilities set forth above. Should Chanin agree in its discretion to undertake any such specific tasks, the Committee will seek authority to include such matters within the scope of Chanin's employment.

12. The Committee requests that Chanin's retention be approved effective as of June 7, 2005, the date that it was hired. Since that date, Chanin has been providing services to the

---

[2] The term "Restructuring Transaction" is defined to mean any restructuring, reorganization and/or recapitalization of all or a significant portion of the Company's existing and potential debt obligations that is achieved, without limitation, through a chapter 11 plan of reorganization, exchange offer, consent solicitation, rescheduling of debt maturities, changes in interest rates, settlement or forgiveness of debt, conversion of debt and/or other liabilities into equity, issuance of new securities, raising of new debt or equity capital, or sale or other transfer, directly or indirectly, of equity, assets or other interests of the Company whatsoever, whether in one or a series of transactions, acquisitions, mergers or other business combinations; or other similar transaction or series of transactions.

Committee, including working on a comprehensive analysis of the Debtors' businesses and certain related assets, and reviewing related issues with the Committee.

## CHANIN'S COMPENSATION

13.     Subject to the Court's approval of this Application and the terms of Chanin's retention pursuant to the Engagement Letter, as compensation for its services and in accordance with its normal billing practices, Chanin has agreed to accept payment for its services on the following terms and conditions (the "Fee Structure"):

>    (a)     Monthly Advisory Fee: Chanin shall be paid a fee of $150,000 per month (the "Monthly Fee") for the term of the engagement, payable in cash, in advance on the first day of each month; and

>    (b)     Deferred Fee: In addition to the Monthly Fees, Chanin may be paid a deferred fee (the "Deferred Fee") upon consummation of the Restructuring Transaction. The amount of the Deferred Fee will be negotiated in good faith by the Committee and Chanin. The Deferred Fee would be payable in cash as an administrative expense, upon the effective date of the Restructuring Transaction and would be subject to further order of the Court; and

>    (c)     Expense Reimbursement:     Chanin shall receive reimbursement for all of its reasonable out-of-pocket expenses incurred and paid to unaffiliated third parties in connection with services provided in connection with this engagement.   Reasonable out-of-pocket expenses include all reasonable travel expenses, computer and research charges, messenger services, long-distance telephone calls and attorneys fees (which shall not exceed $25,000 without prior consent of the Debtors and Committee).[3]

The balance of the proposed terms of Chanin's retention by the Committee are set forth in the Engagement Letter.

---

[3] *Provided that* no prior consent of the Debtors or Committee shall be required in connection with legal fees incurred by Chanin related to objections to Chanin's retention, interim or final fee applications. The payment of such legal fees shall be borne solely by the Debtors.

14.    The effectiveness of Chanin's engagement is explicitly subject to this Court's approval of this Application.

15.    The terms of this engagement were negotiated between the Committee and Chanin, and reflect the extensive work which the Committee expects will be performed by Chanin in these cases. This engagement requires a substantial professional commitment of time and effort by Chanin and its professionals, and such commitment may foreclose other opportunities for Chanin.

16.    As described in the Belinsky Affidavit, the Fee Structure which is set forth in the Engagement Letter is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Chanin for comparable engagements, both in chapter 11 cases and out of court, and reflects a balance between a fixed, monthly fee, and a potential contingent amount which is tied to the negotiation, consummation and closing of certain transactions as part of the restructuring and administration of these chapter 11 cases.

17.    The hours worked, the results achieved and the ultimate benefit to the Committee of the work performed by Chanin in connection with this engagement may vary and the Committee and Chanin have taken this into account in agreeing to the Fee Structure. In order to induce Chanin to do business with the Committee, the fees were set against the difficulty of the assignment and the potential for failure. Additionally, and in connection therewith, the Committee has been advised by Chanin that it will endeavor to coordinate, to the extent possible, with the other retained professionals in these cases in order to reduce or eliminate unnecessary duplication or overlap of work.

18.    The Committee acknowledges and agrees that Chanin's restructuring capabilities, as well as its knowledge of and familiarity with the capital markets, general financing

experience, and mergers and acquisition experience, any or all of which may be required by the Committee during the term of Chanin's engagement hereunder, were important factors in determining the Fee Structure and that the ultimate benefit to the Committee of Chanin's services pursuant to this engagement could not be measured merely by reference to the number of hours to be expended by Chanin's professionals in the performance of such services.

19.     In sum, in light of the foregoing and given the numerous issues which Chanin may be required to address in the performance of its services hereunder, Chanin's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Chanin's services for engagements of this nature, the Committee acknowledges and agrees that the Fee Structure is fair and reasonable, and in accordance with section 328(a) of the Bankruptcy Code.  Further, the Committee believes that the employment of Chanin would be in the best interests of the Committee, the Debtors and their estates and creditors.

