**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, et al.[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification #13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

---

## APPENDIX A

### TO

## AMENDED DISCLOSURE STATEMENT FOR THE FIRST AMENDED
## JOINT PLAN OF COLLINS & AIKMAN CORPORATION AND ITS DEBTOR SUBSIDIARIES

---

1   The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55935; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, et al.[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification #13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

---

## FIRST AMENDED JOINT PLAN OF
## COLLINS & AIKMAN CORPORATION AND ITS DEBTOR SUBSIDIARIES

---

KIRKLAND & ELLIS LLP

Richard M. Cieri (NY RC 6062)
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

David L. Eaton (IL 3122303)
Ray C. Schrock (IL 6257005)
Marc J. Carmel (IL 6272032)
Scott R. Zemnick (IL 6276224)
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

Co-Counsel for the Debtors

CARSON FISCHER, P.L.C.

Joseph M. Fischer (P13452)
Lawrence A. Lichtman (P35403)
4111 West Andover Road -- Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832

Co-Counsel for the Debtors

Dated: February 9, 2007

---

1 The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55935; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................................1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION  AND COMPUTATION OF TIME .................1

    A.     Defined Terms ........................................................................................................1

           1.     "Accrued Professional Compensation" ......................................................1

           2.     "Administrative Claim" ............................................................................1

           3.     "Agent" ......................................................................................................1

           4.     "Allowed" ..................................................................................................1

           5.     "Allowed . . . Claim" ................................................................................1

           6.     "Allowed Equity Interest" .........................................................................2

           7.     "Ballot" .....................................................................................................2

           8.     "Bankruptcy Code" ...................................................................................2

           9.     "Bankruptcy Court" ..................................................................................2

           10.    "Bankruptcy Rules" ..................................................................................2

           11.    "Bar Date" .................................................................................................2

           12.    "Bar Date Order" ......................................................................................2

           13.    "Beneficial Holder" ..................................................................................2

           14.    "Beneficiaries" ..........................................................................................2

           15.    "Business Day" ..........................................................................................2

           16.    "Carve Out Account" ................................................................................2

           17.    "Cash" .......................................................................................................2

           18.    "Cash Investment Yield" ...........................................................................2

           19.    "Cash Management Order" ........................................................................2

           20.    "Cause of Action" .....................................................................................2

           21.    "Chapter 11 Case" .....................................................................................3

           22.    "Claim" .....................................................................................................3

           23.    "Claims Objection Bar Date" ...................................................................3

           24.    "Class" ......................................................................................................3

           25.    "Confirmation" ..........................................................................................3

           26.    "Confirmation Date" .................................................................................3

           27.    "Confirmation Hearing" ............................................................................3

           28.    "Confirmation Order" ...............................................................................3

           29.    "Consummation" .......................................................................................3

           30.    "Core Group" ............................................................................................3

           31.    "Creditors Committee" ..............................................................................3

           32.    "Cure Amount Claim" ...............................................................................3

           33.    "Customer Agreement" .............................................................................3

34. "Debtor" .......................................................................................................3

35. "Debtor Releasees" ...........................................................................................3

36. "Debtors" ........................................................................................................4

37. "Deemed Amount" ...........................................................................................4

38. "Derivative Claim" ...........................................................................................4

39. "DIP Agent" .....................................................................................................4

40. "DIP Credit Agreement" ...................................................................................4

41. "DIP Facility" ...................................................................................................4

42. "DIP Facility Claims" .......................................................................................4

43. "DIP Lenders" ..................................................................................................4

44. "Disbursing Agent" ..........................................................................................4

45. "Disclosure Statement" .....................................................................................4

46. "Disputed . . . Claim" .......................................................................................4

47. "Disputed Claims Reserve" ...............................................................................5

48. "Distribution Record Date" ..............................................................................5

49. "Document Reviewing Centers" ........................................................................5

50. "Effective Date" ...............................................................................................5

51. "English Insolvency Law" .................................................................................5

52. "Entity" ............................................................................................................5

53. "Equity Interest" ..............................................................................................5

54. "Estate" ............................................................................................................5

55. "Estates" ..........................................................................................................5

56. "European Debtors" ..........................................................................................5

57. "Exculpated Parties" .........................................................................................5

58. "Executory Contract" ........................................................................................5

59. "Face Amount" .................................................................................................5

60. "Fee Claim" ......................................................................................................6

61. "Fee Order" ......................................................................................................6

62. "File" or "Filed" ...............................................................................................6

63. "Final Decree" ..................................................................................................6

64. "Final DIP Order" .............................................................................................6

65. "Final Order" ....................................................................................................6

66. "General Unsecured Claims" .............................................................................6

67. "Holder" ...........................................................................................................6

68. "Impaired" ........................................................................................................6

69. "Impaired Claim" ..............................................................................................6

70. "Indenture Trustee Administrative Claim Cap" .................................................6

K&E 11625366.1

71. "Indenture Trustees"........................................................................................7

72. "Insured Claim"..............................................................................................7

73. "Intercompany Claims"....................................................................................7

74. "July 8, 2005 Agreement"................................................................................7

75. "KERP"..........................................................................................................7

76. "Litigation Recovery Interests".......................................................................7

77. "Litigation Trust"............................................................................................7

78. "Litigation Trust Administrator".....................................................................7

79. "Litigation Trust Agreement"...........................................................................7

80. "Litigation Trust Allocation Exhibit"...............................................................7

81. "Litigation Trust Assets".................................................................................7

82. "Litigation Trust Claims".................................................................................7

83. "Litigation Trust Committee"...........................................................................8

84. "Master Ballots".............................................................................................8

85. "Nominee"......................................................................................................8

86. "Non-Released Parties"...................................................................................8

87. "OEM Cap-Ex Claims"....................................................................................8

88. "OEM Claims".................................................................................................8

89. "OEM Excluded Claims"..................................................................................8

90. "OEMs"..........................................................................................................8

91. "OPEB Liability".............................................................................................8

92. "Ordinary Course Professionals Order"...........................................................9

93. "Other Priority Claims"...................................................................................9

94. "Other Secured Claims"..................................................................................9

95. "PBGC Claims"...............................................................................................9

96. "Person".........................................................................................................9

97. "Petition Date"...............................................................................................9

98. "Plan".............................................................................................................9

99. "Plan Administrator".......................................................................................9

100. "Plan Objection Deadline".............................................................................9

101. "Post-Consummation Trust"...........................................................................9

102. "Post-Consummation Trust Advisory Board"..................................................9

103. "Post-Consummation Trust Agreement"..........................................................9

104. "Post-Consummation Trust Assets".................................................................9

105. "Post-Consummation Trust Beneficial Interests"............................................9

106. "Post-Consummation Trust Budget"..............................................................10

107. "Post-Petition OEM Contracts"....................................................................10

K&E 11625366.1

108. "Prepetition Credit Agreement" ...................................................................................10

109. "Prepetition Facility" .................................................................................................10

110. "Prepetition Facility Claims" ......................................................................................10

111. "Prepetition Facility Distribution" ..............................................................................10

112. "Prepetition Lenders" .................................................................................................10

113. "Priority Claims" .......................................................................................................10

114. "Priority Tax Claims" .................................................................................................10

115. "Pro Rata" ..................................................................................................................10

116. "Professional" ...........................................................................................................10

117. "Professional Escrow Account" ..................................................................................10

118. "Quarterly Distribution Date" .....................................................................................11

119. "Releasing Parties" ....................................................................................................11

120. "Remaining Assets" ...................................................................................................11

121. "Remaining Sales Transactions" .................................................................................11

122. "Required Prepetition Lenders" ..................................................................................11

123. "Residual Trust" ........................................................................................................11

124. "Residual Trust Agreement" .......................................................................................11

125. "Residual Trust Assets" ..............................................................................................11

126. "Residual Trust Rights" ..............................................................................................11

127. "Restructuring Transactions" ......................................................................................11

128. "Schedules" ...............................................................................................................11

129. "Secondary Liability Claim" .......................................................................................11

130. "Secured Claim" .........................................................................................................12

131. "Securities Act" .........................................................................................................12

132. "Senior Note Claims" .................................................................................................12

133. "Senior Note Indenture" .............................................................................................12

134. "Senior Note Indenture Trustee" .................................................................................12

135. "Senior Notes" ...........................................................................................................12

136. "Senior Subordinated Note Claims" ............................................................................12

137. "Senior Subordinated Note Indenture" .........................................................................12

138. "Senior Subordinated Note Indenture Trustee" ............................................................12

139. "Senior Subordinated Notes" ......................................................................................12

140. "Soft-Trim Sales Transaction" ....................................................................................12

141. "Steering Committee" .................................................................................................12

142. "Stipulation of Amount and Nature of Claim" .............................................................12

143. "Subordinated Securities Claims" ...............................................................................12

144. "Success Sharing Plan" ..............................................................................................13

145. "Tax Rate" .................................................................................................................13

146. "Third Party Disbursing Agent" ........................................................................13

147. "Third Party Releasees" ....................................................................................13

148. "Tort Claim" ......................................................................................................13

149. "Tranche A Litigation Recovery Interests" ........................................................13

150. "Tranche A Termination Date" ..........................................................................13

151. "Tranche B Litigation Recovery Interests" ........................................................13

152. "Trusts" ..............................................................................................................13

153. "Unexpired Lease" ............................................................................................13

154. "Unimpaired" ....................................................................................................13

155. "Uninsured Claim" ............................................................................................13

156. "Unsecured Claims" ..........................................................................................13

157. "Voting Deadline" ..............................................................................................13

158. "Voting Instructions" ........................................................................................14

159. "Wind-Down Expenses" ....................................................................................14

160. "Workers' Compensation Order" ......................................................................14

B.  Rules of Interpretation and Computation of Time ..........................................14

1.  Rules of Interpretation ..........................................................................14

2.  Computation of Time ............................................................................14

ARTICLE II. CLASSES OF CLAIMS AND EQUITY INTERESTS ....................................14

A.  Unimpaired Classes of Claims .......................................................................15

1.  Class 1 (Other Secured Claims) ...........................................................15

2.  Class 2 (Other Priority Claims) ............................................................15

B.  Impaired Classes of Claims and Equity Interests ...........................................15

1.  Class 3 (Prepetition Facility Claims) ....................................................15

2.  Class 4 (OEM Claims) ..........................................................................15

3.  Class 5 (General Unsecured Claims) .....................................................15

4.  Class 6 (Senior Note Claims and PBGC Claims) .................................15

5.  Class 7 (Senior Subordinated Note Claims) ..........................................15

6.  Class 8 (Equity Interests) ......................................................................15

7.  Class 9 (Subordinated Securities Claims) .............................................15

8.  Class 10 (Intercompany Claims) ...........................................................15

ARTICLE III. TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........................15

A.  Unclassified Claims ........................................................................................15

1.  Payment of Administrative Claims ........................................................15

2.  Payment of Priority Tax Claims ............................................................17

B.  Unimpaired Classes of Claims .......................................................................17

|  | 1. | Class 1 Claims (Other Secured Claims) | 17 |
|  | 2. | Class 2 Claims (Other Priority Claims) | 17 |
| C. | | Impaired Classes of Claims and Equity Interests | 18 |
|  | 1. | Class 3 Claims (Prepetition Facility Claims) | 18 |
|  | 2. | Class 4 Claims (OEM Claims) | 18 |
|  | 3. | Class 5 Claims (General Unsecured Claims) | 18 |
|  | 4. | Class 6 Claims (Senior Note Claims and PBGC Claims) | 18 |
|  | 5. | Class 7 Claims (Senior Subordinated Note Claims) | 18 |
|  | 6. | Class 8 Equity Interests (Equity Interests) | 19 |
|  | 7. | Class 9 Claims (Subordinated Securities Claims) | 19 |
|  | 8. | Class 10 Claims (Intercompany Claims) | 19 |
| D. | | Special Provisions Regarding the Indenture Trustees' Administrative Claims and Allowed Claims | 19 |
| E. | | Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims | 19 |

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ... 19

| A. | | Sale of Assets | 19 |
| B. | | The Post-Consummation Trust | 20 |
|  | 1. | Establishment of the Post-Consummation Trust | 20 |
|  | 2. | Funding Expenses of the Post-Consummation Trust | 20 |
|  | 3. | Appointment of the Plan Administrator | 20 |
|  | 4. | Obligations under the Customer Agreement | 20 |
| C. | | The Litigation Trust | 20 |
|  | 1. | Establishment of the Litigation Trust | 20 |
|  | 2. | Prosecution of Litigation Trust Claims | 21 |
|  | 3. | Distribution of the Litigation Recovery Interests | 21 |
|  | 4. | Litigation Trust Committee | 21 |
|  | 5. | Funding Expenses of the Litigation Trust | 21 |
|  | 6. | Appointment of the Litigation Trust Administrator | 21 |
|  | 7. | Authority to Enforce Litigation Trust Assets | 22 |
| D. | | The Residual Trust | 22 |
| E. | | Corporate Action | 22 |
| F. | | Preservation of Rights of Action | 23 |
|  | 1. | Maintenance of Causes of Action | 23 |
|  | 2. | Preservation of All Causes of Action Not Expressly Settled or Released | 24 |
| G. | | Certain Employee, Retiree and Workers' Compensation Benefits | 24 |
|  | 1. | Employee Benefits | 24 |
|  | 2. | Retiree Medical Benefits | 25 |

3. Pension Plan ...................................................................................................25

4. Workers' Compensation Benefits.........................................................................25

5. Implementation of the KERP and Success Sharing Plan......................................25

H. Limitations on Amounts to Be Distributed to the Holders of Allowed Insured Claims.................25

I. Cancellation and Surrender of Instruments, Securities and Other Documentation ........................25

J. Creation of Professional Escrow Account .................................................................26

K. Release of Liens ............................................................................................26

L. Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.............26

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..............................26

A. Executory Contracts and Unexpired Leases to Be Assumed or Assumed and Assigned...............26

1. Assumption and Assignment Generally ...................................................................26

2. Assumptions and Assignments of Executory Contracts and Unexpired Leases....................27

3. Assignments Related to the Restructuring Transactions ...........................................27

4. Approval of Assumptions and Assignments...............................................................27

B. Payments Related to the Assumption of Executory Contracts and Unexpired Leases....................27

C. Executory Contracts and Unexpired Leases to Be Rejected ......................................27

D. Bar Date for Rejection Damages.........................................................................28

E. Obligations to Indemnify Directors, Officers and Employees ...................................28

F. Contracts and Leases Entered into After the Petition Date .......................................28

G. Reservation of Rights.......................................................................................28

H. Post-Petition OEM Contracts.............................................................................29

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................29

A. Distributions for Claims Allowed as of the Effective Date.......................................29

B. Method of Distributions to Holders of Claims .......................................................29

C. Compensation and Reimbursement for Services Related to Distributions.....................30

D. Delivery of Distributions and Undeliverable or Unclaimed Distributions.....................30

1. Delivery of Distributions...................................................................................30

2. Undeliverable Distributions Held by the Disbursing Agents ...................................30

E. Distribution Record Date .................................................................................31

F. Means of Cash Payments .................................................................................31

G. Timing and Calculation of Amounts to Be Distributed ...........................................32

1. Allowed Claims...............................................................................................32

2. De Minimis Distributions .................................................................................32

3. Compliance with Tax Requirements .................................................................32

H. Setoffs ........................................................................................................32

I. Surrender of Canceled Instruments or Securities ...................................................32

1. Tender of Senior Notes or Senior Subordinated Notes.............................................33

|  |  | 2. | Lost, Stolen, Mutilated or Destroyed Senior Notes or Senior Subordinated Notes | 33 |
|  |  | 3. | Failure to Surrender Senior Notes or Senior Subordinated Notes | 33 |

**ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS** .................................................. 33

|  | A. | Prosecution of Objections to Claims | 33 |
|  |  | 1. Objections to Claims | 33 |
|  |  | 2. Authority to Prosecute Objections | 34 |
|  | B. | Treatment of the Disputed Claims | 34 |
|  | C. | Distributions on Account of the Disputed Claims Once Allowed | 34 |

**ARTICLE VIII. THE POST-CONSUMMATION TRUST; THE PLAN ADMINISTRATOR** ............................. 34

|  | A. | Generally | 34 |
|  | B. | Purpose of the Post-Consummation Trust | 34 |
|  | C. | Transfer of Assets to the Post-Consummation Trust | 35 |
|  | D. | Distribution; Withholding | 35 |
|  | E. | Insurance | 35 |
|  | F. | Post-Consummation Trust Implementation | 35 |
|  | G. | Disputed Claims Reserve | 36 |
|  | H. | Termination of the Post-Consummation Trust | 36 |
|  | I. | Termination of the Plan Administrator | 36 |
|  | J. | Exculpation; Indemnification | 36 |

**ARTICLE IX. THE LITIGATION TRUST; THE LITIGATION TRUST ADMINISTRATOR** ............................ 36

|  | A. | Generally | 36 |
|  | B. | Purpose of the Litigation Trust | 37 |
|  | C. | Transfer of Assets to the Litigation Trust | 37 |
|  | D. | Distribution; Withholding | 37 |
|  | E. | Insurance | 37 |
|  | F. | Litigation Trust Implementation | 37 |
|  | G. | Disputed Claims Reserve | 38 |
|  | H. | Termination of the Litigation Trust | 38 |
|  | I. | Termination of the Litigation Trust Administrator | 38 |
|  | J. | Exculpation; Indemnification | 38 |

