## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, <u>et al.</u>[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification #13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

## APPENDIX C

### TO

## AMENDED DISCLOSURE STATEMENT FOR THE FIRST AMENDED
## JOINT PLAN OF COLLINS & AIKMAN CORPORATION AND ITS DEBTOR SUBSIDIARIES

---

1    The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55935; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

APPENDIX  C

LIQUIDATION ANALYSIS

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code[1] requires that the Bankruptcy Court find, as a condition to Confirmation, that each Holder of a Claim or Equity Interest in each Impaired Class:  (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must:  (1) estimate the cash proceeds (the "Liquidation Proceeds") that a Chapter 7 Trustee would generate if each Debtor's Chapter 11 Case were converted to a Chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (2) determine the distribution (the "Liquidation Distribution") that each non-accepting Holder of a Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in Chapter 7; and (3) compare each Holder's Liquidation Distribution to the distribution under the Plan ("Plan Distribution") that such Holder would receive if the Plan were confirmed and consummated.

To assist the Bankruptcy Court in making the findings required under section 1129(a)(7), the Debtors' management, together with KZC Services, LLC ("KZC"), the Debtors' restructuring consultants, prepared this Liquidation Analysis.

The Liquidation Analysis presents both "High" and "Low" estimates of Liquidation Proceeds representing a range of management's assumptions relating to the costs incurred during a liquidation and the proceeds realized.  It is assumed that a liquidation would be performed over a period of just three months as it is anticipated that the customer program transitions will be largely completed by March 31, 2007, the projected date of conversion to a hypothetical Chapter 7 liquidation (the "Assumed Effective Date").  In each case, it is assumed that the Chapter 7 Trustee would enter into an agreement with the Debtors' major customers and the Prepetition Lenders to wind-down operations and sell the remainder of the Debtors' assets on a piecemeal basis.

In a Chapter 7 liquidation, certain distinctive factors would limit recovery from the sale of the Debtors' assets.  Among the Debtors' most valuable assets are its Carpet & Acoustics segment, customer supply contracts and certain plants in its Plastics segment.  In a liquidation, the Debtors, particularly their Carpet & Acoustics business and Plastics segment, would be forced to work with customers to transfer business to other suppliers to maximize the realizable value of those assets and limit move costs, legal fees and the amount of cancellation claims stemming from the default on the contracts related to such business.  Given the limited operating margins provided under the Debtors' supply contracts, it is unlikely that alternative suppliers would choose to fully reimburse the Debtors for the costs incurred in moving the programs.  In addition, the Debtors would incur potentially significant purchasing costs to the extent they would be required to replace an intercompany supplier with a third party supplier.  Moreover, the vast majority of the Debtors' contracts with customers are postpetition contracts that would result in significant damage claims if the Debtors defaulted.  In a liquidation, there would be a substantial likelihood of a default, including a breach of the Customer Agreement that would result in large postpetition claims.  Some of the creditors who may be entitled to these additional claims may realize recoveries on those claims from rights of setoff.  Such realization would reduce the amounts available for distributions to creditors.

The mechanics of the Liquidation Analysis are predicated on the belief that, in a Chapter 7 liquidation, the Chapter 7 Trustee would reach an agreement with the Debtors' major customers and the Prepetition Lenders whereby the Debtors' Carpets & Acoustics, Plastics and Convertible business segments would work to transition customer programs to new suppliers.  The Liquidation Analysis assumes that, to continue the flow of necessary parts during transition, certain significant original equipment manufactures ("OEMs") would fund operating losses incurred by the Debtors during the wind-down process.  If the OEMs did not agree to fund such losses, this would reduce the amounts available for distribution to creditors.

---

[1]    Unless otherwise stated, any capitalized term used herein shall have the meaning assigned to such term herein or, if no meaning is so assigned, the meaning assigned to such term in the Disclosure Statement.

The Liquidation Analysis presents the liquidation of the Debtors on a consolidated basis.[2] Proceeds realized from each Debtor are aggregated in a common distribution source. For purposes of distribution, each and every asserted Claim against and Equity Interest in any Debtor is entitled to a distribution from the aggregated proceeds. Any Claim against a Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors are deemed one right to a distribution from the aggregated proceeds.

