United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Collins & Aikman Corporation, et al.   Case No. 05-55927
           Debtors.   Chapter 11
_____/   (Jointly Administered)

## Opinion Regarding the Appointment of a Fee Examiner

This matter is before the Court on the Court's own initiative regarding the appointment of a fee examiner, as well as the U.S. Trustee's motion to appoint an examiner under 11 U.S.C. § 1104. The procedural history that led to the Court's consideration of these matters is as follows. Third Avenue Trust, the largest unsecured creditor, had filed several objections to interim fee applications. Third Avenue asserted that the fees in this chapter 11 are excessive, given that the case was proceeding down the path of liquidation rather than reorganization. At the December 11, 2006 fee hearing, the Court stated that it was also concerned about the fees and invited all interested parties to file statements on whether the Court should appoint a fee examiner.

On February 20, 2007, the debtors, the official unsecured creditors committee, Third Avenue and JPMorgan Chase Bank, N.A., the agent for the pre-petition lenders, filed statements regarding the appointment of a fee examiner. The U.S. Trustee did not file a statement. However, on February 23, 2007, the U.S. Trustee filed a motion for appointment of an examiner pursuant to 11 U.S.C. § 1104. On March 5, 2007, KZC Services, LLC and John R. Boken also filed a statement regarding the appointment of a fee examiner. On March 12, 2007, following hearings on the issue of whether a fee examiner should be appointed and on the U.S. Trustee's motion for an examiner, the Court took both matters under advisement.

## I. Background

The debtors commenced these cases by filing chapter 11 petitions on May 17, 2005. The debtors have remained in possession and have operated their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No examiner or trustee has been appointed. Initially, the debtors pursued a "dual track" approach; that is, the debtors attempted to reorganize, while also keeping open the option of selling all or parts of the business.

Several parties have asserted that it became apparent in the spring and summer of 2006 that the operational, managerial and financial problems of the debtors' plastics business were far more severe than had been previously recognized. As a result, all attempts at a standalone reorganization plan have failed and efforts are now underway to sell the debtors' businesses and assets. Creditor recoveries will likely be substantially lower than initially expected.

Over twenty firms have rendered professional services chargeable to the bankruptcy estate. These firms have begun to file interim and final fee applications. The fees requested to date exceed $88 million and will undoubtedly be much higher before the case concludes. This is a list of professional fees and expenses requested to date.[1]

| Professional | Fees Requested | Expenses Requested |
|---|---|---|
| Akin Gump Strauss, Hauer & Feld | $5,391,126 | $474,465.80 |
| Alvarez & Marsal, LLC | $3,000,000 | $234,692 |

---

1. This information is from Exhibit A to docket # 4163 (prepared by Third Avenue Trust) and the Court's preliminary review of fee applications. This chart is included for demonstrative purposes and is not intended to be a factual finding.

| | | |
|---|---|---|
| Brinks Hofer Gilson & Lione | $1,588,737 | $218,250.15 |
| Butzel Long P.C. | $357,783 | $137,196.19 |
| CB Richard Ellis./Keen Realty | $119,659 | $419.29 |
| CONSOR Intellectual Asset Mgmt. | $141,960 | |
| Carson Fischer P.L.C. | $2,980,270.50 | $92,230.19 |
| Chanin Capital Partners LLC | $2,820,000 | $286,982.81 |
| Davis Polk & Wardwell | $8,808,413.50 | $997,424.49 |
| Deloitte Tax LLP | $2,169,423 | $14,171 |
| Donnelly Penman | $125,000 | |
| Ernst & Young LLP | $3,393,344 | $556,747 |
| Gordon Brothers Industrial | $851,731.78 | $242,311.32 |
| Haley & Aldrich, Inc. | $312,685.25 | $137,964.92 |
| Hilco Appraisal Services | $375,000 | $16,387.70 |
| KZC Services LLC | $32,002,855.50 | $3,269,993.49 |
| Kirkland & Ellis | $21,973,111.25 | $1,258,872.01 |
| Lathrop & Gage L.C. | $962,500 | $7,982.97 |
| Lazard Freres & Co. LLC | $2,915,000 | $308,632.16 |
| McDonald Hopkins Co, LPA | $826,538.75 | $270,413.27 |
| Pricewaterhouse Coopers | $190,121.98 | $5,135.98 |
| Sitrick And Company, Inc. | $287,951 | $38,133.54 |

The debtors filed their First Amended Joint Plan of Collins & Aikman Corporation and Its Debtor Subsidiaries on February 9, 2007. The disclosure statement was approved and a confirmation hearing is scheduled for June 5, 2007.

## II. Whether a Fee Examiner Should Be Appointed

The Court is responsible to review professionals' fees pursuant to §§ 330 and 331. To fulfill that responsibility, a bankruptcy court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors" including the time the attorneys spent on rendering such services and the rates that they charged. 11 U.S.C. § 330(3)(A). Furthermore, a court must also consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title [.]" 11 U.S.C. § 330(3)(A). A court shall not allow compensation for "unnecessary duplicative services," those services that were not "reasonably likely to benefit the debtor's estate or services that were not necessary to the administration of the case." 11 U.S.C. § 330(4)(A).

In large or particularly complex cases, the Court may appoint a fee examiner pursuant to § 105 or Fed. R. Evid. 706(a) to assist the Court in carrying out its duties. *See e.g., In re Maruko Inc.*, 160 B.R. 633 (Bankr. C.D. Cal. 1993); *In re Continental Airlines, Inc.*, 138 B.R. 439 (Bankr. D. Del. 1992), *rev'd on other grounds*, 150 B.R. 334 (D. Del. 1993); *In re Owens Corning*, Case No. 00-3837 (Bankr. D. Del. 2000).

