**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re<br><br>COLLINS & AIKMAN CORPORATION, et al.,<br><br>        Debtors.<br>_____<br><br>COLLINS & AIKMAN CORPORATION (now known as Collins & Aikman LLC), COLLINS & AIKMAN PRODUCTS CO. (now known as Collins & Aikman Products LLC), and C&A POST-CONSUMMATION TRUST, as successor-in-interest to the Debtors,<br><br>        Plaintiffs,<br><br>v.<br><br>GENERAL ELECTRIC CAPITAL CORPORATION,<br><br>        Defendant.<br>_____ | Chapter 11 Case No. 05-55927<br>(SWR)  (Jointly Administered)<br><br>Honorable Steven W. Rhodes<br><br><br><br><br>Adv. Pro No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

### INTRODUCTION

1. This is an action by Plaintiffs Collins & Aikman Corporation (now known as Collins & Aikman LLC) and Collins & Aikman Products Co. (now known as Collins & Aikman Products LLC), two of the debtors in these chapter 11 cases (collectively, the "Debtors"), and the C&A Post-Consummation Trust (the "Trust"), as successor-in-interest to the Debtors, against Defendant General Electric Capital Corporation ("GECC"). Plaintiffs seek a declaratory judgment that an equipment appraisal, which was allegedly performed pursuant to a Settlement and Release Agreement, dated June 4, 2007 (the "Settlement Agreement"), between the Debtors

and GECC, failed to adhere to the appraisal standards agreed to by the Debtors and GECC, and further failed to conform to generally accepted appraisal principles. Because the appraisal failed to conform to the parties' agreement, and was premised upon manifest mistakes and palpable errors as more particularly described herein, Plaintiffs are entitled to a declaration that Plaintiffs are not liable to Defendant for any payment under the Settlement Agreement premised upon such appraisal.

## JURISDICTION AND VENUE

2. This is an action arising under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has jurisdiction over this action under 28 U.S.C. §§ 1334 and 1332. Defendant GECC has consented to exclusive jurisdiction over this dispute in this Court pursuant to Section 12(m) of the Settlement Agreement.

3. This action is a core proceeding arising in the above-captioned bankruptcy case, *In re Collins & Aikman Corporation, et al.*, Chapter 11 Case No. 05-55927 (SWR), pending in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

4. Venue is proper under 28 U.S.C. § 1409. Defendant GECC has consented to venue in this Court pursuant to Section 12(m) of the Settlement Agreement.

## PARTIES

5. Plaintiff Collins & Aikman Corporation, which is now known as Collins & Aikman LLC ("C&A"), is a Delaware limited liability corporation having its principal place of business at 25300 Telegraph Road, Suite 530, Southfield, Michigan 48033. On May 17, 2005,

2

05-55927-swr    Doc 9597    Filed 06/06/08    Entered 06/06/08 17:08:29    Page 2 of 9

C&A filed a petition under chapter 11 of Title 11 of the United States Code, and is one of the Debtors herein.

6. Plaintiff Collins & Aikman Products Co., which is now known as Collins & Aikman Products LLC ("C&A Products"), is a Delaware limited liability company having its principal place of business at 25300 Telegraph Road, Suite 530, Southfield, Michigan 48033. On May 17, 2005, C&A Products filed a petition under chapter 11 of Title 11 of the United States Code, and is one of the Debtors herein.

7. Plaintiff C&A Post-Consummation Trust is a liquidating trust (within Treasury Regulation 301.7701-4(d)) organized in New York, having its principal place of business at Park 80 West, Plaza One, Saddle Brook, New Jersey 07663, and is the successor-in-interest to the Debtors herein under the Debtors' chapter 11 plan confirmed by this Court. The Trust is the owner of C&A which, in turn, is the owner of C&A Products.

8. Upon information and belief, Defendant GECC is a Connecticut corporation, having its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06828.

**FACTUAL ALLEGATIONS**

9. On or about June 4, 2007, the Debtor plaintiffs, C&A and C&A Products, together with certain of their affiliates, entered into the Settlement Agreement with GECC relating to, among other matters, the allocation of proceeds of sale of the Debtors' Soft Trim business. (Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.)