## DISCLOSURE CONCERNING CONFLICTS OF INTEREST

20.     As set forth in greater detail in the Belinsky Affidavit, Chanin has reviewed its client relationships so as to be able to identify and disclose whether Chanin has or had any connection or relationship with any of the following entities:

(a)     the Debtors and their affiliates;

(b)     shareholders who hold or have held more than 5% of the Debtors' securities or have made significant investments in the Debtors;

(c)     current and prior two years directors and officers of the Debtors;

(d)     the top 50 unsecured trade creditors on a consolidated basis;

(e)     pre and post petition lenders and lienholders;

(f)     customers representing 10% or more of the Debtors' businesses and/or other significant customers;

(g)    investment bankers for the Debtors during the last three years;

(h)    issuers of Debtors' outstanding surety bonds and/or letters of credit;

(i)    Debtors' unions;

(j)    professionals, bankruptcy judge and US Trustee personnel;

(k)    other debt holders;

(l)    Debtor's landlords;

(m)    indenture trustees of securities issued by the Debtors; and

(n)    counterparties to certain of the Debtors' leases/executory contracts;

(o)    parties to significant actual or known potential litigation involving the Debtors;

(p)    Debtors' insurers; and

(q)    potentially responsible parties in environmental matters.[4]

21.    Chanin's compliance with the requirements of sections 328 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014 is set forth in greater detail in the Belinsky Affidavit.

22.    To the best of the Committee's knowledge, information and belief, except as set forth in the Belinsky Affidavit, Chanin has not represented and has no relationship with (i) the Debtors; (ii) their creditors; (iii) any other party in interest in these cases; (iv) the respective attorneys or professionals of the foregoing; (v) the United States Trustee; or (vi) any person employed in the Office of the United States Trustee, which would prevent Chanin from being employed by the Committee.

23.    Accordingly, the Committee believes that Chanin is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code. The Committee's knowledge, information

---

[4] The specific entities corresponding to most of these categories were taken from a list used by the Debtors' professionals for the same purposes in these cases.

and belief regarding these matters is based on, and made in reliance upon, the Belinsky Affidavit. The Court and interested parties are respectfully directed to the Belinsky Affidavit for the full scope of Chanin's disclosures pursuant to Bankruptcy Rule 2014.

## FEE APPLICATIONS AND INTERIM REQUESTS

24.     Chanin intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the Office of the United States Trustee for the Eastern District of Michigan and the Local Rules and applicable orders of this Court, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

25.     Chanin has received no compensation from the Debtors or any other party-in-interest in connection with these chapter 11 cases.

26.     Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Orders of this Court, Chanin will apply to the Bankruptcy Court for the interim and final allowance of compensation and reimbursement of expenses.

27.     Chanin has indicated to the Committee that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. However, Chanin has agreed to keep daily records detailing and describing their activities, the identity of persons who performed such tasks, and the amount of time expended on each activity in half-hour increments. As it will be compensated with a fixed monthly and potentially certain transaction fees, Chanin requests that it be relieved of providing more detailed time records, with a schedule of rates, in connection with its monthly statements, or interim and

final fee applications. Given the nature of the services to be rendered by Chanin, Chanin will not be required to maintain "project billing" in connection with its work for the Committee.

## INDEMNITY

28.    As set forth in the Engagement Letter and Schedule I hereto, the Committee believes that the Debtors and their estates should provide Chanin and the other Indemnified Parties (as that term is defined in the Engagement Letter Schedule I) with an indemnity in connection with the engagement, except with respect to claims that arise out of the gross negligence or willful misconduct of Chanin or any such Indemnified Persons.

## NOTICE

29.    Notice of this Application will be provided by first class mail to all of the parties required to receive notice pursuant to the First Amended Notice, Cash Management and Administrative Procedures entered in these chapter 11 cases. In light of the nature of the Application, the Committee submits that no other or further notice is required and that the notice provided of the Application is sufficient.

## NO PRIOR REQUEST

30.   No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Committee respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit A, (i) authorizing the Committee to retain and employ Chanin *nunc pro tunc* to June 7, 2005, as its investment banker pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code and (ii) granting the Committee such other relief as is just, proper and equitable.

July __, 2005

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF COLLINS AND AIKMAN
CORPORATION, *et al.*

By: /s/ _____
Name: David Berse
Title: Chairman

Respectfully Submitted,

By: _____ /s/ PAULA A. OSBORNE (P61101)
BUTZEL LONG
Thomas B. Radom (P24631)
Paula A. Osborne (P61101)
100 Bloomfield Hills Parkway, Suite 200
Bloomfield Hills, MI 48304
Telephone: (248) 258-1413
Facsimile: (248) 258-1439
Email: radom@butzel.com

AKIN GUMP STRAUSS HAUER & FELD LLP
Michael S. Stamer, Esquire
Abid Qureshi, Esquire
Philip C. Dublin, Esquire
Alexis Freeman, Esquire
590 Madison Avenue
New York, NY 10022-2524
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

August 11, 2005

Counsel for the Official Committee of
Unsecured Creditors

# EXHIBIT A



EXHIBIT

*A*

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **COLLINS & AIKMAN CORPORATION, et al.** [1] | ) | **Case No. 05-55927 (SWR)** |
|  | ) | **(Jointly Administered)** |
| **Debtors.** | ) |  |
|  | ) | **(Tax Identification # 13-3489233)** |
|  | ) |  |
|  | ) | **Honorable Steven W. Rhodes** |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF CHANIN CAPITAL PARTNERS, LLC AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Upon the Application[2] to Employ and Retain Chanin Capital Partners, LLC ("Chanin") as

Investment Banker to the Official Committee of Unsecured Creditors (the "Committee") to

Collins & Aikman Corporation, et. al. (the "Debtors") *nunc pro tunc* to June 7, 2005; this Court

having jurisdiction over the Application; and it appearing that due notice of the Application has

been provided under the circumstances and that no other notice need be given; it further