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ... 38

|  | A. | Conditions to Confirmation | 38 |
|  | B. | Conditions Precedent to Consummation | 39 |
|  | C. | Waiver of Conditions | 39 |
|  | D. | Effect of Non-Occurrence of Conditions to Consummation | 39 |

ARTICLE XI. CRAMDOWN ..........................................................................................................40

ARTICLE XII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ...............................40

    A.       Compromise and Settlement .........................................................................40

    B.       Releases by the Debtors and the OEMs .......................................................40

    C.       Third Party Releases ...................................................................................41

    D.       Exculpation ...............................................................................................42

    E.       Injunction ..................................................................................................42

ARTICLE XIII. RETENTION OF JURISDICTION ......................................................................43

ARTICLE XIV. MISCELLANEOUS PROVISIONS ......................................................................44

    A.       Dissolution of the Creditors Committee.......................................................44

    B.       Modification of the Plan ..............................................................................44

    C.       Revocation of the Plan ................................................................................45

    D.       Severability of Plan Provisions ....................................................................45

    E.       Consultation ...............................................................................................45

    F.       Successors and Assigns................................................................................45

    G.       Service of Certain Plan Exhibits and Disclosure Statement Exhibits ............45

    H.       RLI Insurance Company ..............................................................................45

    I.       Sales Engineering, Inc................................................................................46

    J.       Service of Documents .................................................................................46

K&E 11625366.1

## TABLE OF EXHIBITS[1]

**Exhibit A**       Nonexclusive List of the Retained Causes of Action[2]

**Exhibit B**       Terms of the Post-Consummation Trust Agreement[3]

**Exhibit C**       Terms of the Litigation Trust Agreement[3]

**Exhibit D**       Employment and Other Agreements and Plans (that are in effect or will take effect as of the Effective Date)[3]

**Exhibit E**       Schedule of the Executory Contracts and Unexpired Leases to Be Assumed and Assigned[3]

**Exhibit F**       Nonexclusive Schedule of the Executory Contracts and Unexpired Leases to Be Rejected[3]

**Exhibit G**       Customer Agreement (and the Exhibits to the Customer Agreement Not Filed under Seal)[2]

**Exhibit H**       Residual Trust Agreement[3]

**Exhibit I**       List of Residual Trust Assets[4]

**Exhibit J**       Litigation Trust Allocation Exhibit[5]

---

[1]    Except as otherwise indicated, all Exhibits will be available for review after they are Filed during regular business hours at the Document Reviewing Centers.

[2]    Filed and available for review at the Document Reviewing Centers.

[3]    To be Filed and available for review at the Document Reviewing Centers no later than ten days before the Confirmation Hearing.

[4]    To be Filed and mailed to the Holders of Residual Trust Rights no later than twelve days before the Voting Deadline.

[5]    To be Filed and mailed to the Holders of General Unsecured Claims in Class 5, the Holders of Senior Note Claims and PBGC Claims in Class 6 and the Holders of Senior Subordinated Notes in Class 7 no later than thirty days before the Voting Deadline.

## INTRODUCTION

Collins & Aikman Corporation and the other Debtors propose the following Plan for the resolution of the outstanding claims against and equity interests in the Debtors. The Debtors are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Debtors' Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, properties and for a summary and analysis of the Plan. There also are other agreements and documents, which are or will be filed with the Bankruptcy Court, that are referenced in the Plan or the Disclosure Statement and that will be available for review.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A. Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below. Any capitalized term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1. **"Accrued Professional Compensation"** means, at any time, all accrued fees and expenses (including, as applicable, success fees) for services rendered by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by Final Order, to the extent such fees and expenses have not been paid, regardless of whether a fee application has been filed for such amount. To the extent a court denies by Final Order a Professional's fees or expenses, such amounts will no longer be considered Accrued Professional Compensation.

2. **"Administrative Claim"** means a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the respective Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises), including Claims under the DIP Credit Agreement, incurred after the Petition Date; (b) compensation for legal, financial advisory, accounting and other services rendered after the Petition Date, and reimbursement of expenses incurred in connection therewith, awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code, including Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

3. **"Agent"** means JPMorgan Chase Bank, N.A., as administrative agent under the Prepetition Credit Agreement.

4. **"Allowed"** means, with respect to Claims or Equity Interests, (a) any Claim against or Equity Interest in a Debtor, proof of which is timely Filed, or by order of the Bankruptcy Court is not or will not be required to be Filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither contingent, unliquidated nor disputed, and for which no timely proof of Claim has been Filed or (c) any Claim or Equity Interest Allowed pursuant to the Plan; <u>provided</u> that, with respect to any Claim or Equity Interest described in clauses (a) or (b) above, such Claim or Equity Interest will be Allowed only if (1) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (2) such an objection is so interposed and the Claim or Equity Interest has been Allowed by a Final Order (but only if such allowance was not solely for the purpose of voting to accept or reject the Plan). Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the amount of an Allowed Claim will not include interest on such Claim from and after the Petition Date.

5. **"Allowed . . . Claim"** means an Allowed Claim in the particular Class or category specified. Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

6.      **"Allowed Equity Interest"** means an Allowed Equity Interest in Class 8.

7.      **"Ballot"** means the form or forms distributed to each Holder of an Impaired Claim entitled to vote on the Plan on which the Holder indicates acceptance or rejection of the Plan or any election for treatment of such Claim under the Plan.

8.      **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended and, in each case, applicable to the Chapter 11 Cases.

9.      **"Bankruptcy Court"** means the United States District Court having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the bankruptcy unit of such District Court.

10.     **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court, as now in effect or hereafter amended and, in each case, applicable to the Chapter 11 Cases.

11.     **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been Filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

12.     **"Bar Date Order"** means that certain Order Establishing a Bar Date for Filing Proofs of Claim and Approving the Manner and Notice Thereof entered by the Bankruptcy Court on November 22, 2005 [Docket No. 1803].

13.     **"Beneficial Holder"** means the Person holding the beneficial interest in a Claim or Equity Interest.

14.     **"Beneficiaries"** means the Holders of Claims that are to be satisfied under the Plan by post-Effective Date distributions to be made by the Post-Consummation Trust, the Litigation Trust or the Residual Trust, as applicable.

15.     **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.     **"Carve Out Account"** means that certain segregated trust account maintained at JPMorgan Chase Bank, N.A. pursuant to the DIP Credit Agreement for the benefit of the Professionals, which account contains funds for the payment of fees and expenses incurred by the Professionals and is not property of an Estate.

17.     **"Cash"** means cash and cash equivalents.

18.     **"Cash Investment Yield"** means the net yield earned by the applicable Disbursing Agent from the investment of cash held pending distribution pursuant to the Plan, which investment will be in a manner consistent with the applicable Trust's investment and deposit guidelines.

19.     **"Cash Management Order"** means that certain First Day Order (A) Authorizing (I) Continued Use of Existing Cash Management System on an Interim Basis, (II) Maintenance of Existing Bank Accounts and (III) Continued Use of Existing Business Forms; and (B) (I) Granting Administrative Priority Status to Postpetition Intercompany Claims and (II) Authorizing Continued Performance Under Intercompany Arrangement and Historical Practices entered by the Bankruptcy Court on May 17, 2005 [Docket No. 40].

20.     **"Cause of Action"** means any and all claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, currently existing or hereafter arising, in contract or in tort, in law or in

2

equity, or under any other theory of law. Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtors or their Estates, "Causes of Action" will include, but not be limited to: (a) rights of setoff, counterclaim or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to Claims or Equity Interests; (c) Claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such Claims and defenses as fraud, mistake, duress and usury.

21.     **"Chapter 11 Case"** means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.     **"Claim"** means a "claim," as defined in section 101 of the Bankruptcy Code, against any Debtor.

23.     **"Claims Objection Bar Date"** means, for all Claims that have not been Allowed, the latest of: (a) 180 days after the Effective Date; (b) 180 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such Claim.

24.     **"Class"** means a class of Claims or Equity Interests, as described in Article II.

25.     **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

26.     **"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

28.     **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan.

29.     **"Consummation"** means the occurrence of the Effective Date.

30.     **"Core Group"** means the parties defined in the First Amended Notice, Case Management and Administrative Procedures filed on June 9, 2005 [Docket No. 294] as the "Core Group."

31.     **"Creditors Committee"** means the official committee of unsecured creditors of the Debtors appointed by the United States trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

32.     **"Cure Amount Claim"** means a Claim based upon a Debtor's defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by that Debtor under section 365 of the Bankruptcy Code.

33.     **"Customer Agreement"** means that certain agreement entered into by and between, among others, the Debtors, the Agent, the DIP Agent, DaimlerChrysler Corporation, Ford Motor Company, General Motors Corporation, Honda of America Manufacturing, Inc. and AutoAlliance International, Inc., and approved on a final basis by order of the Bankruptcy Court entered on January 17, 2007 [Docket No. 3918].

34.     **"Debtor"** means, as the context requires, any of the Debtors.

35.     **"Debtor Releasees"** means (a) all officers, directors and employees and their respective subsidiaries employed by the Debtors at any time on or after November 1, 2006, (b) all attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives of the Debtors and their subsidiaries and (c) the Releasing Parties, their respective predecessors and successors in interest, and all of their respective current and former members, officers, directors, employees,

3

partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives; provided that no Non-Released Parties are Debtor Releasees.

36.       **"Debtors"** means, collectively, the debtors identified on the cover page to the Plan.

37.       **"Deemed Amount"** means, for any particular Claim, (a) the scheduled amount of such Claim, unless a proof of Claim was Filed with respect to such Claim, in which case the proof of Claim amount supersedes the scheduled amount, (b) the amount asserted in Filed proofs of Claim for which there are not corresponding scheduled amounts and (c) if a Filed proof of Claim does not assert a sum certain, the Deemed Amount will be determined by court order.  In all events, if the amount of a Claim is determined or estimated for any purposes by Final Order or stipulation, then that amount will be the Deemed Amount for that Claim.

38.       **"Derivative Claim"** means a claim that is property of any of the Debtors' Estates pursuant to section 541 of the Bankruptcy Code.

39.       **"DIP Agent"** means JPMorgan Chase Bank, N.A., as administrative agent under the DIP Credit Agreement.

40.       **"DIP Credit Agreement"** means (a) that certain Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement, dated as of July 28, 2005, as it may be subsequently amended and modified, by and among Collins & Aikman Products Co., as borrower, substantially all of the domestic direct and indirect subsidiaries of Collins & Aikman Corporation, as guarantors, the DIP Agent and certain other lenders named therein; (b) all amendments and restatements thereto and extensions thereof; and (c) all security agreements, other agreements and instruments related to the documents identified in (a) and (b) of this definition.

41.       **"DIP Facility"** means that certain debtor-in-possession senior, secured credit facility entered into pursuant to the DIP Credit Agreement.

42.       **"DIP Facility Claims"** means all "DIP Obligations" (as defined in the Final DIP Order) outstanding under the DIP Facility as of the Effective Date.

43.       **"DIP Lenders"** means the lenders under the DIP Credit Agreement.

44.       **"Disbursing Agent"** means the Post-Consummation Trust, the Litigation Trust, the Senior Note Indenture Trustee or the Senior Subordinated Note Indenture Trustee, as applicable, each in its capacity as a disbursing agent pursuant to Article VI.B, or any Third Party Disbursing Agent.

45.       **"Disclosure Statement"** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

46.       **"Disputed . . . Claim"** means:

(a)       if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law:  (i) a Claim that is listed on a Debtor's Schedules as other than contingent, unliquidated or disputed, but as to which the applicable Debtor, the applicable Trust or, prior to the Confirmation Date, any other party in interest, has Filed an objection by the Claims Objection Bar Date and such objection has not been withdrawn or denied by a Final Order; or (ii) a Claim that is listed on a Debtor's Schedules as contingent, unliquidated or disputed; or

(b)       if a proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law:  (i) a Claim for which no corresponding Claim is listed on a Debtor's Schedules; (ii) a Claim for which a corresponding Claim is listed on a Debtor's Schedules as other than contingent, unliquidated or disputed, but the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iii) a Claim for

4

which a corresponding Claim is listed on a Debtor's Schedules as contingent, unliquidated or disputed; (iv) a Claim for which an objection has been Filed by the applicable Debtor, the applicable Trust or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order; or (v) a Tort Claim.

47.     **"Disputed Claims Reserve"** means a reserve for any distributions to be set aside by the Person administering a Trust on account of Disputed Claims.

48.     **"Distribution Record Date"** means the date set by the Bankruptcy Court for determining the Holders of Claims entitled to vote on the Plan.

49.     **"Document Reviewing Centers"** means, collectively:  (a) the offices of Kirkland & Ellis LLP at 200 East Randolph Drive, Chicago, Illinois 60601; and (b) any other locations designated by the Debtors at which any party in interest may review all of the exhibits and schedules to the Plan and the Disclosure Statement.

50.     **"Effective Date"** means a day, as determined by the Debtors and the Agent that is the Business Day occurring as soon as reasonably practicable after all conditions to the Effective Date in Article X.B have been met or waived pursuant to Article X.C.

51.     **"English Insolvency Law"** means the English Insolvency Act of 1986.

52.     **"Entity"** means an "entity," as defined in section 101 of the Bankruptcy Code.

53.     **"Equity Interest"** means all equity interests in any of the Debtors, including all issued, unissued, authorized or outstanding shares of stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

54.     **"Estate"** means, as to each Debtor, the estate created for that Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

55.     **"Estates"** means, collectively, the estates created for the Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

56.     **"European Debtors"** means the Debtors' European subsidiaries that, on July 15, 2005, petitioned for administration orders pursuant to Schedule B1 of the English Insolvency Law in the Companies Court of the High Court of Justice, Chancery Division in London, England.  For purposes of clarification, the European Debtors are not Debtors in the Chapter 11 Cases.

57.     **"Exculpated Parties"** means: (a) the Debtors; (b) the Trusts; (c) the Releasing Parties and their respective predecessors and successors in interest; (d) the OEMs; and (e) all of the current (and former as it relates to the Persons described in foregoing clauses (c) and (d)) officers, directors, employees, members, partners, investment advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, affiliates and representatives of each of the foregoing Persons (in each case in his, her or its capacity as such); provided that no Non-Released Parties will be Exculpated Parties.

58.     **"Executory Contract"** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

59.     **"Face Amount"** means:

        (a)      when used with reference to a Disputed Insured Claim, either (i) the full stated amount claimed by the Holder of such Claim in any proof of Claim Filed by the Bar Date, or otherwise deemed timely Filed under applicable law, if the proof of Claim specifies only a liquidated amount; (ii) if no proof of Claim is Filed by the Bar Date or otherwise deemed timely filed under applicable law, the full amount of the Claim listed on the Debtors' Schedules provided that such amount is not listed as contingent, unliquidated or disputed; or (iii) the applicable

deductible under the relevant insurance policy minus any reimbursement obligations of the applicable Debtor to the insurance carrier for sums expended by the insurance carrier on account of such Claim (including defense costs), if such amount is less than the amount specified in (i) or (ii) above or the proof of Claim specifies an unliquidated amount; and

(b)     when used with reference to a Disputed Uninsured Claim, either:  (i) the full stated amount claimed by the Holder of such Claim in any proof of Claim Filed by the Bar Date or otherwise deemed timely Filed under applicable law, if the proof of Claim specifies only a liquidated amount; or (ii) the amount of the Claim acknowledged by the applicable Debtor or the applicable Trust in any objection Filed to such Claim or in the Schedules as a noncontingent, liquidated and undisputed Claim, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code or proposed by the Debtors or the Post-Consummation Trust and approved by the United States trustee, if no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law or if the proof of Claim specifies an unliquidated amount.

60.     **"Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases.

61.     **"Fee Order"** means that certain Administrative Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses for Professionals and Official Committee Members entered by the Bankruptcy Court on June 9, 2005 [Docket No. 290].

62.     **"File" or "Filed"** means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

63.     **"Final Decree"** means the decree contemplated under Bankruptcy Rule 3022.

64.     **"Final DIP Order"** means the Final Order (I) Authorizing Debtors (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 entered by the Bankruptcy Court on July 28, 2005 [Docket No. 809].

65.     **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or as to which the new trial, reargument or rehearing has been denied or resulted in no modification of such order.

66.     **"General Unsecured Claims"** means any Claim against the Debtors that is not a/an: (a) Administrative Claim; (b) DIP Facility Claim; (c) Priority Tax Claim; (d) Other Secured Claim; (e) Other Priority Claim; (f) Prepetition Facility Claim; (g) OEM Claim; (h) PBGC Claim; (i) Senior Note Claim; (j) Senior Subordinated Note Claim; (k) Equity Interest; (l) Subordinated Securities Claim; or (m) Intercompany Claim.

67.     **"Holder"** means a Person holding a Claim or an Equity Interest.