The financial information filed in the Debtors Monthly Operating Reports represents aggregate book value of the each of the Debtors assets on a non-consolidated basis. In the November MOR, these aggregate assets were approximately $5.0 billion. This $5 billion is not an accurate indicator of liquidation value of the Debtors' assets for two main reasons: (i) it does not reflect the Debtors' balance sheet on a consolidated basis; and (ii) it reflects book value not liquidation or fair market value. First, a consolidated balance sheet for the Debtors would require the elimination of certain balances. For example, investments in subsidiaries and inter-company receivables and payables reduce the book value of the Debtors assets on a consolidated basis by more than $2.5 billion. Although certain intercompany receivables are collectible, as discussed in Note 8 below, the Debtors equity interests in subsidiaries have no liquidation value. Second, the value of the assets reported in the MOR reflects the book values, which are historical values adjusted in accordance with certain accounting rules. Book value, especially in the context of a liquidation, is dramatically different than the value that could be realized in a sale. For example the book value of the total assets reported in the MOR includes goodwill of $978 million, which is not expected to accrete any value to the Debtors' Estates. In addition to goodwill, there are other significant adjustments to book value that are outlined in the Notes below.

The statements in the Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) and they may not be used or relied upon for any other purpose.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT ECONOMIC, COMPETITIVE AND OPERATIONAL UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

---

[2] A non-consolidated liquidation analysis of each Debtor would result in the same distributions to Holders of Prepetition Facility Claims, Unsecured Claims and Equity Interests that is reflected in the Liquidation Analysis because the Liquidation Proceeds are not sufficient to satisfy the Prepetition Facility Claims and each Debtor is either an obligor or a guarantor of these secured obligations.

**LIQUIDATION ANALYSIS**
**Estimated Liquidation Proceeds**
**(Amounts in 000's)**

*SOLICITATION VERSION*

| | Estimated Liquidation Value (Note 1) | | Note |
| | High | Low | |
|---|---|---|---|
| **Statement of Assets** | | | |
| | | | |
| Cash | $ 138,300 | $ 118,300 | 2 |
| Fabrics | - | - | 3 |
| Accounts Receivable, Top OEMs, Production & Other | - | - | 4 |
| Accounts Receivable, Other OEMs, Production & Other | - | - | 4 |
| Accounts Receivable, Non OEMs, Production & Other | - | - | 4 |
| Accounts Receivable, Top OEMs, Tooling | 8,800 | 7,000 | 4 |
| Accounts Receivable, Other OEMs, Tooling | 400 | 300 | 4 |
| Accounts Receivable, Non OEMs, Tooling | 500 | 400 | 4 |
| Inventory | - | - | 5 |
| Prepaid Tooling & Molding, Current | - | - | 6 |
| Investments in Subsidiaries | - | - | 7 |
| InterCo Receivable - Canada | 10,000 | - | 8 |
| InterCo Receivable - Mexico | 3,000 | - | 8 |
| InterCo Receivable - European Entities | 39,000 | 27,000 | 8 |
| Prepaid and Miscellaneous Assets | - | - | 9 |
| Other Long Term Assets | - | - | 10 |
| Goodwill | - | - | 11 |
| Deferred Tax Assets | - | - | 12 |
| Property Plant & Equipment | 30,000 | 12,500 | 13 |
| *Gross Liquidation Proceeds* | $ 230,000 | $ 165,500 | |
| | | | |
| **Costs of Liquidation** | | | |
| | | | |
| Chapter 7 Expenses | $ 18,900 | $ 18,900 | 14 |
| Chapter 7 Wind Down Costs | 15,700 | 15,700 | 15 |
| Payment of Chapter 11 Professional Fee Holdback | 21,000 | 21,000 | 16 |
| Chapter 7 Trustee Fees | 5,200 | 3,300 | 17 |
| *Total Costs of Liquidation* | $ 60,800 | $ 58,900 | |
| | | | |
| ***Net Liquidation Proceeds Available for Distribution*** | ***$ 169,200*** | ***$ 106,600*** | |