JPMorgan and Third Avenue filed statements in support of the appointment of a fee examiner. Both allege that questions have been raised regarding whether professionals appropriately reduced and adjusted their activities in view of the changing circumstances affecting the debtors and the chapter 11 cases. JPMorgan suggested the following questions for the fee examiner:

> (a) Should any of the Estate Professionals retained by the Debtors have discovered earlier the substantial operational, managerial and financial problems at the Debtors' Plastics division and the resultant near impossibility of the Plastics division achieving management's business plan goals?

(b) If so, did the delay result in the Debtors bearing unnecessary losses and/or reductions in creditor recoveries?

(c) Once it became clear that the value of the Debtors' estate was substantially diminished and/or that a reorganization was unlikely or impossible, did any of the Estate Professionals undertake or continue work or activities that no longer were reasonably necessary under the circumstances and in view of their roles?

JPMorgan specifically stated that it had not reached a conclusion regarding any of these questions and did not wish to criticize any estate professionals.

Third Avenue, on the other hand, has been critical of estate professionals. Third Avenue asserts that it resigned from the official unsecured creditors' committee in large part due to its opinion that the professionals advising the committee were not creating additional material recoveries for the unsecured creditors, but were continuing to bill large amounts of unnecessary fees. Third Avenue asserts that the examiner should determine at what point in time a successful reorganization was no longer an option and reduce fee applications for fees billed beyond that point in time for projects that continued down the reorganization path. Third Avenue also suggests that the fee examiner conduct a detailed line-by-line investigation of each fee application looking for duplicative efforts, wasteful expenses and transient billers.

The official unsecured creditors committee, the debtors and KZC Services filed statements opposed to the appointment of a fee examiner. The three statements are very similar. Each notes that the case is drawing to a conclusion and asserts that appointment of a fee examiner would be costly and potentially cause delay. Each statement asserts that this bankruptcy has been a "transparent process" in attempting to reorganize. Each statement asserts that the Court and the U.S. Trustee's office are in the best position to review fees due to their familiarity with the cases. The debtors and

5

the official unsecured creditors' committee suggest a fee review panel, rather than a fee examiner.

The Court concludes that the magnitude of the fees in this case and the importance and complexity of the questions raised by JPMorgan and Third Avenue, make it necessary and appropriate to appoint a fee examiner to assist the Court in carrying out its responsibility to examine fees. It is clearly in the best interests of creditors and the estate for the examiner to investigate the questions raised by JPMorgan and Third Avenue Trust. However, the Court further concludes that there is no cause for a fee examiner to conduct a detailed line-by-line investigation of each fee application, as requested by Third Avenue.

Accordingly, the Court will submit to the parties for their comment a proposed order appointing a fee examiner. This proposed order will identify the proposed fee examiner, delineate the examiner's duties and establish procedures for the examiner's investigation and report to the Court.

### III. U.S. Trustee's Motion for an Examiner

The U.S. Trustee motion asserts that appointment of an examiner is mandatory under 11 U.S.C. § 1104(c)(2).

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if–
> . . .
> the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

6

11 U.S.C. § 1104(c)(2). The U.S. Trustee asserts that because a trustee has not been appointed in this case and the unsecured debts exceed $5,000,000, the Court must appoint an examiner.

If the thresholds of § 1104(c)(2) are met, it is indeed mandatory to appoint an examiner *to conduct an investigation of the debtor. See Morgenstern v. Revco D.S., Inc.* (*In re Revco*), 898 F.2d 498 (6th Cir. 1990). In the present case, there is no dispute that the unsecured debt exceeds $5,000,000, that a trustee has not been appointed and the plan has not yet been confirmed.

However, the U.S. Trustee is not requesting an investigation of the debtor. The motion states "the examiner would investigate the debtors' and their professionals' administration of these cases and *report to the Court on whether the compensation requested by professionals is justified under the circumstances*." (Emphasis added.) The motion requests examination "into the debtors' utilization of estate assets to employ professionals," "the progress of this case through chapter 11, with a particular emphasis on whether appropriate and timely decisions were made by debtor's management, the creditors' committee, and their professionals regarding whether the company should remain a going concern or should be liquidated," and whether "debtors' management took appropriate steps to manage costs, including professional fees and expenses." The motion clearly reflects a request to appoint a fee examiner. The primary investigation requested relates not to the debtors directly but rather to the conduct of the debtors' professionals and the professionals of the official unsecured creditors committee.

During the March 12, 2007 hearing, the U.S. Trustee could not articulate any need for the appointment of an examiner other than to examine professional fees. When asked what an examiner would do if the Court were to determine that § 1104 does not encompass investigation of fees, the

7

U.S. Trustee was unable to answer. In *Revco*, the Sixth Circuit noted that even when appointment of an examiner is mandatory, "the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration." *Id.* at 501.

The Court concludes that § 1104 does not encompass the examination of professionals fees. Whether professional fees are reasonable and necessary to the estate is simply not attributable to conduct of the debtor. "[T]he functions of the fee examiner are dissimilar to those of an examiner appointed pursuant to section1104." *In re Continental Airlines, Inc.*, 138 B.R. 439, 440 (Bankr. D. Del. 1992) *rev'd on other grounds*, 150 B.R. 334 (1993).

Accordingly the U.S. Trustee's motion to appoint an examiner under 11 U.S.C. § 1104 is denied.

For Publication

**Signed on May 04, 2007**

                                                             **/s/ Steven Rhodes**
                                                             **Steven Rhodes**
                                                             **Chief Bankruptcy Judge**