10. The sale of the Soft Trim business by the Debtors included certain equipment that was subject to alleged lease transactions between GECC and C&A Products. Section 3(b) of the Settlement Agreement provided, in relevant part, as follows:

> (b) <u>C&A's Soft Trim Business</u>. . . . [I]f any MLA Equipment is sold as part of a sale of C&A's Soft Trim business (a "<u>Soft Trim Sale</u>"): (i) C&A and GECC will jointly engage, and each will pay 50% of the fees and expenses of, an appraiser mutually acceptable to C&A, GECC and JPMC (an "<u>Acceptable Appraiser</u>") to determine the value of such equipment at the mean of orderly liquidation value and fair market value in use (the "<u>Soft Trim MLA Value</u>"); and (ii) GECC will receive the Soft Trim MLA Value from the Net Proceeds of the sale of the Soft Trim business. . . .

11. By countersigned letter from Koster Industries, Inc. ("Koster"), dated November 19, 2007 (the "Koster Letter"), GECC and the Trust retained Koster to appraise and assign values to the portion of the MLA Equipment referred to in Section 3(b) of the Settlement Agreement, which was sold as part of the sale of the Soft Trim business (the "Soft Trim Equipment").

12. The Koster Letter provided for the following standards to be employed in conducting its appraisal of the Soft Trim Equipment:

> Per your direction, the values that would be assigned to the selected machinery and equipment are **Orderly Liquidation Value and Fair Market Value – In Use** which are defined as follows:
>
> **Orderly Liquidation Value:** A professional opinion of the estimated most probable price expressed in terms of cash in U.S. dollars which the subject equipment could typically realize at a privately negotiated sale, properly advertised and professionally managed, by a seller obligated to sell over an extended period of time, usually within six to twelve months, as of the effective date of the appraisal report. Further, the ability of the asset group to draw sufficient prospective buyers to insure competitive offers is considered. All assets are to be sold on a piecemeal basis "as is" with purchasers responsible for removal of assets at their own risk and expense. Any deletions or additions to the

total assets appraised could change the psychological and/or monetary appeal necessary to gain the value indicated.

**Fair Market Value – In Use**: A professional opinion of the estimated most probable price expressed in terms of cash in U.S. dollars to be realized for property in exchange between a willing buyer and a willing seller, with equity to both, neither being under any compulsion to buy or sell, and both parties fully aware of all relevant facts, as installed for intended utilization, as of the effective date of this appraisal.

13. By letter dated March 6, 2008, Koster delivered the conclusions of its purported appraisal of the Soft Trim Equipment (the "Koster Appraisal"). The Koster Appraisal concluded that the "Orderly Liquidation Value" of the Soft Trim Equipment was $14,414,300, and the "Fair Market Value – In Use" of the Soft Trim Equipment was $48,394,200.

14. According to Defendant GECC, the Koster Appraisal requires a payment to GECC of $31,404,250, which GECC contends represents the Soft Trim MLA Value as defined under Section 3(b) of the Settlement Agreement. GECC, through its counsel, has demanded that the Debtors pay such amount to GECC.

15. The $31,404,250 Soft Trim MLA Value claimed by GECC based upon the Koster Appraisal is demonstrably overstated. The egregious amount of the overstatement is evident from the fact that the Stipulated Loss Value of the Soft Trim Equipment (excluding missing and uninstalled equipment), as calculated pursuant to the terms of the alleged lease contracts between C&A Products and GECC, is less than $14 million. In other words, the *entire* payment to which GECC would have been contractually entitled had the Soft Trim Equipment been *destroyed in its entirety* by the Debtors, rather than sold as part of the Soft Trim Sale, is *less than half* the amount of the payment to which GECC now claims to be entitled.

5

16. The Koster Appraisal deviated from the parties' agreed-upon appraisal standards, failed to conform to generally accepted appraisal principles in the industry, and was manifestly erroneous in at least three material respects.

17. <u>First</u>, the Koster Appraisal included in the value of the Soft Trim Equipment the value of certain equipment that was found by Koster during Koster's own site visits to be missing or to have been scrapped (the "Missing Equipment"). The Missing Equipment was not in fact sold as part of the Soft Trim Sale.

18. Koster's inclusion of the Missing Equipment as if it had been present, installed and functioning in calculating Koster's appraised values of the Soft Trim Equipment was contrary to the Settlement Agreement, common sense and commercial reality; deviated from the agreed scope of the appraisal; failed to conform to generally accepted appraisal practices in the industry; and constituted manifest mistake and palpable error.