---

[1] The Debtors in the above-captioned jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc.; Becker Group, LLC (d/b/a Collins & Aikman Premier Mold); Brut Plastics, Inc.; Collins & Aikman (Gibraltar) Limited; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation); Collins & Aikman Asset Services, Inc.; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.); Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.); Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.); Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.); Collins & Aikman Automotive International, Inc.; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.); Collins & Aikman Automotive Mats, LLC; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.); Collins & Aikman Automotive Services, LLC; Collins & Aikman Canada Domestic Holding Company; Collins & Aikman Carpet & Acoustics (MI), Inc.; Collins & Aikman Carpet & Acoustics (TN), Inc.; Collins & Aikman Development Company; Collins & Aikman Europe, Inc.; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.); Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.); Collins & Aikman Interiors, Inc.; Collins & Aikman International Corporation; Collins & Aikman Plastics, Inc.; Collins & Aikman Products Co.; Collins & Aikman Properties, Inc.; Comet Acoustics, Inc.; CW Management Corporation; Dura Convertible Systems, Inc.; Gamble Development Company; JPS Automotive, Inc. (d/b/a PACJ, Inc.); New Baltimore Holdings, LLC; Owosso Thermal Forming, LLC; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.); Wickes Asset Management, Inc.; Wickes Manufacturing Company.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Application.

appearing that the relief requested in the Application is in the best interests of the unsecured creditors; and after due deliberation and sufficient cause appearing,

IT IS HEREBY ORDERED THAT:

1.      The Application be, and it hereby is, GRANTED.

2.      Chanin is found to be a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

3.      In accordance with 11 U.S.C. §§ 328(a) and 1103(a), the Committee is authorized and empowered to retain and employ Chanin as its investment banker in these cases pursuant to the terms set forth in the Application and the Engagement Letter, including the indemnification and contribution provisions thereof, both as modified by this Order, *nunc pro tunc* to June 7, 2005.

4.      The Engagement Letter, as modified by this Order, is approved pursuant to 11 U.S.C. § 328(a) and the Debtors are authorized to pay, reimburse and indemnify Chanin according to the terms in the Engagement Letter, as modified by this Order.

5.      Chanin shall be compensated in accordance with the procedures set forth in 11 U.S.C. §§ 330 and 331, the Bankruptcy Rules, the Local Rules and such other orders as may be entered by this Court.

6.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any orders of this Court or any guidelines regarding submission and approval of fee applications, Chanin and its professionals shall only be required to maintain contemporaneous time records for services rendered in half-hour increments.

7.      During the pendency of these cases, all requests for payment of indemnity or contribution pursuant to the Engagement Letter shall be made by means of an application

(interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity or contribution conforms to the terms of this Order and the Engagement Letter and that the fixing of the terms and conditions relating to such indemnity is not determined to have been improvident in light of developments not capable of being anticipated at the time of the fixing of the terms and conditions relating to such indemnity pursuant to this Order, provided, however, that in no event shall Chanin be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any) (which, for the avoidance of doubt, will not include any breaches based on ordinary negligence), gross negligence or willful misconduct. Additionally, in no event shall Chanin be indemnified if the Debtors or a representative of their estates assert a claim for, and a court determines by final order that such claim arose out of, Chanin's own bad-faith, self-dealing, breach of fiduciary duty (if any) (which, for the avoidance of doubt, will not include any breaches based on ordinary negligence), gross negligence or willful misconduct.

8.     During the pendency of these Bankruptcy Cases, the terms of the Application shall be governed by the laws of the state of Michigan.

9.     During the pendency of these cases, Chanin shall promptly notify the Court, the Debtor, counsel for the Debtor, the U.S. Trustee and counsel for the Committee (the "Notice Parties") in writing of any claim that is asserted or threatened against Chanin or any claim that Chanin reasonably believes may be asserted against Chanin relating to Chanin's employment by the Committee and for which Chanin may be entitled to indemnity pursuant to the terms of the Engagement Letter (a "Claim"). If Chanin fails to promptly notify the Notice Parties of any such Claim, then Chanin shall not be entitled to any indemnity with respect to such Claim. If Chanin complies with this paragraph as to any Claim, then Chanin shall be entitled to

indemnification as to any such Claim pursuant to and to the extent provided in the Engagement Letter.

10.     Chanin shall submit a declaration stating whether it is aware of any Claim that has been or may be asserted against Chanin relating to Chanin's employment by the Committee and for which Chanin may be entitled to indemnity pursuant to the terms of the Engagement Letter with each and every monthly invoice submitted in these cases.

11.     In the event that, during the pendency of these cases, Chanin seeks reimbursement for attorneys' fees from the Debtors pursuant to the Application, the invoices and supporting time records from such attorneys shall be included in Chanin's own application (interim or final, as the case may be) and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, the Office of the United States Trustee reserves the right to object to the allowance of any such fees (except for any fees that arise in connection with any request for indemnity) on the grounds that such fees are overhead and should not be paid as reimbursable expenses.

12.     To the extent Chanin and the Committee agree on a Deferred Fee (as defined in the Application), Chanin shall file an application for approval of such fee.