68.     **"Impaired"** means, with respect to any Class of Claims or Equity Interests, Claims or Equity Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

69.     **"Impaired Claim"** means a Claim classified in an Impaired Class.

70.     **"Indenture Trustee Administrative Claim Cap"** means $850,000.

71.     **"Indenture Trustees"** means, collectively, the Senior Note Indenture Trustee and the Senior Subordinated Note Indenture Trustee.

72.     **"Insured Claim"** means any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy, other than a workers' compensation insurance policy, applicable to the Debtors or their businesses.

73.     **"Intercompany Claims"** means any and all Claims and Equity Interests of a Debtor against and in another Debtor.

74.     **"July 8, 2005 Agreement"** means that certain agreement entered into by and between, among others, the Debtors, the Agent, the DIP Agent, DaimlerChrysler Corporation, Ford Motor Company, General Motors Corporation, Honda of America Manufacturing, Inc., Nissan North America Inc. and Toyota Engineering & Motor Manufacturing North America, Inc., and approved by order of the Bankruptcy Court on August 11, 2005 [Docket No. 916].

75.     **"KERP"** means that certain key employee retention program described in the Debtors' Motion for an Order Authorizing the Debtors to Implement a Key Employee Retention Program filed November 7, 2005 [Docket No. 1635] and approved by the Bankruptcy Court on December 16, 2005 [Docket No. 1901].

76.     **"Litigation Recovery Interests"** means the Tranche A Litigation Recovery Interests and the Tranche B Litigation Recovery Interests.

77.     **"Litigation Trust"** means that certain litigation trust to be formed on the Effective Date pursuant to the Litigation Trust Agreement.

78.     **"Litigation Trust Administrator"** means the Person designated by the Agent, in consultation with the Prepetition Lenders and the Creditors Committee, on or before the Confirmation Date and retained as of the Effective Date as the employee or fiduciary responsible for administering the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, and any successor appointed in accordance with the Litigation Trust Agreement.

79.     **"Litigation Trust Agreement"** means that certain trust agreement, substantially on the terms set forth on Exhibit C, that will govern the Litigation Trust.

80.     **"Litigation Trust Allocation Exhibit"** means Exhibit J to the Plan, which will govern the allocation of the Litigation Recovery Interests among the Holders of Allowed General Unsecured Claims in Class 5, the Holders of Allowed Senior Note Claims and Allowed PBGC Claims in Class 6 and the Holders of Allowed Senior Subordinated Note Claims in Class 7.

81.     **"Litigation Trust Assets"** means those assets, including the Litigation Trust Claims, to be transferred to and owned by the Litigation Trust, pursuant to the Litigation Trust Agreement; provided that the Litigation Trust Assets will not include any Causes of Action of the Debtors or their Estates against any of the OEMs.

82.     **"Litigation Trust Claims"** means any and all Causes of Action identified in the Litigation Trust Agreement, which will include any Causes of Action arising under chapter 5 of the Bankruptcy Code that are not released under the Plan or other Bankruptcy Court-approved settlements; provided that the Litigation Trust Claims will not include (a) any Causes of Action of the Debtors or their Estates against any of the OEMs or (b) unless the Debtors, the Agent and the Committee agree otherwise, (i) any Cause of Action of the Debtors or their Estates that is the subject of a pending contested matter on or before January 25, 2007, but excluding any such Cause of Action that is not settled as of the Effective Date, or (ii) any Cause of Action of the Debtors or their Estates that is settled to allow for the consummation of the Soft-Trim Sales Transaction or the Remaining Sales Transactions.

83.      **"Litigation Trust Committee"** means the committee to be formed pursuant to the Litigation Trust Agreement to govern and manage the Litigation Trust.

84.      **"Master Ballots"** means the master ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

85.      **"Nominee"** means any broker, dealer, commercial bank, trust company, savings and loan, financial institution or other nominee in whose name securities were registered or held of record on behalf of a Beneficial Holder.

86.      **"Non-Released Parties"** means any Person listed as a potential party with respect to any of the Causes of Action set forth on Exhibit A.

87.      **"OEM Cap-Ex Claims"** means any and all Allowed Claims held by each of the OEMs, Nissan North America Inc. and Toyota Engineering & Motor Manufacturing North America, Inc. under Section 22 of the Customer Agreement and Section 2.05 of the July 8, 2005 Agreement (the terms of which may have been amended and/or extended in subsequent agreements with the Debtors), as applicable, for costs incurred, or cash payments made, after the effective date of the Customer Agreement or the effective date of the July 8, 2005 Agreement, as applicable, including: (a) costs or payments for installation and commissioning of newly-acquired equipment and plant and equipment set-up expenses and rearrangement; and (b) relocation and refurbishment costs for existing plant, property and equipment that are pre-approved by the applicable party.

88.      **"OEM Claims"** means: (a) any Claim held by an OEM arising from any rights to repayment approved by the Bankruptcy Court for (i) the launch costs paid by the OEMs during the Chapter 11 Cases (other than launch costs incurred in connection with the Debtors' Hermosillo, Mexico plant), (ii) junior secured claims (i.e., claims arising from or relating to the $82.5 million aggregate amount junior secured debtor in possession loan) and (iii) the $30 million aggregate amount administrative loans; (b) any Claim held by an OEM for special or consequential damages; (c) any other Claim held by an OEM for damages, including any prior surcharges, the amounts paid pursuant to the Customer Agreement and all other special or consequential damages arising out of or in any way relating to the Debtors' inability to perform, or breach of performance, under production and service contracts relating to the Debtors' plastics & convertibles business segment; and (d) any other Claim held by an OEM that would otherwise have to be paid in Cash in full (absent agreement to different treatment by the Holder thereof) pursuant to section 1129(a)(9)(A) of the Bankruptcy Code under a confirmed chapter 11 plan; provided that the OEM Claims do not include the OEM Excluded Claims or Nissan North America, Inc.'s portion of the $30 million administrative loans described in (a)(iii) of this definition.

89.      **"OEM Excluded Claims"** means: (a) any Claims held by an OEM relating to Ordinary Course Setoffs (as defined in the Customer Agreement) up to the 3% limitation set forth in Section 8 of the Customer Agreement; (b) any administrative expense claims held by an OEM for damages up to $25 million in the aggregate arising from shipments after the effective date of the Customer Agreement of component parts manufactured by the Debtors' carpet & acoustics business segment that are expressly permissible under Section 9 of the Customer Agreement; (c) OEM Cap-Ex Claims, but solely to the extent they constitute Secured Claims; and (d) any other Claims held by an OEM not specifically mentioned as waived, paid or discharged in the Customer Agreement.

90.      **"OEMs"** means DaimlerChrysler Corporation, DaimlerChrysler Canada, Inc., DaimlerChrysler Motor Company, LLC, Ford Motor Company, General Motors Corporation, GM de Mexico S. de R.L. de C.V., GM of Canada Limited, Honda of America Manufacturing, Inc. and AutoAlliance International, Inc.

91.      **"OPEB Liability"** means any and all Claims that are subject to section 1114 of the Bankruptcy Code.

92. **"Ordinary Course Professionals Order"** means that certain Order Authorizing the Debtors to Employ and Compensate Certain Professionals Utilized in the Ordinary Course of the Debtors' Businesses entered by the Bankruptcy Court on June 9, 2005 [Docket No. 293].

93. **"Other Priority Claims"** means any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

94. **"Other Secured Claims"** means any and all Secured Claims against the Debtors not specifically described herein, including OEM Cap-Ex Claims but solely to the extent they constitute Secured Claims; provided that Other Secured Claims will not include Prepetition Facility Claims, Intercompany Claims or Claims of the Indenture Trustees.

95. **"PBGC Claims"** means any and all Claims of the Pension Benefit Guaranty Corporation relating to the Collins & Aikman Pension Plan, including any and all Claims arising from the termination of such pension plan; provided that PBGC Claims will not include any Administrative Claims or Priority Claims that may be held by the Pension Benefit Guaranty Corporation.

96. **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency, or political subdivision thereof, or other Entity.

97. **"Petition Date"** means May 17, 2005.

98. **"Plan"** means this First Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries, and all exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

99. **"Plan Administrator"** means the Person designated by the Agent, in consultation with the Prepetition Lenders, on or before the Confirmation Date and retained as of the Effective Date as the employee or fiduciary responsible for implementing the applicable provisions of the Plan and administering the Post-Consummation Trust in accordance with the Plan and the Post-Consummation Trust Agreement, and any successor appointed in accordance with the Post-Consummation Trust Agreement.

100. **"Plan Objection Deadline"** means the deadline established by the Bankruptcy Court for filing and serving objections to the Confirmation of the Plan.

101. **"Post-Consummation Trust"** means that certain trust to be created on the Effective Date in accordance with the provisions of Article VIII of the Plan and the Post-Consummation Trust Agreement for the benefit of Holders of Prepetition Facility Claims.

102. **"Post-Consummation Trust Advisory Board"** means the committee appointed pursuant to the Post-Consummation Trust Agreement to oversee the Post-Consummation Trust and the Plan Administrator.

103. **"Post-Consummation Trust Agreement"** means that certain trust agreement, in form and substance satisfactory to the Debtors and the Agent, that, among other things, (a) establishes and governs the Post-Consummation Trust, (b) describes the powers, duties and responsibilities of the Plan Administrator and the liquidation and distribution of proceeds of the Post-Consummation Trust Assets and (c) describes the powers, duties and responsibilities of the Post-Consummation Trust Advisory Board.

104. **"Post-Consummation Trust Assets"** means all assets held from time to time by the Post-Consummation Trust, including, but not limited to, the Remaining Assets.

105. **"Post-Consummation Trust Beneficial Interests"** means the beneficial interests in the Post-Consummation Trust, which interests will entitle the holders thereof to continuing distributions by the

9

Post-Consummation Trust of the proceeds recovered from the liquidation of the Post-Consummation Trust Assets, including, but not limited to, the distribution of the net proceeds recovered on account of the Remaining Sales Transactions.

106.    **"Post-Consummation Trust Budget"** means the budget, in form and substance satisfactory to the Debtors and the Agent, for Wind-Down Expenses projected to be paid by the Post-Consummation Trust (including, Administrative Claims, Other Secured Claims and Priority Claims under the Plan), which budget will be an exhibit to the Post-Consummation Trust Agreement.

107.    **"Post-Petition OEM Contracts"** means, collectively, (a) the Customer Agreement, (b) any contracts between an OEM and a Debtor entered into before the Petition Date that were amended and treated as postpetition contracts by a Final Order of the Bankruptcy Court and (c) any contracts between an OEM and a Debtor entered into after the Petition Date.

108.    **"Prepetition Credit Agreement"** means that certain credit agreement, dated as of December 20, 2001, by and among Collins & Aikman Products Co., as borrower, substantially all of the domestic direct and indirect subsidiaries of Collins & Aikman Corporation, as guarantors, the Agent and certain other lenders named therein, as amended and restated as of September 1, 2004, as the same may have been subsequently modified, amended or supplemented, together with all instruments and agreements related thereto.

109.    **"Prepetition Facility"** means that certain senior secured credit facility entered into pursuant to the Prepetition Credit Agreement.

110.    **"Prepetition Facility Claims"** means the total amount outstanding under the Prepetition Facility as of the Effective Date.

111.    **"Prepetition Facility Distribution"** means the cash of the Debtors as of the Effective Date (including any cash of or recoveries from non-Debtor affiliates that is available to the Debtors), after giving effect to or making provision for the (a) cash payments required under the Plan, including the amount of cash required to be included in the Remaining Assets transferred to the Post-Consummation Trust and (b) cash needed to be retained to enable the Debtors to comply with the Customer Agreement.

112.    **"Prepetition Lenders"** means the lenders from time to time under the Prepetition Credit Agreement.

113.    **"Priority Claims"** means, collectively, Priority Tax Claims and Other Priority Claims.

114.    **"Priority Tax Claims"** means any and all Claims of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

115.    **"Pro Rata"** means the proportion that the amount of an Allowed Claim or an Allowed Equity Interest in a particular Class bears to the aggregate amount of Allowed Claims or the aggregate number of Allowed Equity Interests in such Class.

116.    **"Professional"** means any professional employed in the Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

117.    **"Professional Escrow Account"** means an interest-bearing savings account to be funded and maintained in trust for the Post-Consummation Trust on and after the Effective Date solely for the purpose of paying all fees and expenses of Professionals in these Chapter 11 Cases. The Professional Escrow Account will not constitute property of the Post-Consummation Trust.

118. **"Quarterly Distribution Date"** means the last Business Day of the month following the end of each calendar quarter after the Effective Date; provided that if the Effective Date is within 45 days of the end of a calendar quarter, the first Quarterly Distribution Date will be the last Business Day of the month following the end of the first calendar quarter after the calendar quarter in which the Effective Date falls.

119. **"Releasing Parties"** means the Creditors Committee, each current member of the Creditors Committee, the DIP Lenders, the DIP Agent, the Prepetition Lenders, the Agent, the Steering Committee, each member of the Steering Committee, all Holders of Claims in Class 3, each Holder of a Claim that votes in favor of the Plan and, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or at any time was a Holder of a Claim of any of the Debtors and that does not vote on the Plan or votes against the Plan; provided that the Releasing Parties will not include any of the OEMs or the Holders of Equity Interests in Class 8.

120. **"Remaining Assets"** means all assets of the Debtors that are not divested prior to the Effective Date or transferred to the Litigation Trust, including, but not limited to, as a result of the Soft-Trim Sales Transaction or any Remaining Sales Transactions that are consummated prior to the Effective Date, but excluding any Residual Trust Assets being transferred to the Residual Trust on the Effective Date.

121. **"Remaining Sales Transactions"** means the sale of all or substantially all of the Debtors' assets through one or more sales conducted both prior and subsequent to Confirmation of the Plan.

122. **"Required Prepetition Lenders"** means Prepetition Lenders holding, in the aggregate, two-thirds in amount and a majority in number of the Prepetition Facility Claims.

123. **"Residual Trust"** means the trust established in accordance with Article IV.D of the Plan and the Residual Trust Agreement to pay or otherwise resolve the Residual Trust Rights.

124. **"Residual Trust Agreement"** means that certain trust agreement, substantially on the terms set forth on Exhibit H, that will govern the Residual Trust.

125. **"Residual Trust Assets"** means those assets of the Debtors set forth on Exhibit I and such Post-Consummation Trust Assets as may be designated as Residual Trust Assets by the Plan Administrator after the Effective Date.

126. **"Residual Trust Rights"** means to the extent not Class 5 Claims, any environmental-related Claims, liens or rights arising from the ownership and operation of the Residual Trust Assets or, in the case of insurance that is a Residual Trust Asset, a right to payment or claim against such insurance.

127. **"Restructuring Transactions"** means, collectively, those mergers, consolidations, restructurings, dispositions, liquidations or dissolutions that the Debtors and the Plan Administrator determine to be necessary or appropriate to effectuate the purpose of the Plan.

128. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms, as the same may have been or may be amended, modified or supplemented.

129. **"Secondary Liability Claim"** means a Claim that arises from a Debtor being liable as a guarantor of, or otherwise being jointly, severally or secondarily liable for, any contractual, tort or other obligation of another Debtor, including any Claim based on: (a) guaranties of collection, payment or performance; (b) indemnity bonds, obligations to indemnify or obligations to hold harmless; (c) performance bonds; (d) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or other transfer) with respect to leases, operating agreements or other similar obligations made or given by a Debtor relating to the obligations or performance of another Debtor; (e) vicarious liability; (f) liabilities arising out of piercing the corporate veil, alter-ego liability or similar legal theories; or (g) any other joint or several liability that any Debtor may have in respect of any obligation that is the basis of a Claim.

130.     **"Secured Claim"** means a Claim that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the interest of the Holder of the Claim in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code and, if applicable, section 1129(b) of the Bankruptcy Code.

131.     **"Securities Act"** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

132.     **"Senior Note Claims"** means any and all Claims for principal or interest arising from the Senior Notes.

133.     **"Senior Note Indenture"** means that certain indenture, dated as of December 20, 2001, by and among Collins & Aikman Products Co., as issuer, substantially all of the domestic direct and indirect subsidiaries of Collins & Aikman Corporation, as guarantors, and BNY Midwest Trust Company, as indenture trustee, as the same may have been subsequently modified, amended or supplemented, together with all instruments and agreements related thereto.

134.     **"Senior Note Indenture Trustee"** means BNY Midwest Trust Company, as trustee under the Senior Note Indenture.

135.     **"Senior Notes"** means those certain 10-3/4% unsecured senior notes due 2011 issued pursuant to the Senior Note Indenture.

136.     **"Senior Subordinated Note Claims"** means any and all Claims for principal or interest arising from the Senior Subordinated Notes.

137.     **"Senior Subordinated Note Indenture"** means that certain indenture, dated as of August 26, 2004, by and among Collins & Aikman Products Co., as issuer, substantially all of the domestic direct and indirect subsidiaries of Collins & Aikman Corporation, as guarantors, and BNY Midwest Trust Company, as indenture trustee, as the same may have been subsequently modified, amended or supplemented, together with all instruments and agreements related thereto.

138.     **"Senior Subordinated Note Indenture Trustee"** means The Law Debenture Company, as trustee under the Senior Subordinated Note Indenture.