*Note: Assumes no recoveries from Retained Causes of Action.*

**LIQUIDATION ANALYSIS**
**Estimated Liquidation Distribution**
**(Amounts in 000's)**

*SOLICITATION VERSION*

| | | | | Estimated Liquidation Recovery | | | | Note |
|---|---|---|---|---|---|---|---|---|
| | | | High | % | | Low | % | |
| ***Net Liquidation Proceeds Available for Distribution*** | | *$* | *169,200* | | *$* | *106,600* | | |
| | | | | | | | | |
| **_Less: Purchase Money Security Interests_** | $ 25,900 | $ | 25,900 | 100.0% | $ | 25,900 | 100.0% | 18 |
| *Remaining Liquidation Proceeds* | | *$* | *143,300* | | *$* | *80,700* | | |
| **_Less: Secured Lien Claims_** | | | | | | | | |
| Secured Third-Party Tooling Lien Claims | $ Range | $ | 9,700 | 100.0% | $ | 7,700 | 100.0% | 19 |
| *Remaining Liquidation Proceeds* | | *$* | *133,600* | | *$* | *73,000* | | |
| **_Less: Secured Claims_** | | | | | | | | |
| Prepetition Facility Claims | $ 747,121 | $ | 133,600 | 17.9% | $ | 73,000 | 9.8% | 20 |
| OEM Jr Secured Loan and Related Interest | 93,106 | | - | 0.0% | | - | 0.0% | 20 |
| OEM Launch Cost Funding | 13,000 | | - | 0.0% | | - | 0.0% | 20 |
| *Remaining Liquidation Proceeds* | | *$* | *-* | | *$* | *-* | | |
| **_Less: Chapter 11 Administrative & Priority Claims_** | | | | | | | | |
| Headquarter Lease Rejection | $ 4,500 | $ | - | 0.0% | $ | - | 0.0% | 21 |
| Other Chapter 11 Lease Rejections | 1,000 | | - | 0.0% | | - | 0.0% | 21 |
| OEM Administrative Loan | 30,000 | | - | 0.0% | | - | 0.0% | 21 |
| Environmental Claims | 10,000 | | - | 0.0% | | - | 0.0% | 21 |
| Chapter 11 Priority Claims | 11,600 | | - | 0.0% | | - | 0.0% | 21 |
| **_Less: Unsecured Claims_** | | | | | | | | |
| General Unsecured Claims | $ 511,600 | $ | - | 0.0% | $ | - | 0.0% | 21 |
| Real Estate Lease Rejection Claims | 17,858 | | - | 0.0% | | - | 0.0% | 21 |
| Equipment Lease Rejection Claims | 31,749 | | - | 0.0% | | - | 0.0% | 21 |
| Prepetition OEM Damage and Cancellation Claims | 100,000 | | - | 0.0% | | - | 0.0% | 21 |
| 10.75% Senior Notes due 2011 | 520,500 | | - | 0.0% | | - | 0.0% | 21 |
| 12.875% Senior Subordinated Notes due 2012 | 428,400 | | - | 0.0% | | - | 0.0% | 21 |

**APPENDIX C**

**LIQUIDATION ANALYSIS**

**NOTES**

*1.      Basis for Valuation*

Value estimates were derived from a combination of actual balances as of November 30, 2006 (the date of the Customer Agreement), December 31, 2006, and expected balances as of March 31, 2007, the Assumed Effective Date.

*2.      Cash*

The projected range of cash balances reflect cash that is assumed to be available to the Debtors in a liquidation scenario as of March 31, 2007. In each of the high and low value cases, the estimated balance is derived from the actual balance of $86 million as reported in the Debtors Monthly Operating Report ("MOR") for November 2006, plus December activity and also includes estimates of settlements and wind-down proceeds expected to be realized prior to the Assumed Effective Date. The balance is net of the assumed pay down of the DIP Facility Claims as well as estimated wind-down costs through the Assumed Effective Date. The balance includes restricted cash of approximately $21 million relating to incurred or anticipated professional fees.

*3.      Fabrics*

After attempts to sell the Fabrics segment as a going concern during the Chapter 11 process stalled, the Debtors began a wind-down process. It is assumed that the current wind-down efforts will be completed prior to a conversion to Chapter 7; therefore, such proceeds are reflected in the cash balance.

*4.      Accounts Receivable*

In the MOR, the Debtors reported a balance of $268 million. The Debtors estimated recovery on Accounts Receivable reflects updated information through December 2006 and projected proceeds from future collections of those accounts receivable. Specifically, projected proceeds from the collections of accounts receivable are considered by three customer types: (i) General Motors, Ford, Daimler Chrysler, Toyota, Honda and Nissan ("Top OEMs"); (ii) Other OEMs; and (iii) Non-OEMs; as well as by the two major receivable types, Tooling and Production. Immaterial other receivable balances that are defined as neither tooling nor production have been combined with production balances for purposes of the analysis. Additionally, the analysis considers the prepetition and postpetition status of such balances.