19. <u>Second</u>, the Koster Appraisal included in the value of the Soft Trim Equipment the value of certain equipment based upon the assumption that such equipment was installed and functioning, when in fact such equipment had been removed from service, was part of an incomplete equipment line, and/or was in storage due to functional, technical and/or economic obsolescence (the "Uninstalled Equipment"). The Uninstalled Equipment was not, in fact, sold "as installed" as part of the Soft Trim Sale.

20. Koster's inclusion of the Uninstalled Equipment as if it had been installed and functioning in calculating Koster's appraised values of the Soft Trim Equipment was contrary to the Settlement Agreement, common sense and commercial reality; deviated from the agreed

6

scope of the appraisal; failed to conform to generally accepted appraisal practices in the industry; and constituted manifest mistake and palpable error.

21. Koster's erroneous inclusion of the value of the Missing Equipment and erroneous treatment of the Uninstalled Equipment collectively resulted in the overstatement of Orderly Liquidation Value in an amount not less than $1,071,200, and an overstatement of Fair Market Value – In Use in an amount not less than $3,503,700, in the Koster Appraisal.

22. <u>Third</u>, the Koster Appraisal failed to depreciate installation costs of the appraised equipment in ascertaining "Fair Market Value – In Use." "Fair Market Value – In Use" valuation (unlike liquidation value or replacement cost) requires an appraiser to estimate the value of a piece of equipment *as installed*. To account for a shortened remaining useful life (and resulting reduced value) of installed equipment and, therefore, the remaining shortened useful life (and resulting reduced value) of the installation of the equipment, an appraiser is required to depreciate (*i.e.*, proportionally decrease) the installation costs in deriving the "Fair Market Value – In Use." Koster manifestly and palpably erred by failing to do so.

23. A substantial component of the difference between Koster's Orderly Liquidation Value and its Fair Market Value – In Use (a difference of $33,979,900) was comprised of installation costs that should have been, but were not, depreciated by Koster. Plaintiffs' efforts to quantify the amount of undepreciated installation costs that were wrongfully included by Koster in its Fair Market Value – In Use conclusion have been hindered to date by Koster's refusal to provide access to the Koster workpapers necessary to ascertain this information, and hence to calculate the net effect of this error on the appraisal result.

24. Koster's failure to depreciate installation costs in determining "Fair Market Value – In Use" was contrary to the Settlement Agreement, common sense and commercial reality; misapplied the agreed definition of "Fair Market Value – In Use;" deviated from the agreed scope of the appraisal; ignored elementary concepts in appraisal methodology; failed to conform to generally accepted appraisal practices in the industry; and constituted manifest and palpable error.

**CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

25. Plaintiffs re-allege and incorporate by reference each allegation set forth above.

26. There exists an actual controversy between Plaintiffs and Defendant GECC whether any payment obligation by Plaintiffs to Defendant GECC under the Settlement Agreement exists or is enforceable on account of the Koster Appraisal and, if so, the amount thereof.

27. Accordingly, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs request and are entitled to a declaration of the parties' respective rights and obligations, if any, with respect to the Koster Appraisal under the Settlement Agreement.

WHEREFORE, Plaintiffs respectfully pray for the entry of judgment in favor of Plaintiffs and against Defendant GECC declaring that neither Plaintiffs nor any of the other Debtors party to the Settlement Agreement is liable to GECC for the payment of amounts under the Settlement Agreement based upon the Koster Appraisal, and for such other and further relief as may be just and proper.

Dated: June 6, 2008

        **DYKEMA GOSSETT PLLC**

        By: /s/ Ronald L. Rose
        Ronald L. Rose (P19621)
        Local Counsel to the C&A Post Consummation Trust
        39577 Woodward Avenue, Suite 300
        Bloomfield Hills, MI 48304
        (248) 203-0519
        rrose@dykema.com

        - and -

        **WACHTELL, LIPTON, ROSEN & KATZ**
        Harold S. Novikoff
        David C. Bryan
        51 West 52nd Street
        New York, New York 10019
        (212) 403-1000

        *Attorneys for Plaintiffs*

BH01\880323.1
ID\RLR