13.    To the extent this Order is inconsistent with the Engagement Letter, this Order shall govern.

Dated: _____, 2005

_____

United States Bankruptcy Judge

Approved for Entry:

OFFICE OF THE UNITED STATES TRUSTEE
FOR THE EASTERN DISTRICT OF MICHIGAN

By: _____

Its: _____

# EXHIBIT B



June 7, 2005

*__Privileged and Confidential__*

David Barse
Third Avenue Trust
622 Third Avenue, 32nd Floor
New York, New York 10017

Dear Mr. Barse:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") between Chanin Capital Partners LLC ("Chanin") and the Official Committee of Unsecured Creditors (the "Committee") of Collins & Aikman Corporation and its affiliated debtors and debtors-in-possession (collectively, the "Company") with respect to the engagement of Chanin as investment banker by the Committee.

1. <u>Engagement</u>: Chanin is being retained as an investment banker to provide investment banking services to the Committee in connection with the Company's restructuring pursuant to the Chapter 11 cases captioned In re Collins & Aikman Corporation, et al., Lead Case No. 05-55927 (SWR), pending before the United States Bankruptcy Court, Eastern District of Michigan (the "Court"), and the analysis, consideration and development of a Restructuring Transaction (as defined herein). Upon retention, Chanin will work at the direction of the Committee and in conjunction with other advisors retained by the Committee to:

  i. Review and analyze the financial and operating statements of the Debtors;

  ii. Evaluate the assets and liabilities of the Debtors;

  iii. Review and analyze the Debtors' business and financial projections;

  iv. Evaluate the Debtors' debt capacity and liquidity position in light of their projected cash flows, including various financing alternatives available to the Debtors;

  v. Assist in the determination of an appropriate capital structure for the Debtors;

  vi. Determine a theoretical range of values for the Debtors on a going concern basis;

  vii. Assist the Committee in identifying and evaluating candidates for the potential acquisition of certain assets of the Debtors as a going concern as and if applicable;

viii. Advise and assist the Committee in negotiations with any potential acquirer of certain assets of the Debtors as a going concern as and if applicable;

ix. Evaluate the sales process for certain assets of the Debtors as a going concern as and if applicable;

x. Advise the Committee on tactics and strategies for negotiating with the Debtors and other purported stakeholders;

xi. Render financial advice to the Committee and participate in meetings or negotiations with the Debtors and other purported stakeholders in connection with the Restructuring Transaction;

xii. Assist the Committee in preparing documentation required in connection with the Restructuring Transaction;

xiii. Prepare, analyze and explain a plan of reorganization to the various constituencies;

xiv. Review and analyze potential avoidance actions;

xv. Provide the Committee with other appropriate general restructuring advice; and

xvi. Provide expert testimony in bankruptcy court with respect to the Restructuring Transaction and related transactions.

The advisory services and compensation arrangements set forth herein do not encompass other investment banking or financial advisory services not set forth in this paragraph 1, unless subsequently agreed upon by the Committee and Chanin and the obtaining of further Court approval.

As used herein, the term "Restructuring Transaction" shall mean any restructuring, reorganization and/or recapitalization of all or a significant portion of the Company's existing and potential debt obligations that is achieved, without limitation, through a Chapter 11 plan of reorganization, exchange offer, consent solicitation, rescheduling of debt maturities, changes in interest rates, settlement or forgiveness of debt, conversion of debt and/or other liabilities into equity, issuance of new securities, raising of new debt or equity capital, or sale or other transfer, directly or indirectly, of equity, assets or other interests of the Company whatsoever, whether in one or a series of transactions, acquisitions, mergers or other business combinations; or other similar transaction or series of transactions.

2. Term of Agreement: This Agreement shall commence as of June 7, 2005, and shall continue unless the Committee or Chanin gives 30 days prior written notice of termination to the other party. Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees (or reimbursement of expenses incurred) due on or before the effective date of termination and expenses incurred on or before the effective date of termination and the provisions of Paragraphs 4, 5, 6, 7, and 8 shall survive the termination of this Agreement and shall remain in effect.

3.  Fees and Expenses:

(a)  Monthly Advisory Fee: The Company shall pay Chanin a fee of $150,000 per month (the "Monthly Fees") for the term of the engagement. The Monthly Fees shall be paid in cash, in advance on the first day of each month.

(b)  Deferred Fee: In addition to the foregoing Monthly Fees, the Company may pay Chanin a deferred fee (the "Deferred Fee") upon consummation of the Restructuring Transaction. The amount of the Deferred Fee shall be negotiated in good faith by Chanin and the Committee and be subject to further approval by the Court. The Deferred Fee shall be payable 100% in cash on the effective date of a Restructuring Transaction. The Deferred Fee shall be paid from the general funds of the debtors' estate as an administrative expense.

(c)  Expense Reimbursement: Chanin shall be entitled to monthly reimbursement from the Company of reasonable out-of-pocket expenses incurred and paid to unaffiliated third parties in connection with the services to be provided under this Agreement. Monthly Fees plus reimbursement of reasonable and documented out-of-pocket expenses as billed are due upon the first of each month to Chanin at the address listed above.

Out-of-pocket expenses shall include, but not be limited to all reasonable travel expenses, computer and research charges, attorney fees (provided that such attorney fees shall not exceed $25,000 without the Company's and the Committee's prior consent, provided that no prior consent shall be required in connection with legal fees incurred by Chanin in connection with objections to Chanin's retention, or interim and final fee applications, the payment of which shall be solely borne by the Company), messenger services and long-distance telephone calls incurred by Chanin in connection with the services to be provided to the Committee.