139.     **"Senior Subordinated Notes"** means those certain 12-7/8% senior subordinated notes due August 15, 2012, issued pursuant to the Senior Subordinated Note Indenture.

140.     **"Soft-Trim Sales Transaction"** means the sale or sales of all or substantially all of the Debtors' assets involved in the business of operating their "Carpet & Acoustics" business segment, which business segment includes the manufacturing of a variety of automotive flooring and acoustics products, such as carpet, accessory mats and alternative molded flooring, absorbing materials, damping materials and engine compartment and interior insulators.

141.     **"Steering Committee"** means the unofficial Steering Committee of the Prepetition Lenders.

142.     **"Stipulation of Amount and Nature of Claim"** means a stipulation or other agreement between the applicable Debtor or the Post-Consummation Trust and a Holder of a Claim or Equity Interest, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim or Equity Interest.

143.     **"Subordinated Securities Claims"** means Claims of the type described in, and subject to subordination under, section 510(b) of the Bankruptcy Code, including any and all Claims whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, currently existing or hereafter arising, arising from rescission of a purchase or sale of a security of the Debtors or an affiliate of the Debtors, for damages

12

arising from the purchase, sale or holding of such securities, or for reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

144.     **"Success Sharing Plan"** means that certain success sharing plan approved by the (a) Order Approving Employment Agreements of Frank Macher, as President and Chief Executive Officer, and Other Members of Debtors' New Management Team [Docket No. 1144] and (b) Order Authorizing the Implementation of a Key Employee Retention Program [Docket No. 1901].   For clarity, no success sharing plan that has been terminated before the Effective Date is a Success Sharing Plan.

145.     **"Tax Rate"** means the rate equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(c)) as of the Effective Date.

146.     **"Third Party Disbursing Agent"** means a Person designated by the Post-Consummation Trust or the Litigation Trust, as applicable, to act as a Disbursing Agent pursuant to Article VI.B.

147.     **"Third Party Releasees"** means, collectively, the Debtors and the Debtor Releasees.

148.     **"Tort Claim"** means any Claim that has not been settled, compromised or otherwise resolved that:  (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment.

149.     **"Tranche A Litigation Recovery Interests"** means (a) from the Effective Date through the Tranche A Termination Date, a 75% beneficial interest in the proceeds of the Litigation Trust Assets recovered by the Litigation Trust and (b) thereafter, no interest in the Litigation Trust.

150.     **"Tranche A Termination Date"** means the date on which the Allowed Class 3 Claims (which, for this purpose, will include interest accrued through the Effective Date on the Prepetition Facility Claims at the non-default contractual interest rate based on a spread above the Alternate Base Rate) have been paid in full including from, for the avoidance of doubt, distributions (a) by the Debtors prior to the Effective Date, (b) by the Debtors under the Plan, (c) by the Post-Consummation Trust and/or (d) by the Litigation Trust (but excluding any distributions or other revenues received by any Holder of Prepetition Facility Claims in respect of any investment made by such Holder pursuant to a co-investment right offered to such Holder).

151.     **"Tranche B Litigation Recovery Interests"** means (a) from the Effective Date through the Tranche A Termination Date, a 25% beneficial interest in the proceeds of the Litigation Trust Assets recovered by the Litigation Trust and (b) thereafter, a 100% beneficial interest in the proceeds of the Litigation Trust Assets recovered by the Litigation Trust.

152.     **"Trusts"** means, collectively, the Post-Consummation Trust and the Litigation Trust.

153.     **"Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

154.     **"Unimpaired"** means, with respect to a Class of Claims or Equity Interests, a Claim or Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

155.     **"Uninsured Claim"** means any Claim that is not an Insured Claim.

156.     **"Unsecured Claims"** means, collectively, General Unsecured Claims, Senior Note Claims, PBGC Claims and Senior Subordinated Note Claims.

157.     **"Voting Deadline"** means the deadline that is specified in the Disclosure Statement, the Ballots or related solicitation documents approved by the Bankruptcy Court for submitting Ballots and Master Ballots to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

158.     **"Voting Instructions"** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "VOTING INSTRUCTIONS" and in the Ballots and the Master Ballots.

159.     **"Wind-Down Expenses"** means the costs and expenses necessary to administer and perform the contemplated functions of the Post-Consummation Trust in accordance with the Post-Consummation Trust Budget.

160.     **"Workers' Compensation Order"** means that certain First Day Order:  (A) Authorizing the Debtors to Continue to Pay and Honor Certain Prepetition Claims for (i) Wages, Salaries and Other Compensation, (ii) Withholdings and Deductions and (iii) Reimbursable Employee Expenses; (B) Authorizing the Debtors to Continue to Provide Employee Benefits in the Ordinary Course of Business; (C) Authorizing the Debtors to Pay All Related Costs and Expenses; and (D) Directing Banks to Receive, Honor and Pay All Checks and Electronic Payment Requests Related to the Foregoing, entered by the Bankruptcy Court on May 17, 2005 [Docket No. 48].

**B.**     **Rules of Interpretation and Computation of Time**

1.     Rules of Interpretation

For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (d) any reference to a Person as a Holder of a Claim or Equity Interest includes that Person's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

2.     Computation of Time

In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II.

## CLASSES OF CLAIMS AND EQUITY INTERESTS

All Claims and Equity Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Article III.A, have not been classified and thus are excluded from the following Classes.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

A.    **Unimpaired Classes of Claims**

    1.    Class 1 (Other Secured Claims):  Other Secured Claims against any Debtor.

    2.    Class 2 (Other Priority Claims):  Priority Claims against any Debtor that are entitled to priority under section 507(a)(4), (5), (6) or (7) of the Bankruptcy Code.

B.    **Impaired Classes of Claims and Equity Interests**

    1.    Class 3 (Prepetition Facility Claims):  Prepetition Facility Claims against any Debtor.

    2.    Class 4 (OEM Claims):  OEM Claims against any Debtor.

    3.    Class 5 (General Unsecured Claims):  General Unsecured Claims against any Debtor.

    4.    Class 6 (Senior Note Claims and PBGC Claims):  Senior Note Claims and PBGC Claims against any Debtor.

    5.    Class 7 (Senior Subordinated Note Claims):  Senior Subordinated Note Claims against any Debtor.

    6.    Class 8 (Equity Interests):  Equity Interests in any Debtor.

    7.    Class 9 (Subordinated Securities Claims):  Subordinated Securities Claims against any Debtor.

    8.    Class 10 (Intercompany Claims):  Intercompany Claims that are not Administrative Claims.

### ARTICLE III.

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

All payments and other distributions stated in this Article to be made by the Debtors will, (a) if made on or before the Effective Date, be made by the Debtors and (b) if made after the Effective Date, be made by the Post-Consummation Trust or the Litigation Trust, as applicable.

A.    **Unclassified Claims**

    1.    Payment of Administrative Claims

        (a)    Administrative Claims in General

Except as specified in this Article III.A.1, and subject to the bar date provisions herein, unless otherwise agreed to by the Holder of an Administrative Claim and the applicable Debtor or the Post-Consummation Trust, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, Cash equal to the Allowed amount of such Administrative Claim either (i) on the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, no more than 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Post-Consummation Trust and the Holder of the Administrative Claim.

        (b)    Statutory Fees

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors in Cash equal to the amount of such Administrative Claims.  After the Effective Date, all fees

15

payable pursuant to 28 U.S.C. § 1930 will be paid by the Post-Consummation Trust in accordance therewith until the closing of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

(c)     Ordinary Course Liabilities

Subject to Article III.A.1(f), Administrative Claims based on liabilities incurred by a Debtor in the ordinary course of its business will be paid by the Debtors or the Post-Consummation Trust pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims or, if and to the extent that such ordinary course obligations are assumed by the purchaser (or purchasers) in connection with the Soft-Trim Sales Transaction or any Remaining Sales Transactions, by such purchaser (or purchasers), in each case without any further action by the Holders of such Administrative Claims.

(d)     DIP Facility Claims

All DIP Facility Claims will be Allowed in full.  On the Effective Date, the DIP Agent, on its own behalf and on behalf of the DIP Lenders, will receive cash in an amount equal to 100% of the unpaid DIP Facility Claims (including cash collateral to be held and applied in accordance with the DIP Credit Agreement in respect of all undrawn letters of credit outstanding as of the Effective Date under the DIP Facility).

(e)     Administrative Claims of Indenture Trustees

Any Administrative Claims of the Indenture Trustees will be treated pursuant to the terms of Article III.D.

(f)     Bar Dates for Administrative Claims

(i)     General Bar Date Provisions

Except as otherwise provided in Article III.A.1(f)(ii), unless previously Filed, requests for payment of Administrative Claims that arise on or before the Effective Date must be Filed and served on the Debtors no later than thirty days after the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable bar date will be forever barred from asserting such Administrative Claims against the Debtors, the Trusts or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the Post-Consummation Trust and the requesting party by the later of (a) 180 days after the Effective Date and (b) 90 days after the Filing of the applicable request for payment of Administrative Claims.

(ii)     Bar Dates for Certain Administrative Claims

(A)     Professional Compensation

Professionals or other Persons asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Post-Consummation Trust and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 30 days after the Effective Date; provided that (i) any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order and (ii) any Professional that is entitled pursuant to the Plan or an order of the Bankruptcy Court to receive payment from the Estates for fees and expenses incurred after the Effective Date in connection with the Chapter 11 Cases may be compensated by the Post-Consummation Trust without further application to the Bankruptcy Court.  Objections to any Fee Claim must be Filed and served on the Post-Consummation Trust and the requesting party by the later of (i) 60 days after the Effective Date and (ii) 30 days after the Filing of the applicable request for payment of the Fee Claim.  To the extent necessary, the Confirmation Order will amend and supersede

any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims.

(B)      Ordinary Course Liabilities

Holders of Administrative Claims based on trade or vendor liabilities incurred by a Debtor in the ordinary course of its business will not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims will be satisfied pursuant to Article III.A.1(c).

(C)      DIP Facility Claims

Holders of DIP Facility Claims will not be required to File or serve any request for payment of such Claims. Such Claims will be satisfied pursuant to Article III.A.1(d).

2.      Payment of Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim will receive 100% of the unpaid Allowed amount of such Claim in Cash, on or as soon as practicable after the Effective Date or, at the sole option of the Post-Consummation Trust, Cash in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the Tax Rate, paid in equal semi-annual installments, commencing six months after the Effective Date and concluding six years after the date of assessment of such Allowed Priority Tax Claim. Notwithstanding the foregoing, the Holder of an Allowed Priority Tax Claim may receive such other less favorable treatment as to which the Holder of such Allowed Priority Tax Claim and the Debtors or the Post-Consummation Trust, as applicable, have agreed upon in writing.

**B.    Unimpaired Classes of Claims**

1.      **Class 1 Claims (Other Secured Claims)** are Unimpaired. Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive, in full and final satisfaction of such Allowed Class 1 Claim, one of the following treatments, in the sole discretion of the Plan Administrator:

(a)      the Debtors or the Plan Administrator will pay in full in Cash any such Allowed Other Secured Claim;

(b)      the Debtors or the Plan Administrator will satisfy any such Allowed Other Secured Claim by delivering the collateral securing any such Claim and paying any interest required to be paid under section 506(b) of the Bankruptcy Code; or

(c)      the Debtors or the Plan Administrator will otherwise treat any such Allowed Other Secured Claim in any other manner such that the Claim will be rendered Unimpaired.

2.      **Class 2 Claims (Other Priority Claims)** are Unimpaired. The legal, equitable and contractual rights of the Holders of Allowed Class 2 Claims are unaltered by the Plan. Unless otherwise agreed to by the Holders of the Allowed Other Priority Claims and the Debtors or the Plan Administrator, each Holder of an Allowed Class 2 Claim will receive, in full and final satisfaction of such Allowed Class 2 Claim, one of the following treatments, in the sole discretion of the Plan Administrator:

(a)      the Debtors or the Plan Administrator will pay the Allowed Other Priority Claim in full in Cash on the Effective Date or as soon thereafter as is practicable; <u>provided</u> that Other Priority Claims representing obligations incurred in the ordinary course of business will be paid in full in Cash when such Other Priority Claims become due and owing in the ordinary course of business; or

(b)      the Debtors or the Plan Administrator will otherwise treat the Allowed Other Priority Claim in any other manner such that the Claim will be rendered Unimpaired.

17

**C.      Impaired Classes of Claims and Equity Interests**

1.      **Class 3 Claims (Prepetition Facility Claims)** are Impaired.  On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 3 Claim will receive from the Debtors or the Plan Administrator, in full and final satisfaction of such Claim, the following treatment:

(a)      its Pro Rata share of the Prepetition Facility Distribution;

(b)      its Pro Rata share of the Post-Consummation Trust Beneficial Interests**;**

(c)      its Pro Rata share of 100% of the Tranche A Litigation Recovery Interests;

(d)      retention of all adequate protection payments made in respect of the Prepetition Facility, including payment of all fees and professional fees payable under the Final DIP Order accrued through the Effective Date (other than adequate protection payments deferred pursuant to Bankruptcy Court order, which will be deemed satisfied by the treatment provided herein for the Prepetition Facility Claims);

(e)      payment of the reasonable fees and expenses of the Agent's attorneys and financial advisor incurred in connection with the consummation, administration and enforcement of the Plan; and

(f)      the applicable releases and exculpation contained in Article XII.

On the Tranche A Termination Date, the Tranche A Litigation Recovery Interests will cease to exist and the Holders of Allowed Class 3 Claims will no longer have any beneficial interest in the Litigation Trust nor be entitled to any further recovery on account of their Claims from the Litigation Trust.

The Prepetition Facility Claims will be Allowed in full.  The unsecured portions of Prepetition Facility Claims, if any, will not be separately classified under the Plan, and the Holders of Prepetition Facility Claims will not be entitled to vote on the Plan or receive any additional distributions under the Plan on account of such unsecured Claims.

2.      **Class 4 Claims (OEM Claims)** are Impaired.  On the Effective Date, all OEM Claims will be satisfied pursuant to Section 9 of the Customer Agreement.  Notwithstanding anything to the contrary in the Plan, the Customer Agreement will remain in full force and effect after the Effective Date without modification by the Plan.

3.      **Class 5 Claims (General Unsecured Claims)** are Impaired.  Although under the absolute priority rule the Holders of General Unsecured Claims are not entitled to any distributions, to facilitate a consensual Plan, each Holder of an Allowed General Unsecured Claim will receive, on or as soon as practicable after the Effective Date, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of the percentage of the Tranche B Litigation Recovery Interests set forth on the Litigation Trust Allocation Exhibit.

4.      **Class 6 Claims (Senior Note Claims and PBGC Claims)** are Impaired.  Although under the absolute priority rule the Holders of Senior Note Claims and PBGC Claims are not entitled to any distributions, to facilitate a consensual Plan, each Holder of an Allowed Senior Note Claim or Allowed PBGC Claim will receive, on or as soon as practicable after the Effective Date, in full and final satisfaction of such Allowed Senior Note Claim or Allowed PBGC Claim its Pro Rata share of the percentage of the Tranche B Litigation Recovery Interests set forth on the Litigation Trust Allocation Exhibit.

5.      **Class 7 Claims (Senior Subordinated Note Claims)** are Impaired.  Although under the absolute priority rule the Holders of Senior Subordinated Note Claims are not entitled to any distributions, to facilitate a consensual Plan, each Holder of an Allowed Senior Subordinated Note Claim will receive, on or as soon as practicable after the Effective Date, in full and final satisfaction of such Allowed Senior Subordinated Note Claim, its Pro Rata share of the percentage of the Tranche B Litigation Recovery Interests set forth on the Litigation Trust Allocation Exhibit.

K&E 11625366.1

In accordance with the subordination provisions of the Senior Subordinated Note Indenture, distributions on account of Class 7 Claims will first be distributed to the Holders of Allowed Senior Note Claims on a Pro Rata basis until such Allowed Senior Note Claims have been paid in full.

6. **Class 8 Equity Interests (Equity Interests)** are Impaired. On the Effective Date, all Equity Interests will be deemed canceled and will be of no further force and effect, whether surrendered for cancellation or otherwise, and Holders thereof will not receive a distribution under the Plan in respect of such Equity Interests.

7. **Class 9 Claims (Subordinated Securities Claims)** are Impaired. On the Effective Date, Subordinated Securities Claims will be canceled, and Holders thereof will not receive a distribution under the Plan in respect of such Claims.

8. **Class 10 Claims (Intercompany Claims)** are Impaired. On the Effective Date, Intercompany Claims will be canceled, and Holders thereof will not receive a distribution under the Plan in respect of such Claims; provided that Claims of a European Debtor against a Debtor arising from intercompany transactions with the Debtor will be deemed Allowed General Unsecured Claims only to the extent that such Debtor's intercompany claims against such European Debtor are deemed allowed in such European Debtor's respective administration proceedings pending under English Insolvency Law.