*a)      Tooling Receivables*

The Debtors are in varying stages of negotiations with certain OEMs regarding settlement of open tooling balances. It is anticipated that certain of those settlements will be finalized prior to the Assumed Effective Date and are therefore reflected in the cash balance.

The Debtors have assumed that certain of the Debtors' customers exercise certain setoff claims against the remaining tooling balances. Those setoff claims largely relate to amounts where the customer has directly funded the Debtors' tooling suppliers. Setoff claim value estimates are based on either filed proofs of claims or management's analysis. It is assumed that remaining balances are either uncollectible or have related vendor payables associated with them to offset that value (see Note 20, *Secured Lien Claims*).

b) *Production and Other Receivables*

The Debtors have assumed that their customers exercise cancellation claims arising from a conversion to Chapter 7 as setoff claims against the open production balances thereby eliminating all value associated with such balances.

5. *Inventory*

Proceeds from plastics inventory are estimated based on the terms of the Customer Agreement and are expected to be realized prior to the Assumed Effective Date. As such, the value is reflected in the cash balance.

6. *Tooling and Molding*

Because capitalized tooling and molding costs represent tool builds for parts that are not yet in production, it is assumed that such tooling and molding costs have no associated realizable value.

7. *Investments in Subsidiaries*

In the MOR, the Debtors reported an Investment in Subsidiaries balance of approximately $2.5 billion. The totals reported in the MOR are not consolidated among the Debtors, therefore, the MOR balance includes the Debtors' investments in other Debtors. The Liquidation Analysis is presented on a consolidated basis, however. As a result, the Investment in Subsidiaries balance of each consolidated entity (approximately $2.3 billion in the aggregate) is eliminated. The remaining balance represents the Debtors' net investment in foreign non-Debtor subsidiaries. These subsidiaries are insolvent, therefore, the Debtors' equity investments have no value. As discussed below in Note 8, *Intercompany Receivables*, if the Debtors realize any value from their non-Debtor subsidiaries, it will be on account of intercompany claims and not equity interests.

8. *Intercompany Receivables*

In the MOR, the Debtors reported an Intercompany Receivable balance of approximately $722 million. A significant portion of that balance derives from intercompany claims owed by one Debtor to another Debtor. As with Investments in Subsidiaries, such balances are eliminated in consolidation leaving only a net balance from the Debtors' foreign non-Debtor subsidiaries. The Debtors' recovery on intercompany claims from foreign non-Debtor subsidiaries and its former European subsidiaries are described below

a) *Canada*

The value reflected for the Debtors' intercompany balance with the Canadian Plastics segment reflects the Debtors' pro-rata share of value available to unsecured creditors of that segment. It is assumed that the Canadian operations are wound down in a Canadian bankruptcy proceeding under the direction of a trustee. The resulting value to the Debtors relates solely to their intercompany balance with the Canadian entities. There is no hypothetical distribution on account of the Debtors' equity. Accordingly, it is not anticipated that the Debtors would receive a recovery on account of their interests.

The Debtors assume in the high estimate that their consolidated intercompany balance with the Canadian entities is *pari passu* with other unsecured creditors of those entities and is not subject to equitable subordination. If the claims were equitably subordinated, the Debtors' recovery would be significantly less and may be zero. The book value of the net intercompany balance owed from Canada to US is approximately $384 million and only a small portion will get recovered.

b) *Mexico*

The value reflected for the Debtors' intercompany balance with the Mexican Plastics and Convertibles segments reflects the Debtors pro-rata share of value available to unsecured creditors of that segment. It is assumed that the Mexican operations would be wound down in an out-of-court proceeding to maximize recovery value. It is assumed that creditors of the Hermosillo facility exercise their rights in Mexico to assume control of the Hermosillo plastics plant, effectively eliminating all related assets from consideration. The resulting value to the Debtors relates

solely to their intercompany balance with the Mexican entities. There is no hypothetical distribution on account of the Debtors' equity. Accordingly, it is not anticipated that the debtors would receive a recovery on account of their interests.

The Debtors assume in the high estimate that their consolidated intercompany balance with the Mexican entities is *pari passu* with other unsecured creditors of those entities and is not subject to equitable subordination. If the claims were equitably subordinated, the Debtors' recovery would be significantly less and may be zero.