The parties acknowledge that a substantial professional commitment of time and effort will be required by Chanin and its professionals hereunder, and that such commitment may foreclose other opportunities for Chanin. Moreover, the actual time and commitment required by the engagement may vary substantially from week to week or month to month, creating 'peak load' issues for Chanin. Given the numerous issues which may arise in this engagement, Chanin's commitment to the variable level of time and effort necessary to address such issues, and the market prices for Chanin's engagements of this nature, the parties agree that the fee arrangement hereunder, pursuant to 11 U.S.C. § 328(a), fairly compensates Chanin and provides certainty for the Committee.

4.  Indemnification: The Company shall provide indemnification and other obligations set forth in Schedule I hereto, which is hereby incorporated by reference. Further, in the event that an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness in any action brought by or on behalf of or against the Committee or which otherwise relates to this Agreement or the services rendered by Chanin hereunder, the Company shall reimburse Chanin and the Indemnified Party for all reasonable expenses incurred by them in connection with such Indemnified Party appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and reasonable disbursements of legal counsel.

5. <u>Bankruptcy Court Approval</u>: The provisions of this Agreement are subject to the entry of an order of the Court approving the retention of Chanin pursuant to the terms hereof. The Committee shall use commercially reasonable best efforts to obtain prompt authorization of the retention of Chanin, <u>nunc pro tunc</u> to the date of this Agreement on the terms and provisions in this Agreement pursuant to section 328(a) of the Bankruptcy Code. The order approving the Agreement and authorizing the retention shall be acceptable to Chanin in its sole discretion.

6. <u>Entire Agreement</u>: This Agreement represents the entire Agreement between the parties and may not be modified except in writing signed by both parties. This Agreement may be executed in counterparts, each of which shall constitute an original. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision and such invalid provision shall be deemed deleted herefrom to the minimum extent necessary to cure such violation.

7. <u>Affiliation</u>: Chanin has been retained only by the Committee and that, unless agreed to by the Company and the Committee, the Committee's engagement of Chanin is not deemed to be on behalf of and is not intended to and does not confer rights upon the Company or any of its security holders, officers, agents, employees or representatives, or any individual members of the Committee.

8. <u>Choice of Law; Jurisdiction</u>: This Agreement will be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such state. Except to the extent that the parties shall be permitted to adjudicate any dispute in the Court and the Court desires to exercise such jurisdiction, each of the parties hereto consents and agrees that any claim or dispute arising out of or related to this Agreement will be brought in any state or federal court of competent jurisdiction in the State of New York, City of New York, provided that such consent and agreement shall not be deemed to require any bankruptcy case involving the Company to be filed in such courts. By execution and delivery of this Agreement, each party submits and consents in advance to such jurisdiction in any action or suit commenced in any such court. Each party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue or forum non conveniens and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such court. The consent to service of process shall be in accordance with New York law. The parties hereto waive any right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Chanin pursuant to, or the performance by Chanin of the services contemplated by, this Agreement. Nothing in this paragraph shall pertain to or affect the authority of the Court to consider and rule upon Chanin's applications for interim or final compensation pursuant to this Agreement.

9. <u>Other Matters</u>: If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records. Upon Court approval of this agreement, as well as all

schedules and annexes thereto, shall be binding upon, and inure to the benefit of, the Company, the parties hereto and their respective successors and assigns.

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

**CHANIN CAPITAL PARTNERS L.L.C.**

By: _Russell A. Belinsky_

Russell A. Belinsky

Its:     Senior Managing Director

**THE COMMITTEE:**

By: _____

Its:     Chairman

Error! Unknown document property name.

## Schedule I

This Schedule I is a part of and is incorporated into that certain letter agreement (the "Agreement"), dated June 7, 2005 by and among the Official Committee of Unsecured Creditors (the "Committee") of Collins & Aikman Corporation and its wholly and majority owned subsidiaries (collectively, the "Company"), and Chanin Capital Partners L.L.C. ("Chanin"). Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Agreement.

The Company will indemnify and hold harmless Chanin and its shareholders, officers, directors, employees and agents (collectively, the "Indemnified Parties", and each, individually, an "Indemnified Party") from an against any and all losses, claims, damages, expenses or liabilities (including, but not limited to, reasonable attorney's fees) which Chanin or any Indemnified Party may be subject to or incur at any time (notwithstanding the termination of this engagement) in connection with the services rendered by Chanin to the Committee, including, but not limited to, those arising from Chanin's or any Indemnified Party's reliance on information, representations, reports or data furnished to Chanin by the Company and those arising from any need to produce documents or give testimony at any time arising out of the services rendered by Chanin to the Committee. This paragraph shall not apply to any such losses, claims, damages, liabilities, costs or expenses of Chanin or any Indemnified Party that are judicially determined to have resulted from Chanin's or any Indemnified Party's gross negligence or willful misconduct.

Any request by Chanin for indemnification pursuant to paragraph 4 of this letter agreement shall be subject to prior approval of the Court in accordance with the requirements under §§ 330 and 331 of the Bankruptcy Code.

All requests by Chanin for payment of indemnity pursuant to this letter agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the letter agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Chanin be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty, gross negligence, reckless or willful misconduct, or malpractice arising from the foregoing (other than ordinary negligence).