**D.** **Special Provisions Regarding the Indenture Trustees' Administrative Claims and Allowed Claims**

The fees and expenses of the Indenture Trustees and their counsel, to the extent such fees and expenses are deemed reasonable by Final Order of the Bankruptcy Court, will be Allowed as Administrative Claims and will be paid in accordance with the provisions of Article III.A.1 in an aggregate amount not to exceed the Indenture Trustee Administrative Claim Cap. The Indenture Trustees each reserve the right to exercise their charging liens, but only to the extent that (i) any challenge is brought to the payment of such Indenture Trustee's Administrative Claims or (ii) the Senior Note Indenture Trustee or the Senior Subordinated Note Indenture Trustee incurs expense or loss of the kind described in Section 7.7(iii) of the Senior Note Indenture or the Senior Subordinated Note Indenture, respectively.

**E.** **Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims**

The classification and treatment of Allowed Claims under the Plan take into consideration all Allowed Secondary Liability Claims. On the Effective Date, Holders of Allowed Secondary Liability Claims will be entitled to only one distribution in respect of such underlying Allowed Claim. No multiple recoveries on account of any Allowed Secondary Liability Claim will be provided or permitted.

The Allowed Secondary Liability Claims arising from or related to any Debtor's joint or several liability for the obligations under any (1) Allowed Claim that is being Reinstated under the Plan or (2) Executory Contract or Unexpired Lease that is being assumed or deemed assumed by another Debtor or under any Executory Contract or Unexpired Lease that is being assumed by and assigned to another Debtor or any other entity will be Reinstated.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.** **Sale of Assets**

Both prior to and subsequent to the Effective Date, the Debtors and the Post-Consummation Trust, as applicable, will consummate the Remaining Sales Transactions.

**B.      The Post-Consummation Trust**

       1.      Establishment of the Post-Consummation Trust

On the Effective Date, the Debtors, on their own behalf and on behalf of the Holders of Allowed Prepetition Facility Claims, will execute the Post-Consummation Trust Agreement and will take all other steps necessary to establish the Post-Consummation Trust pursuant to the Post-Consummation Trust Agreement as further described in Article VIII herein.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Post-Consummation Trust all of their rights, title and interests in all of the Remaining Assets; <u>provided</u> that any assets securing the OEM Cap-Ex Claims that are transferred to the Post-Consummation Trust will be so transferred subject to the OEM Cap-Ex Claims and all other rights and remedies of the OEMs with respect to the OEM Cap-Ex Claims set forth in the Customer Agreement and the July 8, 2005 Agreement.  In connection after the transfer of the Remaining Assets to the Post-Consummation Trust, including rights and Causes of Action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post-Consummation Trust will vest in the Post-Consummation Trust and its representatives, and the Debtors and the Post-Consummation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

       2.      Funding Expenses of the Post-Consummation Trust

Except as set forth in Article IV.B.1, the Debtors will not be obligated to provide any funding with respect to the Post-Consummation Trust after they transfer the Remaining Assets to the Post-Consummation Trust.  As more fully described in the Post-Consummation Trust Agreement, any Cash in the Post-Consummation Trust will be applied in accordance with the terms of the Post-Consummation Trust Budget, first, to the fees, costs, expenses (each of the foregoing in amounts not to exceed amounts approved pursuant to the Post-Consummation Trust Budget) and liabilities of the Plan Administrator, second, to satisfy any other administrative and Wind-Down Expenses of the Post-Consummation Trust (each of the foregoing in amounts not to exceed amounts approved pursuant to the Post-Consummation Trust Budget) and, third, to the distributions provided for pursuant to the Plan.

       3.      Appointment of the Plan Administrator

On the Effective Date and in compliance with the provisions of the Plan, the Plan Administrator will be appointed in accordance with the Post-Consummation Trust Agreement and the Post-Consummation Trust will be administered by the Plan Administrator in accordance with the Post-Consummation Trust Agreement.

       4.      Obligations under the Customer Agreement

On and after the Effective Date, the Post-Consummation Trust will assume and perform all of the obligations of the Debtors under the Customer Agreement without releasing the Debtors from any of their obligations thereunder.

**C.      The Litigation Trust**

       1.      Establishment of the Litigation Trust

On the Effective Date, the Debtors, on their own behalf and on behalf of Holders of Allowed Claims entitled to the Litigation Trust Recovery Interests pursuant to the Plan will execute the Litigation Trust Agreement and will take all other steps necessary to establish the Litigation Trust pursuant to the Litigation Trust Agreement as further described in Article IX herein.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors will transfer to the Litigation Trust all of their rights, title and interests in all of the Litigation Trust Assets.  In connection with the transfer of such assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust will vest in the Litigation Trust and its representatives, and the Debtors and the Litigation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

2.      Prosecution of Litigation Trust Claims

Litigation Trust Claims may only be prosecuted or settled by the Litigation Trust.  The Debtors will not prosecute or settle any Litigation Trust Claims, including Causes of Action arising under chapter 5 of the Bankruptcy Code that are not released under the Plan or other Bankruptcy Court-approved settlements.  The Litigation Trust Claims will be transferred to the Litigation Trust as of the Effective Date.  To the extent that any proceeds of any claim that would have constituted a Litigation Trust Claim following the Effective Date becomes available prior to the Effective Date, the Debtors will hold such proceeds in a separate interest-bearing account for the benefit of the Holders of Allowed Claims entitled to Litigation Trust Recovery Interests pursuant to the Plan.

3.      Distribution of the Litigation Recovery Interests

Distributions from the Litigation Trust will occur as set forth in Article III.C and in accordance with the terms of the Litigation Trust Agreement.

4.      Litigation Trust Committee

As more fully described in the Litigation Trust Agreement, on the Effective Date, the Litigation Trust Committee will be formed and constituted.  The Litigation Trust Committee will initially consist of three members, two of whom will be selected by the Agent and the third member whom will be selected by the Creditors Committee, and whose identities will be disclosed to the Bankruptcy Court at the Confirmation Hearing.  Upon payment in Cash of 80% of the amount of the Allowed Class 3 Claims (which, for this purpose, will include interest accrued through the Effective Date on the Prepetition Facility Claims at the non-default contractual interest rate based on a spread above the Alternate Base Rate) including from, for the avoidance of doubt, distributions (a) by the Debtors prior to the Effective Date, (b) by the Debtors under the Plan, (c) by the Post-Consummation Trust and/or (d) by the Litigation Trust (but excluding any distributions or other revenues received by any Holder of Prepetition Facility Claims in respect of any investment made by such Holder pursuant to a co-investment right offered to such Holder), the governance of the Litigation Trust Committee will change such that two members of the Litigation Trust Committee will be Creditors Committee appointees and the third member is appointed by the Agent.  The Litigation Trust Committee will at all times have the authority to change the appointed Litigation Trust Administrator upon an affirmative vote by two-thirds of the Litigation Trust Committee members.   After the Tranche A Termination Date,  all three (3) members of the Litigation Trust Committee will be Creditors Committee appointees.  The mechanisms by which the Agent and the Creditors Committee will appoint Litigation Trust Committee members will be set forth in the Litigation Trust Agreement.

5.      Funding Expenses of the Litigation Trust

On the Effective Date, the Debtors will deposit with the Litigation Trust $3 million in Cash to cover the reasonable costs of the Litigation Trust as more fully set forth in the Litigation Trust Agreement.  The Litigation Trust will have no obligation to and will not repay the $3 million to the Debtors or the Post-Consummation Trust.  As more fully described in the Litigation Trust Agreement, any Cash in the Litigation Trust will be applied, first, to the fees, costs, expenses and liabilities of the Litigation Trust Administrator and the members of the Litigation Trust Committee and, second, to pay the distributions provided for pursuant to the Plan.

6.      Appointment of the Litigation Trust Administrator

On the Effective Date and in compliance with the provisions of the Plan, the Litigation Trust Administrator, as designated by the Agent, in consultation with the Prepetition Lenders and the Creditors Committee, will be appointed in accordance with the Litigation Trust Agreement and the Litigation Trust will be administered by the Litigation Trust Administrator in accordance with the Litigation Trust Agreement.   The Litigation Trust Administrator will prepare and make available to Holders of Litigation Trust Recovery Interests, on a semi-annual basis, a written report detailing, among other things, the litigation status of claims or Causes of Action transferred to the Litigation Trust, any settlements entered into by the Litigation Trust, the proceeds recovered to

date from the Litigation Trust Assets, and the distributions made by the Litigation Trust. The Litigation Trust Administrator may make such reports available to Holders by posting the same on an internet website.

7.      Authority to Enforce Litigation Trust Assets

The Litigation Trust Administrator will consult, in good faith, with the Litigation Trust Committee with respect to any proposed course of action in connection with the Litigation Trust Assets as set forth in the Litigation Trust Agreement and, in connection with a proposed course of action:

(a)      if the proposed course of action is in connection with a Litigation Trust Asset that has an asserted value of less than $2.5 million, the Litigation Trust Administrator will be authorized and empowered to take such action, after at least five (5) days' notice to the members of the Litigation Trust Committee and either (i) no objection is received by any member of the Litigation Trust Committee or (ii) with the consent of at least 2 members of the Litigation Trust Committee, without further notice to any party;

(b)      if the proposed course of action is in connection with a Litigation Trust Asset that has an asserted value of equal to or more than $2.5 million but less than $10 million, the Litigation Trust Administrator will be authorized and empowered to take such action, with the unanimous consent of the members of the Litigation Trust Committee, without further notice to any party; and

(c)      if the proposed course of action is in connection with a Litigation Trust Asset that has an asserted value of equal to or greater than $10 million, the Litigation Trust Administrator will be authorized and empowered to take such action, upon five (5) Business Days' written notice to the Litigation Trust Committee and upon receipt of Bankruptcy Court approval of such action.

If any objection is interposed by a member of the Litigation Trust Committee to any proposed action of the Litigation Trust Administrator with respect to the Litigation Trust Assets within the foregoing prescribed time periods and the Litigation Trust Administrator is not authorized to settle as a result of such objection, then (a) if the Litigation Trust Committee member(s) withdraws its objection to the proposed action, the Litigation Trust Administrator may pursue the proposed action in accordance with the procedures outlined above or (b) if the Litigation Trust Committee member(s) does not withdraw its objection, the Litigation Trust Administrator will have the option of (1) foregoing the proposed course of action that is the subject of the Litigation Trust Committee member(s)' objection, (2) modifying the proposed course of action in a way that results in the Litigation Trust Committee member(s) withdrawing its objection or (3) following five (5) Business Days' written notice to the Litigation Trust Committee, seeking an order of the Bankruptcy Court authorizing the Litigation Trust Administrator to pursue the proposed course of action over the Litigation Trust Committee member(s)' objection.

## D.      The Residual Trust

The Debtors, in consultation with the Agent, prior to the Effective Date, or the Post-Consummation Trust, on or after the Effective Date, will have the authority to establish the Residual Trust in accordance with the Residual Trust Agreement to pay or otherwise resolve any Residual Trust Rights. The sole right to recover on account of the Residual Trust Rights will be limited to the Residual Trust Assets. The Residual Trust Assets, Cash and the Debtors' rights in any third party indemnifications relating to the Residual Trust Assets will be transferred to the Residual Trust in accordance with the Residual Trust Agreement. The Residual Trust expenses will be paid by the Residual Trust. Upon satisfaction of any Residual Trust Rights, any residual assets remaining in the Residual Trust will be distributed to the Post-Consummation Trust.

## E.      Corporate Action

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan involving the corporate structure of the Debtors will be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors. To the extent such

action has not been completed prior to the Effective Date, the Debtors (and their boards of directors) will dissolve or otherwise terminate their existence following the Effective Date and are authorized to dissolve or terminate the existence of wholly-owned non-Debtor subsidiaries following the Effective Date as well as any remaining health, welfare or benefit plans.

**F. Preservation of Rights of Action**

      1.     Maintenance of Causes of Action

Except as otherwise provided in the Plan (including Article XII.B), on the Effective Date, all of the Debtors' rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal in an adversary proceeding or contested matter Filed in one or more of the Chapter 11 Cases, including the following actions and any Causes of Actions specified on Exhibit A, will be transferred to the Litigation Trust: (a) objections to Claims under the Plan; and (b) any other litigation or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses, assets or operations or otherwise affecting the Debtors, including possible claims against the following types of parties, both domestic and foreign, for the following types of claims:  (i) Causes of Action against vendors, suppliers of goods or services, or other parties for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities or setoff; (ii) Causes of Action against utilities, vendors, suppliers of services or goods, or other parties for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (iii) Causes of Action against vendors, suppliers of goods or services, or other parties for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection of the subject contracts; (iv) Causes of Action for any liens, including mechanic's, artisan's, materialmen's, possessory or statutory liens held by any one or more of the Debtors; (v) Causes of Action for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, lessor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party; (vi) Causes of Action against any current or former director, officer, employee or agent of the Debtors arising out of employment related matters, including Causes of Action regarding intellectual property, confidentiality obligations, employment contracts, wage and benefit overpayments, travel, contractual covenants, or employee fraud or wrongdoing; (vii) Causes of Action against any professional services provider or any other party arising out of financial reporting; (viii) Causes of Action arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies or suppliers of environmental services or goods; (ix) Causes of Action against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters; (x) counterclaims and defenses relating to notes, bonds or other contract obligations; (xi) Causes of Action against local, state, federal and foreign taxing authorities for refunds of overpayments or other payments; (xii) Causes of Action against attorneys, accountants, consultants or other professional service providers relating to services rendered; (xiii) contract, tort or equitable Causes of Action that may exist or subsequently arise; (xiv) any intracompany or intercompany Causes of Action; (xv) Causes of Action of the Debtors arising under section 362 of the Bankruptcy Code; (xvi) equitable subordination Causes of Action arising under section 510 of the Bankruptcy Code or other applicable law; (xvii) turnover Causes of Action arising under sections 542 or 543 of the Bankruptcy Code; (xviii) Causes of Action arising under chapter 5 of the Bankruptcy Code, including preferences under section 547 of the Bankruptcy Code; (xix) Causes of Action against any union arising from, among other things, state or federal law or under a collective bargaining agreement, including any wrongful or illegal acts, any wrongful termination, suspension of performance, defamation or failure to meet other contract or regulatory obligations; and (xx) Causes of Action for unfair competition, interference with contract or potential business advantage, conversion, infringement of intellectual property or other business tort claims.

The Litigation Trust will be transferred the foregoing Causes of Action notwithstanding the rejection of any executory contract or unexpired lease during the Debtors' Chapter 11 Cases, including under the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan (including Article XII.B), any claims, rights and Causes of Action that the respective Debtors may hold against any Person will vest in the Litigation Trust.  The Litigation Trust through its authorized agents or representatives, will have and may exclusively enforce any and all such claims, rights or Causes of Action transferred to it, and all other similar claims

arising pursuant to applicable state laws, including fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession pursuant to the Bankruptcy Code in accordance with the provisions of the Litigation Trust Agreement. The Litigation Trust will have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any and all such claims, rights and Causes of Action transferred to it, and to decline to do any of the foregoing in accordance with the terms of the Litigation Trust Agreement.

For clarity, the Litigation Trust will be transferred all of the Litigation Trust Claims and all other Causes of Action as of the Effective Date. Notwithstanding anything to the contrary herein, the Post-Consummation Trust will own and control any causes of action or claims arising after the Effective Date in respect of any Post-Consummation Trust Asset. To the extent that any proceeds of any claim that would have constituted a Litigation Trust Claim following the Effective Date becomes available prior to the Effective Date, the Debtors will hold such proceeds in a separate interest-bearing account for the benefit of the Holders of Allowed Claims entitled to Litigation Trust Recovery Interests pursuant to the Plan. The Post-Consummation Trust will have the right to object to all administrative expenses and Claims which, if Allowed, would entitle the Holder thereof to payments or other distributions from the Post-Consummation Trust and the Litigation Trust will have the right to object to all Claims other than Prepetition Facility Claims which, if Allowed, would entitle the Holder thereof to payments or other distributions from the Litigation Trust.

2.    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later adjudication by the Litigation Trust, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly waived, relinquished, released, compromised or settled in the Plan or a Final Order. In addition, the Litigation Trust expressly reserves the right to pursue or adopt any claims or Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person, including the plaintiffs or co-defendants in such lawsuits. Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer or transaction may be reviewed by the Litigation Trust subsequent to the Effective Date and may, to the extent not theretofore expressly waived, relinquished, released, compromised or settled, be the subject of an action after the Effective Date, whether or not: (a) such Person has Filed a proof of Claim against the Debtors in the Chapter 11 Cases; (b) such Person's proof of Claim has been objected to; (c) such Person's Claim was included in the Debtors' Schedules; or (d) such Person's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as contingent, unliquidated or disputed.

**G.    Certain Employee, Retiree and Workers' Compensation Benefits**

1.    Employee Benefits

On the Effective Date, except as otherwise set forth herein or in the Customer Agreement, the Debtors' existing employee benefit policies, plans and agreements that are not identified on Exhibit D and have not been terminated by the Debtors prior to the Effective Date will terminate pursuant to the Plan. The Collins & Aikman Pension Plan, however, may only be terminated in accordance with Title IV of ERISA.