### c) *European Entities*

The European Entities have either been wound down or have been sold in the UK Proceedings. The UK Administrator has begun making distributions to creditors, including the Debtors. Estimated values associated with those intercompany balances reflect the anticipated range of gross proceeds of $58 million to $70 million. Of those totals, it is anticipated that $31 million will be collected prior to the Assumed Effective Date; therefore, this amount is reflected in the Cash balance.

### 9. *Prepaid Miscellaneous Assets*

Prepaid assets include property and liability insurance and supply inventory. These assets are estimated to have no value in a Chapter 7 liquidation.

### 10. *Other Long Term Assets*

Other Long Term Assets are estimated to have no value in a Chapter 7 liquidation.

### 11. *Goodwill*

In the MOR, the Debtors reported a Goodwill balance of approximately $978 million. Goodwill is estimated to have no liquidation recovery value.

### 12. *Deferred Tax Assets*

Deferred tax assets are estimated to have no liquidation recovery value.

### 13. *Property, Plant and Equipment*

The Property, Plant and Equipment ("PP&E") balance includes only assets that are owned by the Debtors and excludes Canadian and Mexican plants that are assumed to be liquidated in separate foreign proceedings (see Notes 8-9, *Intercompany Receivables*). It is assumed that any leased PP&E would be repossessed by the relevant lessor, effectively eliminating it from consideration in this Liquidation Analysis. All owned PP&E would be sold off in a piecemeal fashion. Given the current state of the automotive parts supplier industry in North America, it is likely that the equipment, which is comprised mostly of injection mold machines and robots, would have little value in a resale environment. The values reflect management's estimates derived from third party valuations and actual experience in wind-down efforts to date. The Debtors reported a book value of approximately $263 million of PP&E in their MOR. The estimated proceeds in the Liquidation Analysis are based on projected liquidation value, however, and not book value. Based on the foregoing factors, book value is not a good indicator of liquidation value.

### 14. *Chapter 7 Expenses*

As part of the assumed wind-down transition agreement between the Chapter 7 Trustee, the OEMs and the Prepetition Lenders, it is assumed that, to maintain uninterrupted part production, the OEMs would fund the operating losses incurred by the plants during the transition period to convince the Chapter 7 Trustee to continue operating while such OEMs resource programs away from the Debtors' plants. The significant majority of the Debtors' estimated expenses relate to efforts to shut down and secure such plants after the transition of business.

*15.*     *Chapter 7 Wind-Down Costs*

Cost estimates for the Debtors' share of the wind-down costs to be incurred after March 31, 2007, are based on information used in developing the Customer Agreement. Wind-down estimates include items such as certain professional fees, corporate headquarter costs and corporate payroll.

*16.*     *Chapter 11 Professional Fee Holdbacks*

It is assumed that the Chapter 7 Trustee would continue to retain current professionals to expedite the liquidation and would pay all Chapter 11 professional fee holdbacks in full to facilitate retention of such professionals.

*17.*     *Chapter 7 Trustee Fees*

It is assumed that the Chapter 7 Trustee fees are paid in accordance with limits established by section 326 of the Bankruptcy Code.

*18.*     *Purchase Money Security Interests*

OEM secured funding is estimated at approximately $26 million. Postpetition DIP Facility Claims are assumed to be fully paid down as of the Assumed Effective Date.

*19.*     *Secured Lien Claims*

For certain of the tools that the Debtors anticipate collecting receivables, there exist payables owed to the vendors that provided the tools, which payables are secured by liens. It is assumed that the amount of these payables exceeds the value of the associated receivables that are collectable and, therefore, any amounts collected would be distributed to the tooling vendors holding secured lien claims. The amounts listed represent the Debtors' high and low estimates of collectable receivables.

*20.*     *Secured Claims*

Secured claims are segregated by contractual priority and include $747 million of Prepetition Facility Claims.

*21.*     *Other Claims*

Remaining Administrative, Priority and Unsecured claims are based on the Debtors' books and records and estimates related to filed proofs of claim as well as incremental claims arising from the conversion to a Chapter 7 liquidation.

No attempt has been made to estimate the amount of damage and cancellation claims arising from the Debtors' termination of postpetition customer contracts. These claims likely would be substantial.

Claims of the Pension Benefit Guarantee Corporation arising from a hypothetical termination of C&A's pension plan are not included in the unsecured claim amount listed as a result of unresolved legal issues that would affect the prospective value of any such claims.