In no event shall Chanin be indemnified if the Company, the Debtor, the estate, or the Committee asserts a claim for, and a court determines by final order that such claim arose out of, Chanin's own bad faith, self-dealing, breach of fiduciary duty, gross negligence, reckless or willful misconduct, or malpractice arising from the foregoing (other than ordinary negligence).

In the event that Chanin seeks reimbursement for attorneys' fees from the Company pursuant to this letter agreement, the invoices and supporting time records from such attorneys shall be included in Chanin's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and

reimbursement of expenses and the approval of the Bankruptcy Court under the standards of §§ 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under § 327 of the Bankruptcy Code.

# EXHIBIT C



EXHIBIT

C

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, *et al.* | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification # 13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

**AFFIDAVIT OF RUSSELL BELINSKY IN SUPPORT OF THE
APPLICATION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO RETAIN AND EMPLOY CHANIN CAPITAL
<u>PARTNERS AS INVESTMENT BANKER, EFFECTIVE AS OF JUNE 7, 2005</u>**

| | | |
|---|---|---|
| STATE OF CALIFORNIA | ) | |
| | ) | SS: |
| COUNTY OF LOS ANGELES | ) | |

Russell Belinsky, being duly sworn, deposes and says:

1.      I am a Senior Managing Director of Chanin Capital Partners LLP ("Chanin"), an investment banking firm with its principal office located at 11150 Santa Monica Boulevard, Suite 600, Los Angeles, CA 90025. I make this Affidavit in support of the Application of the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Collins & Aikman Corporation and its affiliated debtors (collectively, the "Debtors" or "C&A"), for an order, pursuant to sections 328 and 1103(a) of the Bankruptcy Code, authorizing the Committee to retain and employ Chanin as its investment banker, effective as of June 7, 2005 (the "Application").

2.     Unless otherwise stated in this Affidavit, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto. Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to them in the Application.

3.     Chanin is a national investment banking and financial services firm, which has extensive experience working with financially troubled entities in complex financial reorganizations, both in chapter 11 cases and out-of-court restructurings. Chanin has served, or is currently serving, as financial advisor and/or investment banker to numerous official committees and debtors-in-possession in some of the largest and most complex chapter 11 cases in the country, and has been involved in numerous restructurings in the automotive parts industry, including those of Aetna Industries, Citation, GenTek, Hayes Lemmerz, JL French, Talon Automotive, and Venture Holdings. I believe that Chanin has an excellent reputation for the services it has rendered in chapter 11 cases throughout the United States.

4.     The Committee has requested that Chanin serve as its investment banker in these chapter 11 cases to perform a broad range of services on behalf of the Committee, which may include, without limitation: (i) Reviewing and analyzing the financial and operating statements of the Debtors; (ii) Evaluating the assets and liabilities of the Debtors; (iii) Reviewing and analyzing the Debtors' business and financial projections; (iv) Evaluating the Debtors' debt capacity and liquidity position in light of their projected cash flows, including various financing opportunities available to the Debtors; (v) Assisting in the determination of an appropriate capital structure for the Debtors; (vi) Determining a theoretical range of values for the Debtors on a going concern basis; (vii) Assisting the Committee in identifying and evaluating candidates for the potential acquisition of certain assets of the Debtors as and if applicable; (viii) Advising and assisting the Committee in negotiations with any potential acquirer of certain assets of the

Debtors as a going concern as and if applicable; (ix) Evaluating the sales process for certain assets of the Debtors as a going concern as and if applicable; (x) Advising the Committee on tactics and strategies for negotiating with the Debtors and other purported stakeholders; (xi) Rendering financial advice to the Committee and participate in meetings or negotiations with the Debtors and other purported stakeholders in connection with the Restructuring Transaction.[1]; (xii) Assisting the Committee in preparing documentation required in connection with the Restructuring Transaction; (xiii) Preparing, analyzing and explaining a plan of reorganization to the various constituencies; (xiv) Reviewing and analyzing potential avoidance actions; (xv) Providing the Committee with other appropriate general restructuring advice; and (xvi) Providing expert testimony in the Bankruptcy Court with respect to the Restructuring Transaction and related transactions. I believe that Chanin is well-suited and qualified to serve as the Committee's investment banker in these cases.

5.      In connection with its retention by the Committee, the senior management of Chanin has considered whether Chanin has any relationships with the following entities (the "Interested Parties"), including those identified by the Debtors in their own list for conflicts purposes:

     (a)     the Debtors and their affiliates;

     (b)     shareholders who hold or have held more than 5% of the Debtors' securities or have made significant investments in the Debtors;

     (c)     current and prior two years directors and officers of the Debtors;

---

[1] The term "Restructuring Transaction" is defined to mean any restructuring, reorganization and/or recapitalization of all or a significant portion of the Company's existing and potential debt obligations that is achieved, without limitation, through a chapter 11 plan of reorganization, exchange offer, consent solicitation, rescheduling of debt maturities, changes in interest rates, settlement or forgiveness of debt, conversion of debt and/or other liabilities into equity, issuance of new securities, raising of new debt or equity capital, or sale or other transfer, directly or indirectly, of equity, assets or other interests of the Company whatsoever, whether in one or a series of transactions, acquisitions, mergers or other business combinations; or other similar transaction or series of transactions.