2.      Retiree Medical Benefits

From and after the Effective Date, neither the Debtors nor the Trusts will be obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) or any similar health and medical benefits in accordance with the terms of the retiree benefit plans or other agreements governing the payment of such benefits.

3.      Pension Plan

From and after the Effective Date, except with respect to the Collins & Aikman Pension Plan, neither the Debtors nor the Trusts will be obligated to pay any benefits in accordance with the terms of any pension plans. The obligation to pay benefits under the Collins & Aikman Pension Plan will continue until the Collins & Aikman Pension Plan is terminated in accordance with Title IV of ERISA.

4.      Workers' Compensation Benefits

From and after the Effective Date, except as otherwise set forth in the Customer Agreement, neither the Debtors nor the Trusts will continue to pay workers' compensation benefits in accordance with the Workers' Compensation Order.

5.      Implementation of the KERP and Success Sharing Plan

To the extent the Debtors have not already implemented all or part of the KERP or the Success Sharing Plan prior to the Effective Date, on and after the Effective Date the Post-Consummation Trust will implement the KERP and the Success Sharing Plan and perform any and all obligations thereunder, including the payment of performance bonuses and severance amounts contemplated thereby.

**H.      Limitations on Amounts to Be Distributed to the Holders of Allowed Insured Claims**

Distributions under the Plan to each Holder of an Allowed Insured Claim will be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the Holder thereof under any pertinent insurance policies and applicable law. Nothing in this Article IV.H will constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any Person may hold against any other Person, including the Debtors' insurance carriers.

**I.      Cancellation and Surrender of Instruments, Securities and Other Documentation**

Except as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III, the DIP Facility, the Prepetition Credit Facility, the Senior Note Indenture, the Senior Subordinated Note Indenture, the Senior Notes, the Senior Subordinated Notes and the Equity Interests will be canceled and of no further force and effect, without any further action on the part of any Debtor or either of the Trusts; except as otherwise provided in the Plan in connection with the charging liens of the Indenture Trustees that the provisions of the Senior Note Indenture and Senior Subordinated Note Indenture governing the rights of the Indenture Trustees with respect to their respective Holders will remain enforceable as between the Indenture Trustees and the Holders. The Holders of or parties to such canceled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan; provided that no distribution under the Plan will be made to or on behalf of any Holder of an Allowed Claim evidenced by Senior Notes or Senior Subordinated Notes unless and until such instruments or securities are received by the Litigation Trust to the extent required in Article VI.I.

J.       **Creation of Professional Escrow Account**

On the Effective Date, the Plan Administrator will establish the Professional Escrow Account and transfer the amounts necessary (based on estimates of Accrued Professional Compensation as of the Effective Date provided by each Professional to the Debtors immediately before the Effective Date) to ensure the payment of (1) all Accrued Professional Compensation through the Effective Date and (2) all Accrued Professional Compensation associated with the Chapter 11 Cases incurred after the Effective Date.  Additionally, on the Effective Date, all amounts in the Carve Out Account will be transferred to and deposited in the Professional Escrow Account.  Any amounts remaining in the Professional Escrow Account after payment of all Accrued Professional Compensation through the Effective Date will (i) to the extent any such amounts were funded by the OEMs, be returned to the respective OEMs in accordance with the same allocation pursuant to which such amounts were to be funded under Section 5 of the Customer Agreement and (ii) otherwise become Post-Consummation Trust Assets and be available to the Post-Consummation Trust for distribution to its Beneficiaries in accordance with the Post-Consummation Trust Agreement.

K.       **Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III, all mortgages, deeds of trust, liens or other security interests against the property of any Estate will be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Post-Consummation Trust and its successors and assigns; provided that nothing in this provision will operate as a release of any statutory lien on tooling until such time as said lien is satisfied pursuant to the Plan, and any such lien will remain in full force and effect in the same priority and to the same extent and validity as existed immediately prior to the Effective Date until such time as said lien is satisfied pursuant to the Plan.

L.       **Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Post-Consummation Trust, the Litigation Trust and the Residual Trust will be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  The Plan Administrator, the Litigation Trust Administrator, the Residual Trust, the Secretary of each Debtor and any Assistant Secretary of each Debtor will be authorized to certify or attest to any of the foregoing actions.  Pursuant to section 1146(c) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax or similar tax:  (1) the making or assignment of any lease or sublease; (2) consummation of the Soft-Trim Sales Transaction or the Remaining Sales Transactions; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including:  (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction pursuant to the Plan.

**ARTICLE V.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

A.       **Executory Contracts and Unexpired Leases to Be Assumed or Assumed and Assigned**

1.       Assumption and Assignment Generally

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Debtors will assume and assign to the Post-Consummation Trust or the

applicable purchaser of the Debtors' assets under the Soft-Trim Sales Transaction or the Remaining Sales Transactions, if indicated, each of the Executory Contracts and Unexpired Leases listed on Exhibit E. Each contract and lease listed on Exhibit E will be assumed only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit E does not constitute an admission by a Debtor or the Post-Consummation Trust that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or the Post-Consummation Trust has any liability thereunder.

> 2.      Assumptions and Assignments of Executory Contracts and Unexpired Leases

Each Executory Contract and Unexpired Lease listed on Exhibit E includes any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such contract or lease, irrespective of whether such agreement, instrument or other document is listed on Exhibit E, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Article V.C.

> 3.      Assignments Related to the Restructuring Transactions

As of the effective time of an applicable Restructuring Transaction, any Executory Contract or Unexpired Lease to be held by any Debtor or another surviving, resulting or acquiring corporation in an applicable Restructuring Transaction, will be deemed assigned to the applicable Person, pursuant to section 365 of the Bankruptcy Code.

> 4.      Approval of Assumptions and Assignments

Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of the assumption or conditional assumption of the Executory Contracts and Unexpired Leases to be assumed under the Plan as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease that is assumed will vest in and be fully enforceable by the Post-Consummation Trust or any applicable assignee in accordance with its terms, except as may be modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing or providing for its assumption, or applicable law.

**B.      Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor assuming such contract or lease or the assignee of such Debtor, if any:  (a) by payment of the Cure Amount Claim in Cash on the Effective Date; or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. If there is a dispute regarding:  (a) the amount of any Cure Amount Claim; (b) the ability of the Post-Consummation Trust or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (c) any other matter pertaining to assumption or assumption and assignment of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption. For assumptions of Executory Contracts or Unexpired Leases between Debtors, the Debtor assuming such contract may cure any monetary default (a) by treating such amount as either a direct or indirect contribution to capital or distribution (as appropriate) or (b) through adjusting an intercompany account balance accordingly in lieu of payment in Cash.

**C.      Executory Contracts and Unexpired Leases to Be Rejected**

Except for an Executory Contract or Unexpired Lease that was previously assumed, assumed and assigned or rejected by an order of the Bankruptcy Court or that is assumed pursuant to Article V.A, each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date will be rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date or as of the date set forth on Exhibit F. The Executory Contracts and

Unexpired Leases to be rejected will include the Executory Contracts and Unexpired Leases listed on Exhibit F. Each contract and lease listed on Exhibit F will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit F does not constitute an admission by a Debtor or the Post-Consummation Trust that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or the Post-Consummation Trust has any liability thereunder. Any Executory Contract and Unexpired Lease not listed on Exhibit F and not previously assumed, assumed and assigned or rejected by an order of the Bankruptcy Court (other than those Executory Contracts and Unexpired Leases identified on Exhibit E) will be rejected on the Effective Date irrespective of whether such contract is listed on Exhibit F and the Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

### D. Bar Date for Rejection Damages

Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease, including pursuant to Article V.C, gives rise to a Claim (including any Claims arising from those indemnification obligations described in Article V.E) by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtors, either of the Trusts, their respective successors or their respective properties unless a proof of Claim is Filed and served on the Post-Consummation Trust, pursuant to the procedures specified in the notice of the Effective Date or an order of the Bankruptcy Court, no later than 30 days after the Effective Date.

### E. Obligations to Indemnify Directors, Officers and Employees

The obligations of each Debtor to indemnify any person serving as one of its directors, officers or employees as of or following the Effective Date will, to the extent constituting an executory contract, be deemed rejected as of the Effective Date. Neither the Debtors nor either of the Trusts will have any obligation on or after the Effective Date to pay or perform such indemnification obligations. Notwithstanding the foregoing, such directors, officers and employees will have the benefit of any and all directors' and officers' liability insurance policies that may be in effect, but neither the Debtors nor either of the Trusts will have any obligation on or after the Effective Date to pay premiums thereunder.

### F. Contracts and Leases Entered into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will either be (i) performed by the Post-Consummation Trust in the ordinary course of its business or (ii) terminated, with the relevant counterparty required to file a Claim asserting any alleged damages within the applicable Bar Date.

### G. Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any Exhibit to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that any Debtor or the Post-Consummation Trust, or their respective Affiliates, has any liability thereunder.

Nothing in the Plan will waive, excuse, limit, diminish or otherwise alter any of the defenses, Claims, Causes of Action or other rights of the Debtors and the Post-Consummation Trust under any executory or non-executory contract or any unexpired or expired lease.

Nothing in the Plan will increase, augment or add to any of the duties, obligations, responsibilities or liabilities of the Debtors or either of the Trusts under any executory or non-executory contract or any unexpired or expired lease.

At any time through and including 90 days after the Effective Date, the Debtors and the Post-Consummation Trust reserve the right to alter, amend, modify or supplement Exhibit E and Exhibit F.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, then the Debtors will have 30 days following entry of a Final Order resolving such dispute to amend their decision to assume or reject such contract or lease.

## H.    Post-Petition OEM Contracts

Notwithstanding anything to the contrary in the Plan, nothing in Article V.A, Article V.B, Article V.C, Article V.D, Article V.F or Article V.G will apply to or have any effect on the Post-Petition OEM Contracts.  The Post-Petition OEM Contracts (as the same may be amended, modified or supplemented from time to time by the parties thereto in accordance with their terms) will remain in full force and effect without modification by the Plan and, on and after the Effective Date, will be performed by the Post-Consummation Trust in the ordinary course of its business in accordance with the terms and conditions thereof.  For greater clarity, nothing in the Plan, including Article XII.B and Article XII.E, is intended, nor will it, discharge, release or enjoin the enforcement of any unmatured, unliquidated or contingent Claim of any OEM under any Post-Petition OEM Contract; provided that, except to the extent otherwise provided in the Customer Agreement, no such Claim will give rise to an Administrative Claim.  Notwithstanding anything to the contrary in the Plan, including the foregoing provisions of this Article V.H, the Post-Consummation Trust will have no obligation to pay or perform any Claim that (i) is released pursuant to the Customer Agreement or the Plan; or (ii) arises from any breach of a purchase order, supply contract, the Customer Agreement or any other obligations of the Debtors (including any such obligations that may be assumed by the Post-Consummation Trust) related to manufacturing component parts for the Customers (as such term is defined in the Customer Agreement), excluding Hermosillo, except to the extent, if any, that such Customers would be entitled to an administrative claim against the Debtors for such Claim in accordance with Section 9 of the Customer Agreement.  The-Post Consummation Trust may assign any of the Post-Petition OEM Contracts only in accordance with the terms of the Customer Agreement.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in this Article VI and as to DIP Facility Claims and Prepetition Facility Claims, distributions of Cash to be made on the Effective Date to Holders of Claims that are allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than:  (i) 90 days after the Effective Date; and (ii) 90 days after such later date when the applicable conditions of Article V.B (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Article VI.D.2 (regarding undeliverable distributions) or Article VI.I (regarding surrender of canceled instruments and securities) are satisfied.  Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Article VI.G and Article VII.C.

For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of the Allowed Claims with any excess allocated to unpaid interest that accrued on such Claims.

## B.    Method of Distributions to Holders of Claims

The Post-Consummation Trust, or such Third Party Disbursing Agents as the Post-Consummation Trust may employ in its sole discretion, will make all distributions required under the Plan on behalf of Administrative Claims, Priority Claims, Other Secured Claims, Other Priority Claims and Prepetition Facility Claims (to the extent the Plan provides such distributions are to come from the Post-Consummation Trust).  The Litigation Trust, or such Third Party Disbursing Agents as the Litigation Trust may employ in its sole discretion, will make all distributions required under the Plan on behalf of Prepetition Facility Claims (to the extent the Plan

provides such distributions are to come from the Litigation Trust) and Claims in Classes 5, 6 and 7. Notwithstanding the foregoing, the Litigation Trust will employ the Senior Note Indenture Trustee and the Senior Subordinated Note Indenture Trustee as Third Party Disbursing Agents with respect to any distributions to the Holders of the Senior Notes and the Holders of Senior Subordinated Notes, respectively, if such Indenture Trustees have offered to provide such services on reasonable and customary commercial terms. Each Disbursing Agent and Third Party Disbursing Agent will serve without bond, and any Disbursing Agent and Third Party Disbursing Agent may employ or contract with other Persons to assist in or make the distributions required by the Plan.

**C.      Compensation and Reimbursement for Services Related to Distributions**

Each Third Party Disbursing Agent providing services related to distributions pursuant to the Plan will receive from the Trust that employs it reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services without Bankruptcy Court approval. These payments will be made on terms agreed to with the employing Trust.

**D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

      1.      Delivery of Distributions

           (a)      Generally

Except as provided in Article VI.D.1(b), distributions to Holders of Allowed Claims will be made by a Disbursing Agent: (i) to the addresses set forth on the respective proofs of Claim Filed by Holders of such Claims; (ii) to the addresses set forth in any written certification of address change delivered to the relevant Disbursing Agent (including pursuant to a letter of transmittal delivered to the relevant Disbursing Agent) after the date of Filing of any related proof of Claim; or (iii) to the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the relevant Disbursing Agent has not received a written notice of a change of address.

           (b)      Special Provision for Distribution to Holders of the Prepetition Facility Claims

Distributions of Cash to the Holders of Prepetition Facility Claims will be made by the Plan Administrator or a Disbursing Agent to the Agent for the Pro Rata benefit of the Holders of Prepetition Facility Claims. Distributions of Cash to the Agent will be effected by wire transfer of immediately available funds.

           (c)      Special Provisions for Distributions to Holders of the Senior Note Claims and Senior Subordinated Note Claims

Subject to the requirements of Article VI.I, distributions to Holders of Allowed Senior Note Claims and Senior Subordinated Note Claims, if any, will be made by a Disbursing Agent to the record holders of the Senior Notes or the Senior Subordinated Notes, as applicable, as of the Distribution Record Date as identified on a record holder register to be provided to the Disbursing Agent by the Senior Note Indenture Trustee or the Senior Subordinated Note Indenture Trustee, as applicable, within five Business Days after the Distribution Record Date. This record holder register will provide the name, address and holdings of each respective registered Holder of Senior Notes or Senior Subordinated Notes, as applicable, as of the Distribution Record Date.

      2.      Undeliverable Distributions Held by the Disbursing Agents

           (a)      Holding and Investment of Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further distributions will be made to such Holder unless and until the applicable Disbursing Agent is notified by written certification of such Holder's then-current address. Undeliverable distributions will remain in the possession

of the applicable Disbursing Agent pursuant to this Article VI.D.2(a) until such time as a distribution becomes deliverable. Undeliverable Cash will be held in segregated bank accounts in the name of the applicable Disbursing Agent for the benefit of the potential claimants of such funds. Any Disbursing Agent holding undeliverable cash will invest such Cash in a manner consistent with the investment and deposit guidelines of the Post-Consummation Trust or the Litigation Trust, as applicable.

(b) After Distributions Become Deliverable

On each distribution date provided for in the Post-Consummation Trust Agreement and Litigation Trust Agreement, as the case may be, the applicable Trust or the applicable Disbursing Agents will make distributions to the Beneficiaries of such Trust in accordance with the Plan and the relevant Trust Agreement. Each such distribution will include, to the extent applicable, a Pro Rata share of the Cash Investment Yield from the investment of any undeliverable cash from the date that such distribution would have first been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable distribution to be made by a Disbursing Agent within two years after the later of (i) the Effective Date and (ii) the last date on which a distribution was deliverable will have its claim for such undeliverable distribution discharged and will be forever barred from asserting any such claim against the Post-Consummation Trust or its respective property. Unclaimed Cash originating from the Post-Consummation Trust will become Post-Consummation Trust Assets and transferred to the Post-Consummation Trust, free of any restrictions thereon, and any such Cash held by a Third Party Disbursing Agent will be returned to the Post-Consummation Trust. Unclaimed Cash originating from the Litigation Trust will become Litigation Trust Assets and transferred to the Litigation Trust, free of any restrictions thereon, and any such Cash held by a Third Party Disbursing Agent will be returned to the Litigation Trust. Nothing contained in the Plan or the law will require any Debtor, any Trust or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

## E. Distribution Record Date

1. As of the close of business on the Distribution Record Date, the respective transfer registers for the Prepetition Facility Claims, the Senior Notes and the Senior Subordinated Notes, as maintained by the Debtors, the Agent or the Indenture Trustees, as applicable, will be closed. The applicable Disbursing Agent will have no obligation to recognize the transfer or sale of any Prepetition Facility Claim, Senior Note Claim or Senior Subordinated Note Claim that occurs after the close of business on the Distribution Record Date, and any Disbursing Agent will be entitled for all purposes herein to recognize and make distributions only to those Holders of Prepetition Facility Claims, the Holders of Senior Note Claims or the Holders of Senior Subordinated Note Claims who are Holders of such Claims as of the close of business on the Distribution Record Date.

2. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims in Classes 3, 5, 6 and 7 that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

## F. Means of Cash Payments

Except as otherwise specified herein, Cash payments made pursuant to the Plan will be in U.S. currency by checks drawn on a domestic bank selected by the applicable Debtor or the applicable Trust or, at the option of the applicable Debtor or the applicable Trust, by wire transfer from a domestic bank; provided that Cash payments to foreign Holders of Allowed Claims may be made, at the option of the applicable Debtor or the applicable Trust, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan on behalf of DIP Facility Claims and Prepetition Facility Claims will be made to the

respective administrative agent on the Effective Date and future distribution dates by wire transfer of immediately available funds.

**G.  Timing and Calculation of Amounts to Be Distributed**

1.  Allowed Claims

Subject to Article VI.A, on the Effective Date, each Holder of an Allowed Claim will receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class as of the Effective Date.  On each Quarterly Distribution Date, distributions also will be made, pursuant to Article VII.C, to Holders of Disputed Claims in any such Class that were Allowed during the preceding calendar quarter and to Holders of Allowed Claims entitled to post-Consummation payments from the Post-Consummation Trust or the Litigation Trust, as applicable, pursuant to the Plan.  Such quarterly distributions also will be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

2.  De Minimis Distributions

No Disbursing Agent will distribute Cash to the Holder of an Allowed Claim in an Impaired Class if the amount of Cash to be distributed on account of such Claim is less than $25.  Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $25 will have its claim for such distribution discharged and will be forever barred from asserting any such claim against the Post-Consummation Trust, the Litigation Trust, the Residual Trust or their respective property.  Any such Cash that is retained by the Post-Consummation Trust or the Litigation Trust on account of this provision will be made available for the distribution to Holders of all other Allowed Claims that are permissible under the terms of the Plan.

3.  Compliance with Tax Requirements

(a)  In connection with the Plan, to the extent applicable, each Disbursing Agent will comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements.  Each Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

(b)  Notwithstanding any other provision of the Plan, each Person receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

**H.  Setoffs**

Except with respect to claims of a Debtor or a Trust released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, each Trust or, as instructed by the applicable Debtor or applicable Trust, a Third Party Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that any Debtor or Trust may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor or the applicable Trust of any claims, rights and Causes of Action that the Debtor or the Post-Consummation Trust may possess against such Holder of a Claim.

**I.  Surrender of Canceled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by Senior Notes or Senior Subordinated Notes, the Holder of such Claim must tender, as specified in this

Article VI.I, the applicable Senior Notes or Senior Subordinated Notes to the Litigation Trust or Disbursing Agent, together with any letter of transmittal required by the Litigation Trust or Disbursing Agent. Pending such surrender, any distributions pursuant to the Plan on account of any such Claim will be treated as an undeliverable distribution pursuant to Article VI.D.2. Notwithstanding the foregoing, the Litigation Trust or the Disbursing Agent may use such other procedures as they may reasonably deem appropriate to facilitate distributions to Holders of Senior Note Claims or Holders of Senior Subordinated Note Claims.

    1.        Tender of Senior Notes or Senior Subordinated Notes

Except as provided in Article VI.I.2 for lost, stolen, mutilated or destroyed Senior Notes or Senior Subordinated Notes, each Holder of an Allowed Senior Note Claim or Senior Subordinated Note Claim must tender the applicable Senior Notes or Senior Subordinated Notes to the Litigation Trust in accordance with a letter of transmittal to be provided to such Holders by the Litigation Trust or Disbursing Agent as promptly as practicable following the Effective Date. The letter of transmittal will include, among other provisions, customary provisions with respect to the authority of the Holder of the applicable Senior Notes or Senior Subordinated Notes to act and the authenticity of any signatures required thereon. All surrendered Senior Notes or Senior Subordinated Notes will be marked as canceled and delivered to the Litigation Trust or Disbursing Agent.

    2.        Lost, Stolen, Mutilated or Destroyed Senior Notes or Senior Subordinated Notes

Any Holder of an Allowed Senior Note Claim or Senior Subordinated Note Claim with respect to which the underlying Senior Note or Senior Subordinated Note has been lost, stolen, mutilated or destroyed must, in lieu of surrendering such Senior Note or Senior Subordinated Note, deliver to the Litigation Trust or Disbursing Agent: (a) evidence satisfactory to the Litigation Trust or Disbursing Agent of the loss, theft, mutilation or destruction; and (b) such security or indemnity as may be required by the Litigation Trust to hold the Litigation Trust harmless from any damages, liabilities or costs incurred in treating such individual as a Holder of a Senior Note or Senior Subordinated Note. Upon compliance with this Article VI.I.2 by a Holder of an Allowed Senior Note Claim or Senior Subordinated Note Claim, such Holder will, for all purposes under the Plan, be deemed to have surrendered the applicable Senior Note or Senior Subordinated Note.

    3.        Failure to Surrender Senior Notes or Senior Subordinated Notes

Any Holder of an Allowed Senior Note Claim or Senior Subordinated Note Claim that fails to surrender or is not deemed to have surrendered the applicable Senior Note or Senior Subordinated Notes within two years after the Effective Date will have its right to distribution pursuant to the Plan on account of such Senior Note Claim or Senior Subordinated Note Claim discharged and will be forever barred from asserting any such Claim against the Litigation Trust or its respective property.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.    Prosecution of Objections to Claims**

    1.        Objections to Claims

All objections to Claims must be Filed by the Claims Objection Bar Date, and (a) if Filed prior to the Effective Date, such objections will be served only on the Holders of such Claims and the parties on the then-applicable service list in the Chapter 11 Cases and (b) if Filed after the Effective Date, such objections will be served only on the Holders of such Claims and the United States trustee. If an objection has not been Filed to a proof of Claim or a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier. An objection is deemed to have been timely Filed as to all Tort Claims, thus making each such Claim a Disputed Claim

as of the Claims Objection Bar Date. Each such Tort Claim will remain a Disputed Claim until it becomes an Allowed Claim by a Final Order.

2.  Authority to Prosecute Objections

After the Effective Date, except as provided in the following paragraph, only the Debtors or the Post-Consummation Trust will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims. After the Effective Date, the Post-Consummation Trust may settle or compromise any Disputed Claim without approval of the Bankruptcy Court; provided that (a) the Post-Consummation Trust will promptly File with the Bankruptcy Court a written notice of any settlement or compromise of a Claim with a Face Amount in excess of $1,000,000 and (b) the Agent and the United States trustee will be authorized to contest the proposed settlement or compromise by Filing a written objection with the Bankruptcy Court and serving such objection on the Post-Consummation Trust within 20 days of the service of the settlement notice. If such objection is filed and the Post-Consummation Trust and the objecting party are unable to consensually resolve such objection, the objection will be set for hearing before the Bankruptcy Court. If no such objection is Filed, the applicable settlement or compromise will be deemed final without further action of the Bankruptcy Court; provided that the Post-Consummation Trust will be authorized, but not required, to file a certification of no objection and submit an order to the Bankruptcy Court on account of such settlements and compromises.

The Debtors will continue to reconcile Class 5, 6 and 7 Claims through the Effective Date. Following the Effective Date, objections to and reconciliation of Class 5, 6 and 7 Claims will be performed by the Litigation Trust under the supervision and direction of the Litigation Trust Committee member appointed by the Creditors Committee.

**B.     Treatment of the Disputed Claims**

Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

**C.     Distributions on Account of the Disputed Claims Once Allowed**

On each Quarterly Distribution Date, the applicable Disbursing Agent will make all distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter. Such distributions will be made pursuant to the provisions of the Plan governing the applicable Class.

## ARTICLE VIII.

### THE POST-CONSUMMATION TRUST; THE PLAN ADMINISTRATOR

**A.     Generally**

The powers, authority, responsibilities and duties of the Post-Consummation Trust and the Plan Administrator are set forth in and will be governed by the Post-Consummation Trust Agreement. The Agent will designate the initial Plan Administrator.

**B.     Purpose of the Post-Consummation Trust**

The Post-Consummation Trust will be established for the primary purpose of liquidating its assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Post-Consummation Trust. Upon the transfer of the Post-Consummation Trust Assets, the Debtors will have no reversionary or further interest in or with respect to the Post-Consummation Trust Assets or the Post-Consummation Trust. For all federal income tax purposes, the Beneficiaries of the Post-Consummation Trust will be treated as grantors and owners thereof and it is intended that the Post-Consummation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury

34

Regulations and that such trust is owned by the Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution of an undivided interest in the Post-Consummation Trust Assets and then contributed such interests to the Post-Consummation Trust. Accordingly, the Post-Consummation Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Consummation Trust Assets, make timely distributions to the Beneficiaries and not unduly prolong its duration. The Post-Consummation Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Post-Consummation Trust Agreement. The Post-Consummation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the trust.

## C.    Transfer of Assets to the Post-Consummation Trust

The Debtors and the Plan Administrator will establish the Post-Consummation Trust on behalf of the Beneficiaries pursuant to the Post-Consummation Trust Agreement, to be treated as the grantors and deemed owners of the Post-Consummation Trust Assets and the Debtors will, as set forth below, transfer, assign and deliver to the Post-Consummation Trust, on behalf of the Beneficiaries, all of their rights, titles and interests in the Post-Consummation Trust Assets, including Claims and Causes of Action of the Debtors, other than any assets, Claims and Causes of Action waived, exculpated, released or transferred to the Litigation Trust in accordance with the provisions herein, notwithstanding any prohibition of assignability under non-bankruptcy law. The Post-Consummation Trust will agree to accept and hold the Post-Consummation Trust Assets in the Post-Consummation Trust for the benefit of the Beneficiaries, subject to the terms of the Plan and the Post-Consummation Trust Agreement.

On the Effective Date, the Debtors will transfer the Post-Consummation Trust Assets to the Post-Consummation Trust for the benefit of the Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all the Remaining Assets (other than the assets transferred to the Litigation Trust) will vest in the Post-Consummation Trust in accordance with section 1141 of the Bankruptcy Code. Upon the transfer of the Post-Consummation Trust Assets to the Post-Consummation Trust, the Debtors will have no interest in or with respect to such Post-Consummation Trust Assets or the Post-Consummation Trust.

## D.    Distribution; Withholding

The Plan Administrator will make distributions to the Beneficiaries of the Post-Consummation Trust as provided in the Post-Consummation Trust Agreement. The Post-Consummation Trust may withhold from amounts distributable to any Person any and all amounts, determined in the Plan Administrator's sole discretion, to be required by the Plan, any law, regulation, rule, ruling, directive or other governmental requirement. After appropriate reserves have been established to fund amounts required under the Plan and as identified in the Post-Consummation Trust Budget (including, but not limited to, amounts to pay Allowed Administrative Claims, Priority Claims, Wind-Down Expenses and the fees and expenses of the Plan Administrator and the Post-Consummation Trust), the funds to be distributed to the Holders of Allowed Prepetition Facility Claims, other than the Prepetition Facility Distribution, will be distributed to such Holders on a Pro Rata basis at the sole discretion of the Plan Administrator.

## E.    Insurance

The Post-Consummation Trust will maintain customary insurance coverage for the protection of Persons serving as administrators and overseers of the Post-Consummation Trust on and after the Effective Date.

## F.    Post-Consummation Trust Implementation

On the Effective Date, the Post-Consummation Trust will be established and become effective for the benefit of the Holders of Allowed Claims entitled to distributions from the Post-Consummation Trust under the Plan. The Post-Consummation Trust Agreement will contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued

35

treatment of the Post-Consummation Trust as a grantor trust and the Holders of Allowed Claims as the grantors and owners thereof for federal income tax purposes. All parties (including the Debtors, the Plan Administrator and the Holders of Allowed Claims) will execute any documents or other instruments as necessary to cause title to the Remaining Assets to be transferred to the Post-Consummation Trust.

## G. Disputed Claims Reserve

The Plan Administrator will maintain, in accordance with the Plan Administrator's powers and responsibilities under the Plan and the Post-Consummation Trust Agreement, a Disputed Claims Reserve. The Plan Administrator will, in his sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Post-Consummation Trust Agreement, as such Disputed Claims are resolved by Final Order, and such amounts will be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date. The Post-Consummation Trust will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims on behalf of such Holders and, when such Disputed Claims are ultimately resolved, Holders whose Disputed Claims are determined to be Allowed Claims will receive distributions from the Post-Consummation Trust net of the taxes that the Post-Consummation Trust previously paid on their behalf.

## H. Termination of the Post-Consummation Trust

The Post-Consummation Trust will terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, on or prior to the date six months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Post-Consummation Trust for a finite period if such an extension is necessary to liquidate the Post-Consummation Trust Assets or to complete any distribution required under the Plan. Notwithstanding the foregoing, multiple extensions may be obtained so long as (1) Bankruptcy Court approval is obtained at least six months prior to the expiration of each extended term and (2) the Plan Administrator receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Post-Consummation Trust as a grantor trust for federal income tax purposes.

## I. Termination of the Plan Administrator

The duties, responsibilities and powers of the Plan Administrator will terminate in accordance with the terms of the Post-Consummation Trust Agreement.

## J. Exculpation; Indemnification

**The Plan Administrator, the Post-Consummation Trust, the professionals of the Post-Consummation Trust, the Post-Consummation Advisory Trust Board and their representatives will be exculpated and indemnified pursuant to the terms of the Post-Consummation Trust Agreement.**

## ARTICLE IX.

## THE LITIGATION TRUST; THE LITIGATION TRUST ADMINISTRATOR

## A. Generally

The powers, authority, responsibilities and duties of the Litigation Trust and the Litigation Trust Administrator are set forth in and will be governed by the Litigation Trust Agreement. The Agent, in consultation with the Prepetition Lenders and the Creditors Committee, will designate the initial Litigation Trust Administrator.

36

**B.      Purpose of the Litigation Trust**

The Litigation Trust will be established for the primary purpose of liquidating its assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  Upon the transfer of the Litigation Trust Assets, the Debtors will have no reversionary or further interest in or with respect to the Litigation Trust Assets or the Litigation Trust. For all federal income tax purposes, the Beneficiaries of the Litigation Trust will be treated as grantors and owners thereof and it is intended that the Litigation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that such trust is owned by the Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution of an undivided interest in the Litigation Trust Assets and then contributed such interests to the Litigation Trust.  Accordingly, the Litigation Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Litigation Trust Assets, make timely distributions to the Beneficiaries and not unduly prolong its duration.  The Litigation Trust will not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Litigation Trust Agreement.  The Litigation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the trust.

**C.      Transfer of Assets to the Litigation Trust**

The Debtors and the Litigation Trust Administrator will establish the Litigation Trust on behalf of the Beneficiaries pursuant to the Litigation Trust Agreement, to be treated as the grantors and deemed owners of the Litigation Trust Assets and the Debtors will, as set forth below, transfer, assign and deliver to the Litigation Trust, on behalf of the Beneficiaries, all of their right, title and interests in the Litigation Trust Assets, notwithstanding any prohibition of assignability under non-bankruptcy law.  The Litigation Trust will agree to accept and hold the Litigation Trust Assets in the Litigation Trust for the benefit of the Beneficiaries, subject to the terms of the Plan and the Litigation Trust Agreement.

On the Effective Date, the Debtors will transfer the Litigation Trust Assets to the Litigation Trust for the benefit of the Beneficiaries.  Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all the Litigation Trust Claims will vest in the Litigation Trust in accordance with section 1141 of the Bankruptcy Code.  Upon the transfer of the Litigation Trust Assets to the Litigation Trust, the Debtors will have no interest in or with respect to such Litigation Trust Assets or the Litigation Trust.

**D.      Distribution; Withholding**

The Litigation Trust Administrator will make distributions to the Beneficiaries of the Litigation Trust as provided in the Litigation Trust Agreement.  The Litigation Trust may withhold from amounts distributable to any Person any and all amounts, determined in the Litigation Trust Administrator's sole discretion, to be required by the Plan, any law, regulation, rule, ruling, directive or other governmental requirement.

**E.      Insurance**

The Litigation Trust will maintain customary insurance coverage for the protection of Persons serving as administrators and overseers of the Litigation Trust on and after the Effective Date.

**F.      Litigation Trust Implementation**

On the Effective Date, the Litigation Trust will be established and become effective for the benefit of the Holders of Allowed Claims entitled to distributions from the Litigation Trust under the Plan.  The Litigation Trust Agreement will contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Litigation Trust as a grantor trust and the Holders of Allowed Claims as the grantors and owners thereof for federal income tax purposes. All parties (including the Debtors, the Litigation Trust Administrator and the Holders of Allowed Claims) will

37

execute any documents or other instruments as necessary to cause title to the Litigation Trust Claims to be transferred to the Litigation Trust.