(d)    the top 50 unsecured trade creditors on a consolidated basis;

(e)    pre and post petition lenders and lienholders;

(f)    customers representing 10% or more of the Debtors' businesses and/or other significant customers;

(g)    investment bankers for the Debtors during the last three years;

(h)    issuers of Debtors' outstanding surety bonds and/or letters of credit;

(i)    Debtors' unions;

(j)    professionals, bankruptcy judge and US Trustee personnel;

(k)    other debt holders;

(l)    Debtors' landlords;

(m)    indenture trustees of securities issue by the Debtors;

(n)    counterparties to certain of the Debtors' leases/executory contracts;

(o)    parties to significant actual or known litigation involving the Debtors;

(p)    Debtors' insurers; and

(q)    potentially responsible parties in environmental matters.[3]

6.    This consideration revealed that Chanin may have had relationships to certain of the Interested Parties, and Chanin determined that the relationship to such parties generally concerned matters unrelated to the Debtors. In particular, to the best of my knowledge, information and belief, Chanin has had or has relationships with the following entities on matters unrelated to these cases:

| Party | Relationship |
|-------|--------------|
| | |
| Blackstone Management Associates LP | Working with or against on other engagements in wholly unrelated matters. |
| Credit Suisse First Boston Corporation | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or |

[3] The specific entities corresponding to most of these categories were taken from a list used by the Debtors' professionals for the same purposes in these cases.

| | |
|---|---|
| | investment banker. |
| Cypress Capital Advisors | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Deutsche Bank Alex Brown Inc. | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| BNY Midwest Trust Company | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Visteon Climate Control | One of Chanin's non-employee advisors was a prior employee; Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Deutsche Bank Securities Inc. | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Deutsche Bank | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| JPMorgan Chase Bank | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Merrill Lynch Capital Corporation | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Ford | Certain employees of Chanin hold debt/equity securities. The aggregate holdings of such Chanin employees total less than $200,000. |
| Ford Motor Company | Certain employees of Chanin hold debt/equity securities. The aggregate holdings of such Chanin employees total less than $200,000. |
| General Motors | Certain employees of Chanin hold debt/equity securities. The aggregate holdings of such Chanin employees total less than $200,000. |

| | |
|---|---|
| General Motors Corporation | Certain employees of Chanin hold debt/equity securities. The aggregate holdings of such Chanin employees total less than $200,000. |
| Akin Gump Strauss Hauer & Feld LLP | Working with or against on other engagements in wholly unrelated matters. |
| Delphi | One of Chanin's non-employee advisors was a prior consultant. |
| Kirkland & Ellis | Working with or against on other engagements in wholly unrelated matters. |
| KPMG LLP | Working with or against on other engagements in wholly unrelated matters. |
| Kroll Zolfo Cooper | Working with or against on other engagements in wholly unrelated matters. |
| Lazard Freres Co. LLC | Working with or against on other engagements in wholly unrelated matters. |
| Sitrick and Company, Inc. | Working with or against on other engagements in wholly unrelated matters. |
| MacKay Shields | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Third Avenue Trust | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| United States Steel Workers of America | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| First Union National Bank of NC | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Bank of America | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| DeLage Landen | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| GECC | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| General Electric | Member of committee or interested party in |

| | |
|---|---|
| | wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| DaimlerChrysler | One of Chanin's non-employee advisors was a prior employee. |
| Chrysler Corp. | One of Chanin's non-employee advisors was a prior employee. |
| New Venture Gear | One of Chanin's non-employee advisors was a prior employee. |
| Prexair | One of Chanin's non-employee advisors was a prior consultant. |
| Volvo | One of Chanin's non-employee advisors was a prior consultant. |
| Stanfield | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| SunAmerica | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Jefferies | Working with or against on other engagements in wholly unrelated matters. |
| UBS | Working with or against on other engagements in wholly unrelated matters. |
| Black Diamond | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Q Investments | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| AIG Global Investment Group | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Canyon Capital Advisors | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Golden Tree Asset Management | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Highland Capital Management | Member of committee or interested party in wholly unrelated matter for which Chanin |

| | acts or acted as financial advisor or investment banker. |
|---|---|
| ING Capital | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Metlife | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Mizuho | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| MW Post Advisory Group | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Putnam Investments | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Seneca Capital Management | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |
| Toronto Dominion | Member of committee or interested party in wholly unrelated matter for which Chanin acts or acted as financial advisor or investment banker. |

7.     As part of its diverse global activities, Chanin is involved in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants and financial consultants, some of which may represent the Debtors, creditors or parties-in-interest in the Debtors' chapter 11 cases. Further, Chanin itself has in the past, and may in the future, be represented by various attorneys and law firms, some of whom may be involved in these cases. In addition, Chanin has in the past, and may in the future, be working with or against other professionals involved in these cases in wholly unrelated matters. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of

these business relationships constitute interests materially adverse to the Debtors on matters upon which Chanin is to be employed, and none are in connection with these cases.

8.     Neither Chanin, nor, to the best of my knowledge, any employee of Chanin is or was a creditor or equity holder of the Debtors.

9.     Neither Chanin, nor to the best of my knowledge, any employee of Chanin is or was an investment banker for any outstanding security of the Debtors.