## G.  Disputed Claims Reserve

The Litigation Trust Administrator will maintain, in accordance with the Litigation Trust Administrator's powers and responsibilities under the Plan and the Litigation Trust Agreement, a Disputed Claims Reserve.  The Litigation Trust Administrator will, in his sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Litigation Trust Agreement, as such Disputed Claims are resolved by Final Order, and such amounts will be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.  The Litigation Trust will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims on behalf of such Holders and, when such Disputed Claims are ultimately resolved, Holders whose Disputed Claims are determined to be Allowed Claims will receive distributions from the Litigation Trust net of the taxes that the Litigation Trust previously paid on their behalf.

## H.  Termination of the Litigation Trust

The Litigation Trust will terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, on or prior to the date six months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation Trust for a finite period if such an extension is necessary to liquidate the Litigation Trust Claims.  Notwithstanding the foregoing, multiple extensions may be obtained so long as (1) Bankruptcy Court approval is obtained at least six months prior to the expiration of each extended term and (2) the Litigation Trust Administrator receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a grantor trust for federal income tax purposes.

## I.  Termination of the Litigation Trust Administrator

The duties, responsibilities and powers of the Litigation Trust Administrator will terminate in accordance with the terms of the Litigation Trust Agreement.

## J.  Exculpation; Indemnification

**The Litigation Trust Administrator, the Litigation Trust, the professionals of the Litigation Trust and their representatives will be exculpated and indemnified pursuant to the terms of the Litigation Trust Agreement.**

## ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

## A.  Conditions to Confirmation

The following are conditions precedent to Confirmation of the Plan that must be (i) satisfied or (ii) waived in accordance with Article X.C below:

1.  The Bankruptcy Court will have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors and the Agent.

2.  The Plan and the Exhibits hereto (as confirmed or approved by the Confirmation Order) will be in form and substance satisfactory to the Debtors and the Agent, in consultation with the Prepetition Lenders.

3.      The order approving the Customer Agreement on a final basis [Docket No. 3918] will not have been vacated or stayed by the Bankruptcy Court.

4.      The Debtors will have consummated the Soft-Trim Sales Transaction.

5.      The Bankruptcy Court will have entered an order or the Debtors will have entered into an agreement with the PBGC, either of which will provide that the Collins & Aikman Pension Plan and other pension obligations for the Debtors' United States employees are terminated.

6.      The Bankruptcy Court will have entered an order (which will not have been vacated or stayed), which will provide that the Post-Consummation Trust has no OPEB Liability, or the Confirmation Order will provide for such relief.

## B.      Conditions Precedent to Consummation

The following are conditions precedent to Consummation of the Plan that must be (i) satisfied or (ii) waived in accordance with Article X.C below:

1.      All conditions to Confirmation of the Plan set forth in Article X.A will remain satisfied.

2.      Each order of the Bankruptcy Court referred to in Article X.A will have become a Final Order.

3.      The Post-Consummation Trust Agreement and all related agreements will have been executed.

4.      The Remaining Assets will have been transferred to the Post-Consummation Trust and the Remaining Assets will include no less than $3 million in Cash.

5.      The Litigation Trust Agreement, in form and substance satisfactory to the Agent and the Creditors Committee, and all related agreements will have been executed.

6.      The Litigation Trust Assets will have been transferred to the Litigation Trust.

7.      The Professional Escrow Account will have been funded.

8.      All other actions, documents and agreements necessary to implement the Plan as of the Effective Date will have been delivered and all conditions precedent thereto will have been satisfied or waived.

## C.      Waiver of Conditions

The Debtors, in the Debtors' discretion and with the consent of the Agent, in consultation with the Prepetition Lenders, may waive any of the conditions to Confirmation of the Plan set forth in Article X.A or Consummation of the Plan set forth in Article X.B at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action other than proceeding to confirm or consummate the Plan.

## D.      Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (1) constitute a waiver or release of any Claims by or against, or any Equity Interests, in any Debtor; (2) prejudice in any manner the rights of any Debtor or any other party; or (3) constitute an admission, acknowledgment, offer or undertaking by any Debtor in any respect.

# ARTICLE XI.

## CRAMDOWN

The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE XII.

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### A.    Compromise and Settlement

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Allowed Equity Interests and their respective distributions and treatments hereunder take into account for and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code, substantive consolidation or otherwise. As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto, including for substantive consolidation purposes. The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan, including all issues pertaining to claims for substantive consolidation (which are settled by the distributions in the Plan), are (1) in the best interests of the Debtors and their Estates, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. In addition, the allowance, classification and treatment of Allowed Claims take into account any causes of action, claims or counterclaims, whether under the Bankruptcy Code or otherwise under applicable law, that may exist: (1) between the Debtors and the Releasing Parties; (2) between the Debtors and the OEMs; and (3) as between the Releasing Parties (to the extent set forth in Article XII.C). As of the Effective Date, any and all such causes of action, claims and counterclaims are settled, compromised and released pursuant hereto. The Confirmation Order will approve all such releases of contractual, legal and equitable subordination rights, causes of action, claims and counterclaims against each such Releasing Party and OEM that are satisfied, compromised and settled pursuant hereto. Nothing in this Article XII.A will compromise or settle in any way whatsoever, any Claims or Causes of Action that the Debtors or any Trust may have against the Non-Released Parties.

### B.    Releases by the Debtors and the OEMs

**Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date and immediately prior to the transfer of the Litigation Trust Assets and the Litigation Trust Claims to the Litigation Trust, for the good and valuable consideration provided by each of the Debtor Releasees, including: (1) the discharge of claims and all other good and valuable consideration paid pursuant to the Plan; and (2) the services of the officers and directors employed by the Debtors on or after November 1, 2006 in facilitating the expeditious implementation of the transactions contemplated by the Plan, each of the Debtors will provide a full discharge and release to each of the OEMs and the Debtor Releasees (and each such OEM and Debtor Releasee so released will be deemed released and discharged by the Debtors) and the respective properties of each such OEM and Debtor Releasee from any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to**

the Debtors, including those that any of the Debtors or either Trust would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Person would have been legally entitled to assert for or on behalf of any of the Debtors or any of their Estates and further including those in any way related to the Chapter 11 Cases or the Plan; <u>provided</u> that the foregoing provisions of this Article XII.B will not operate to waive or release any Debtor Releasee from any Causes of Action set forth on Exhibit A.

Notwithstanding anything contained in the Plan to the contrary, except as otherwise set forth in the Customer Agreement and the OEM Excluded Claims, on the Effective Date and effective as of the Effective Date and immediately prior to the transfer of the Litigation Trust Assets and the Litigation Trust Claims to the Litigation Trust, for the good and valuable consideration provided by the Debtors, including the releases of the OEMs set forth in this Article XII.B, each of the OEMs will provide a full discharge and release to each of the Debtors (and each such Debtor so released will be deemed released and discharged by each of the OEMs) and the Debtors' respective properties from any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including those that any of the OEMs would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Person would have been legally entitled to assert for or on behalf of any of the OEMs and further including those in any way related to the Chapter 11 Cases or the Plan.

Notwithstanding anything contained in the Plan to the contrary, the Debtors will not have released nor be deemed to have released by operation of this Article XII.B or otherwise any of the Causes of Action set forth on Exhibit A or any other claims, causes of action, debts, obligations, rights, suits, damages, actions, interests, remedies or liabilities that they or either Trust may have now or in the future against the Non-Released Parties.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases provided under this Article XII.B, which includes by reference each of the related provisions and definitions contained in the Plan, and further, will constitute the Bankruptcy Court's finding that such release is: (1) in exchange for good and valuable consideration provided by the Debtor Releasees and the OEMs, representing good faith settlement and compromise of the claims released herein; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable and reasonable; (4) approved after due notice and opportunity for hearing; (5) a bar to the Debtors and both Trusts asserting any Claim released herein against any of the Debtor Releasees or their respective property; and (6) a bar to each of the OEMs asserting any Claim released herein against any of the Debtors or their respective property.

C.    **Third Party Releases**

As of the Effective Date, in consideration for the obligations of the Debtors and the Trusts under the Plan and the Cash, other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Releasing Party will be deemed to forever release, waive and discharge all claims (including Derivative Claims), causes of action and any other debts, obligations, rights, suits, damages, actions, interests, remedies and liabilities (other than the right to enforce the obligations of the Debtors or the Trusts under the Plan and the contracts, instruments, releases, agreements and documents delivered thereunder), whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, currently existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to a Debtor, the Chapter 11 Cases or the Plan that such Person has, had or may have against any Third Party Releasee and their respective property (which

release will be in addition to the discharge of Claims and termination of Equity Interests provided herein and under the Confirmation Order and the Bankruptcy Code).

Notwithstanding anything contained in the Plan to the contrary, the Releasing Parties will not have released nor be deemed to have released by operation of this Article XII.C or otherwise any claims or causes of action that they, the Debtors or either Trust may have now or in the future against the Non-Released Parties.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 of the release provided under this Article XII.C, which includes by reference each of the related provisions and definitions contained in the Plan, and further, will constitute the Bankruptcy Court's finding that such release is:  (1) in exchange for good and valuable consideration provided by the Debtor Releasees and the Releasing Parties, representing good faith settlement and compromise of the claims released herein; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable, and reasonable; (4) approved after due notice and opportunity for hearing; and (5) a bar to any of the Releasing Parties asserting any claim released by this Article XII.C against any of the Third Party Releasees or their respective property.

D.      **Exculpation**

Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties will neither have nor incur any liability to any Person for any prepetition or postpetition act taken or omitted to be taken in connection with or related to formulating, negotiating, preparing, disseminating, implementing or administering the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors or confirming or consummating the Plan; <u>provided</u> that (i) the foregoing provisions of this Article XII.D will have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct, (ii) each Exculpated Party will be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan, (iii) the foregoing provisions of this Article XII.D will not apply to any acts or omissions expressly set forth in and preserved by the Plan and (iv) the foregoing provisions of this Article XII.D will have no effect on any liability of the Post-Consummation Trust that results from any such acts or omissions in connection with the Customer Agreement or the Post-Petition OEM Contracts.

Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties will not include the Non-Released Parties, and the Plan will not exculpate nor be deemed to have exculpated any of the Non-Released Parties for any acts they have taken, whether in contemplation of the restructuring of the Debtors, in confirming or consummating the Plan, or otherwise.

E.      **Injunction**

1.      Except as otherwise provided in the Plan, or in respect of the OEM Excluded Claims, the Confirmation Order or the Customer Agreement, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Equity Interests or rights:  (a) commencing or continuing in any manner any action or other proceeding against the Debtors, any Trust or their respective property, other than to enforce any right to a distribution pursuant to the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, any Trust or their respective property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtors, any Trust or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or any Trust; and (e) commencing or

continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

2.     Except as otherwise provided in the Plan, or in respect of the OEM Excluded Claims, the Confirmation Order or the Customer Agreement, as of the Effective Date, all Persons that have held, currently hold or may hold any claims, causes of action and any other debts, obligations, rights, suits, damages, actions, interests, remedies or liabilities that are released pursuant to the Plan are permanently enjoined from taking any of the following actions against any released Person or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities:  (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released Person; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

3.     By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Article XII.E.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, Priority Claim, Secured Claim and Unsecured Claim and the resolution of any objections to the allowance, priority or classification of Claims or Equity Interests;

2.     Determine any matters related to or in connection with the Soft-Trim Sales Transaction and the Remaining Sales Transactions.

3.     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

4.     Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or the Post-Consummation Trust may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

5.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter;

7.     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

43

8.      Resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Person's rights arising from or obligations incurred in connection with the Plan or such documents;

9.      Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

10.      Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation, implementation or enforcement of the Plan or the Confirmation Order;

11.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

12.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

13.      Determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for taxes; and

14.      Enter a Final Decree closing the Chapter 11 Cases.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

**A.      Dissolution of the Creditors Committee**

Effective thirty (30) days after the Effective Date, if no appeal of the Confirmation Order is then pending, the Creditors Committee will dissolve and the members of the Creditors Committee will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases. The legal Professionals retained by the Creditors Committee and the members thereof will not be entitled to assert any Fee Claim for any services rendered or expenses incurred after thirty (30) days after the Effective Date, and the financial advisory Professionals retained by the Creditors Committee and the members thereof will not be entitled to assert any Fee Claim for any services rendered or expenses incurred after the Effective Date, except in either case for services rendered and expenses incurred in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Article III.A.1(f)(ii)(A) and in connection with any appeal of the Confirmation Order.

**B.      Modification of the Plan**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors or the Post-Consummation Trust, as applicable, reserve the right to alter, amend or modify the Plan before its substantial consummation.

44

### C. Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation as to any or all of the Debtors does not occur, then, with respect to such Debtors, the Plan will be null and void in all respects, and nothing contained in the Plan will: (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in any Debtor; (2) prejudice in any manner the rights of any Debtor or any other party; or (3) constitute an admission, acknowledgment, offer or undertaking by any Debtor in any respect.

### D. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. Notwithstanding the foregoing, if the Debtors' releases with respect to the OEMs set forth in Article XII.B are eliminated or modified in a way that is not acceptable to the OEMs, the remainder of the terms and provisions of the Plan will not go into effect.

### E. Consultation

Reference in the Plan to "in consultation with the Prepetition Lenders" or words of similar import will mean in consultation with the Steering Committee and/or other Prepetition Lenders in such manner and to such extent as the Agent, in its sole discretion, will determine is appropriate under the circumstances. In no event will a reference to such consultation require a vote by any Prepetition Lenders.

### F. Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor and assign of such Person.

### G. Service of Certain Plan Exhibits and Disclosure Statement Exhibits

Because the Exhibits to the Plan are voluminous, the Exhibits are not being served with copies of the Plan and the Disclosure Statement. Any party in interest may review the Plan Exhibits during normal business hours (9:30 a.m. to 4:30 p.m., local time) in the Document Reviewing Centers.

### H. RLI Insurance Company

Notwithstanding anything contained in the Plan to the contrary, nothing in Article XII.C, Article XII.D, Article XII.E or any other provision of the Plan is intended to and will not limit the rights, if any, of RLI Insurance Company to seek and receive a distribution from the letters of credit issued by JPMorgan Chase Bank, N.A. (previously known as Chase Manhattan USA, N.A.) (or any replacements or renewals of said letter of credit) to RLI Insurance Company with respect to the bonds issued by RLI Insurance Company on behalf of Collins & Aikman Corporation and/or Collins & Aikman Products Co. (the "RLI Bonds"). Without any prejudice to the rights of RLI Insurance Company, on or before the Effective Date, the Debtors will advise RLI Insurance Company of the Debtors' intentions with respect to the RLI Bonds.

**I.      Sales Engineering, Inc.**

Notwithstanding anything contained in the Plan to the contrary, nothing in Article XII.C, Article XII.D or Article XII.E is intended to and will not limit or otherwise impede the rights, if any, of Sales Engineering, Inc. to seek and receive a distribution from the letters of credit issued by JP Morgan Chase Bank, N.A. to Sales Engineering, Inc. on behalf of Collins & Aikman Plastics, Inc. in the pending lawsuit brought by Sales Engineering, Inc. in the Oakland County Circuit Court, Case No. 99-014804-CK or otherwise, and nothing contained in the Plan will be deemed to enjoin Sales Engineering, Inc. from exercising its rights, if any, under the letter of credit issued in its favor by JPMorgan Chase Bank, N.A.

**J.      Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors, the Post-Consummation Trust, the Creditors Committee or the DIP Lenders must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

| The Debtors and the Post-Consummation Trust | The Creditors Committee |
|---|---|
| Richard M. Cieri<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>-and-<br><br>David L. Eaton<br>Ray C. Schrock<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, Illinois 60601<br>Telephone: (312) 861-2000<br>Facsimile: (312) 861-2200<br><br>-and-<br><br>Joseph M. Fischer<br>Lawrence A. Lichtman<br>Carson Fischer, P.L.C.<br>4111 West Andover Road -- Second Floor<br>Bloomfield Hills, Michigan 48302<br>Telephone: (248) 644-4840<br>Facsimile: (248) 644-1832 | Michael S. Stamer<br>Philip C. Dublin<br>Akin Gump Strauss Hauer & Feld LLP<br>590 Madison Avenue<br>New York, New York 10022<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>-and-<br><br>Thomas B. Radom<br>Butzel Long, P.C.<br>100 Bloomfield Hills Parkway<br>Bloomfield Hills, Michigan 48304<br>Telephone: (248) 258-1616<br>Facsimile: (248) 258-1439 |
| **The DIP Lenders** | **The Agent** |
| Peter V. Pantaleo<br>Alice B. Eaton<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Telephone: (212) 455-2000<br>Facsimile: (212) 455-2502 | Harold S. Novikoff<br>Gregory E. Pessin<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 403-1000<br>Facsimile: (212) 403-2000 |
| **The United States Trustee** | |
| Stephen E. Spence<br>U.S. Department of Justice<br>Office of the United States Trustee<br>211 West Fort Street, Suite 700<br>Detroit, Michigan 48226<br>Telephone: (313) 226-7911<br>Facsimile: (313) 226-7952 | |

Respectfully Submitted,

**COLLINS & AIKMAN CORPORATION**
(for itself and on behalf of its Debtor subsidiaries)

_/s/ John R. Boken_
Name:  John R. Boken
Title:  Chief Restructuring Officer