10.     Neither Chanin, nor to the best of my knowledge, any employee of Chanin is or was, within three years before the commencement of these cases, an investment banker for the Debtors, in connection with the offer, sale, or issuance of a security of the Debtors.

11.     Neither Chanin, nor to the best of my knowledge, any employee of Chanin is or was within two years before the commencement of these cases, a director, officer, or employee of the Debtors.

12.     Chanin believes none of its business relationships constitute interests materially adverse to the Debtors in matters upon which Chanin is to be employed.

13.     Except as may be otherwise set forth herein, to the best of my knowledge, Chanin, its principals, and professionals (i) do not have any connection with the Debtors or their affiliates, creditors, or other parties in interests, (ii) are "disinterested persons" under section 101(14) of the Bankruptcy Code, and (iii) do not hold or represent any interest adverse to the Debtors and their estates. Except as disclosed in the Application and herein, Chanin does not and has not represented any entity, other than the Committee, in matters related to these chapter 11 cases.

14.     Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict, including the efforts outlined above, I am unable to state with certainty whether one of Chanin's clients or an affiliated entity may hold a claim or

otherwise be a party in interest in these chapter 11 cases. If I discover any information that is contrary to, or pertinent to the statements made herein, I will disclose such information to the Court on appropriate notice, including to the United States Trustee, promptly. Except as may be otherwise set forth herein, Chanin does not advise, has not advised, and will not advise any entity, other than the Committee, in matters related to these chapter 11 cases.

15. Subject to the approval of the Court, as requested in the Application, the Committee and Chanin entered into an engagement letter dated as of June 7, 2005 (the "Engagement Letter"), pursuant to which Chanin was retained as the Committee's investment banker in these cases. Pursuant to the Engagement Letter, Chanin has agreed to accept payment for its services on the following terms and conditions (the "Fee Structure"):

> Monthly Advisory Fee: Chanin shall be paid a fee of $150,000 per month (the "Monthly Fee") for the term of the engagement, payable in cash, in advance on the first day of each month; and
>
> Deferred Fee: In addition to the Monthly Fees, Chanin may be paid a deferred fee (the "Deferred Fee") upon consummation of the Restructuring Transaction. The amount of the Deferred Fee will be negotiated in good faith by the Committee and Chanin. The Deferred Fee would be payable in cash as an administrative expense, upon the effective date of the Restructuring Transaction; and
>
> Expense Reimbursement: Chanin shall receive reimbursement for all of its reasonable out-of-pocket expenses incurred and paid to unaffiliated third parties in connection with services provided in connection with this engagement. Reasonable out-of-pocket expenses include all reasonable travel expenses, computer and research charges, messenger services, long-distance telephone calls and attorneys fees (which shall not exceed $25,000 without prior consent of the Debtors and Committee).[6]

---

[6] *Provided that* no prior consent of the Debtors or Committee shall be required in connection with legal fees incurred by Chanin related to objections to Chanin's retention, interim or final fee applications. The payment of such legal fees shall be borne solely by the Debtors.

The balance of the proposed terms of Chanin's retention by the Committee are set forth in the Engagement Letter, which is attached to the Application as Exhibit B.

16.     Chanin will apply to the Court for payment of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and pursuant to any additional procedures that may be established by the Court in these cases, under the appropriate standards of review therein.

17.     The proposed fee structure is consistent with Chanin's typical fee for work of this nature. The fees are set at a level designed to compensate Chanin fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is Chanin's policy to charge its clients for all disbursements and expenses incurred in the rendition of services. It is my belief that the fee structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Chanin and for comparable engagements, both in chapter 11 cases and out-of-court restructurings, and reflects a balance between a fixed, monthly fee, and a contingent amount which is tied to the consummation and closing of the transactions contemplated by the Committee and Chanin.

18.     Moreover, I believe that the Indemnity contained in the Engagement Letter (as modified by the language contained in the Application) is a reasonable term and condition of Chanin's engagement. I believe that unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers and financial advisors. In fact, I believe that the Indemnity is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Chanin and for comparable engagements, both in chapter 11 cases and out-of-court restructurings.

19.     I believe that the proposed terms of Chanin's retention are reasonable based on the customary compensation charged by Chanin and comparably skilled practitioners in complex restructuring cases, whether in chapter 11 or out-of-court restructurings. Moreover, the proposed terms of Chanin's engagement by the Committee are comparable to those which have been approved and implemented not just in this jurisdiction but also in chapter 11 cases elsewhere. Indeed, I believe that the terms of Chanin's proposed engagement are common within the industry and reflect what are considered to be "market" terms for comparable engagements.

20.     Chanin has not received any retainer from the Committee, the Debtors, or any other party. Other than as set forth in the Application, no other arrangement is proposed between the Committee and Chanin for compensation to be paid to Chanin in these cases.

21.     The proposed retention of Chanin is not prohibited by Bankruptcy Rule 5002, and I believe that this Affidavit is in accordance with sections 328(a) and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014, as I understand them.

22.     Under penalty of perjury, I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of July, 2005 in Los Angeles, California.

_____
Russell Belinsky
Senior Managing Director
Chanin Capital Partners, LLC

Sworn and subscribed to before me, a notary Public for the State of California, County of Los Angeles, this 25th day of July, 2005

_____
Notary Public

CONSTANCE MARTINEZ
Commission # 1539949
Notary Public - California
Los Angeles County
My Comm. Expires Jan 1, 2009